# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

LISA MORRIS, on behalf of herself and all others similarly situated,

      Plaintiff,

      vs.

BANK OF AMERICA, N.A.,

      Defendant.

CASE NO. 3:18-cv-157

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Lisa Morris ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

## INTRODUCTION

1.    Plaintiff brings this action on behalf of herself and a class of all similarly situated consumers against Defendant Bank of America, N.A. ("BofA" or "Bank"), arising from four practices that breach the Bank's contracts and/or are deceptive and designed to unfairly increase the Bank's fee revenue:

> 1) the assessment of multiple Non-Sufficient Funds Fees ("NSF Fees") on a single bill pay transaction;
>
> 2) the assessment of both an Overdraft Fee ("OD Fees") and an NSF Fee on the same bill pay transaction;
>
> 3) the assessment of OD Fees and NSFs on transfers to other BofA accounts; and

4) the assessment of monthly savings account service fees ("MSAS Fees") on savings accounts that have met BofA's requirements for waiver of those service fees.

2.      BofA charges accountholders a $35 NSF fee when there are insufficient funds to pay a transaction and it rejects the charge. BofA charges account holders a $35 OD fee when there are insufficient funds to pay a requested transaction and it accepts the charge. BofA charges accountholders a $5 monthly MSAS Fee when the account fails to meet BofA's requirements for waiver of those fees. Collectively, these fees are referred to herein as "BofA Account Fees."

3.      Through the imposition of BofA Account Fees, BofA makes over a billion dollars a year. These fees are, by definition, most often assessed on consumers struggling to make ends meet with minimal funds in their accounts.

4.      In particular, BofA Account Fees often fall disproportionately on racial and ethnic minorities, the elderly, and the young. Every additional BofA Account Fee BofA assesses can be devastating to those living at the economic margins of our society. BofA Account Fees must be assessed sparingly (and consistently with BofA's contracts), if they are not to destroy the very accountholders on whom they are assessed.

5.      Unfortunately, BofA undertakes to maximize BofA Account Fees with these deceptive practices which also violate its contracts.

6.      As discussed more fully below, it is a breach of the Bank's contract and of reasonable consumers' expectations for the Bank to charge more than one $35 NSF Fee on the *same transaction*, since the contract explicitly states—and reasonable consumers understand—that the same transaction can only incur a *single* NSF Fee.

7.      As discussed more fully below, it is a breach of the Bank's contract and of reasonable consumers' expectations for the Bank to charge both a $35 NSF *and* a $35 OD Fee on

the *same transaction*, since the contract explicitly states—and reasonable consumers understand—that the same transaction cannot incur both types of fees.

8. As discussed more fully below, it is illogical, unconscionable, a breach of the Bank's contract and reasonable consumer expectation for the Bank to charge OD Fees—which is a fee for the extension of credit—when that credit is extended for the bank to *pay itself* or transfer funds to another BofA account. In other words, BofA is prohibited from charging OD Fees on a loan *from itself, to itself*.

9. Similarly, it is illogical, unconscionable, and a breach of the Bank's contract for it to charge *NSF Fees*—which are a charge putatively to compensate the bank for the "trouble" of sending back a transaction for which there are insufficient funds—for the privilege of rejecting a transaction to itself, when it knows that the effort will be futile before it even undertakes the transaction.

10. It is illogical, unconscionable, and a breach of the Bank's contract for BofA to assess $5 monthly service fees on certain savings accounts that meet its written conditions.

11. Plaintiff, and other BofA customers, have been injured by BofA's improper practices. On behalf of herself and the Class, Plaintiff seeks damages, restitution and injunctive relief for BofA's breach of contract, conversion, unjust enrichment, and violation of the North Carolina Unfair Trade Practices Statute and the Oklahoma Unfair Trade Practices statute.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than BofA.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because BofA is subject to personal jurisdiction here and regularly conducts business and is headquartered in the North Carolina, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## PARTIES

14.     Plaintiff is a citizen and resident of Oklahoma.  Plaintiff maintains checking and savings accounts at Bank of America.  At all times relevant, Plaintiff patronized a BofA banking center located in Tulsa, Oklahoma.

15.     Defendant BofA is a national bank with its headquarters and principal place of business located in Charlotte, NC.  Among other things, BofA is engaged in the business of providing retail banking services to consumers, including Plaintiff and members of the putative classes.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

16.     When a BofA checking account consumer attempts a transaction but has insufficient funds in her checking account to cover it, BofA either approves the transaction into overdraft (and charges a $35 OD Fee) or rejects the transaction (and charges a $35 NSF Fee).

17.     These fees and how and when they are charged are laid out in BofA's contracts with customers.

## I.     BOFA ASSESSES TWO, THREE AND SOMETIMES MORE NSF FEES ON THE SAME TRANSACTION IN BREACH OF ITS AGREEMENTS

### A.     Plaintiff's Experiences

18.     On June 19, 2017, Ms. Morris attempted to make on online bill payment of $60 towards her Citibank credit card bill through her BofA checking account.  Because Ms. Morris had insufficient funds in her checking account, BofA rejected that payment request and charged

Ms. Morris, a $35 NSF Fee for doing so. Unbeknownst to Plaintiff, that very same transaction was processed again by BofA three days later, on June 22, 2017. Again, BofA rejected that payment attempt and again charged Plaintiff a $35 NSF Fee for doing so. Then, yet again on June 27, 2017, the very same transaction was processed by BofA another time. This time, BofA paid the transaction and charged Plaintiff a $35 OD Fee for doing so. In sum, *BofA charged Plaintiff $115 in NSF ($70) and OD ($35) fees to process a single $60 credit card payment.*

19. On a separate occasion, on September 7, 2017, Ms. Morris initiated a $27 bill payment to her Comenity credit card account from her BofA checking account. BofA rejected that payment attempt and charged Plaintiff a $35 NSF Fee for doing so. Unbeknownst to Plaintiff, that very same transaction was processed again by BofA the next day, on September 8, 2017. Again, BofA rejected that payment attempt and again charged Ms. Morris a $35 NSF Fee for doing so. In sum, *BofA charged Plaintiff $70 in fees to attempt to process a single $27 credit card payment.*

20. On a separate occasion, on November 15, 2017, Plaintiff initiated a $20 bill payment to her Citibank credit card account. BofA rejected that payment attempt and charged Plaintiff a $35 NSF Fee for doing so. Unbeknownst to Plaintiff, that very same transaction was processed by BofA again five days later, on November 20, 2017. Again, BofA rejected that payment attempt and again charged Plaintiff a $35 NSF Fee for doing so. Then, yet again on November 24, 2017, the very same transaction was processed again. BofA again rejected the transaction and again charged Plaintiff a $35 NSF Fee for doing so. In sum, *BofA charged Plaintiff $115 in NSF fees to attempt to process a single $20 credit card payment.*

21. Plaintiff understood her bill payments to be single transactions as is laid out in BofA's contract, capable at most of receiving a *single* NSF *or* OD Fee. BofA itself also

understood the transactions to be single transactions, and its systems categorized them as such. Indeed, on Ms. Morris' bank statements, BofA described subsequent attempts to debit each transaction as a "RETRY PAYMENT."

22.     Ms. Morris took no affirmative action to reinitiate or resubmit any of the transactions, which were submitted for payment automatically over and over again.

**B.     BofA's Processing Practice**

23.     BofA maintains two separate and simultaneous transaction systems—and a third system that is used to assess OD fees.

24.     An "intraday" transaction processing system at BofA maintains an account's available balance in real time, increasing and decreasing during the day based on an accountholder's activity.

25.     BofA Account Fees Fee determinations are not made by BofA within the intraday processing system.

26.     A second transaction processing system is the "nightly batch processing" system.  It is in this system that transaction posting actually occurs at BofA.

27.     BofA then uses a third system to make BofA Account Fees fee determinations.  At the end of nightly batch processing, certain transactions are designated as potentially eligible for OD fees. The third system then applies a complicated algorithm to assess overdraft fees on certain transactions that had previously been designated as "overdrawn."

28.     Not all transactions that are supposedly "overdrawn" incur an OD Fee.  That decision is made by BofA in a third system.  Indeed, numerous transactions are considered "overdrawn" but are nonetheless not charged an OD Fee by BofA.

29.     In short, BofA can easily code transactions it considers "overdrawn" to not incur OD/NSF Fees.

6

30.     Upon information and belief, BofA's systems are programmed to recognize a single transaction featuring the same dollar amount and merchant when that single transaction is submitted for payment multiple times.

C.     **BofA's Relevant Account Disclosures**

31.     Bill pay transactions and transfers between BofA accounts are governed by the Bank's "Online Banking and Transfers Outside Bank of America Service Agreement and Electronic Disclosure" ("Online Banking Agreement") and its Deposit Agreement.  All three documents promise that only one NSF Fee or OD Fee will be charged *per transaction*, and indicate BofA will not intentionally create NSF or OD Fees on transfers to other BofA accounts.

32.     According to the Online Banking Agreement:

**Transfer/Payment Authorization and Sufficient Available Funds**

- You authorize Bank of America to withdraw, debit or charge the necessary funds from your designated account in order to complete all of your designated transfers and payments.
- You agree that you will instruct us to make a withdrawal only when a sufficient balance is or will be available in your accounts at the time of the withdrawal.
- The completion of a transfer or payment is subject to the availability of sufficient funds (including any overdraft protection plans) at the time the transaction is posted. **If enough funds to complete the transfer or payment are not available, we may either (i) complete the transaction and overdraw the account or (ii) refuse to complete the transaction. In either case, we may charge a non-sufficient funds (NSF), returned item, overdraft, or similar fee.** Transfers or payments from SafeBalance Banking® accounts will not be completed if there are not sufficient funds on the date of the scheduled transfer or payment. Please refer to the applicable account agreement and fee schedule for details. If you schedule a payment from an account maintained at another financial institution and there are insufficient funds in that account, you may be charged a fee by that financial institution.
- **At our option, we may make a further attempt to issue the payment or process the transfer request.**
- **Bank of America is under no obligation to inform you if it does not complete a payment or transfer because there are non-sufficient funds or credit in your account to process the transaction. In this case, you are responsible for making alternate arrangements or rescheduling the payment or transfer within Online Banking.**

[…]

7

**An NSF-fee, returned item, overdraft or similar fee may also apply if you schedule payments or transfers and your available balance is not sufficient to process the transaction on the date scheduled or, in the case of a personal check, on the date when the check is presented to us for payment.**

(emphases added).

33.     BofA's Deposit Agreement states:

"Item" means "all orders and instructions for the payment, transfer or withdrawal of funds from an account. As examples, item includes: a check, substitute check, purported substitute check, electronic transaction (including an ACH transaction, ATM withdrawal or transfer, or point of sale transaction), draft, demand draft, remotely created check, remotely created consumer check, image replacement document, indemnified copy, preauthorized draft, *preauthorized payment, automatic transfer*, telephone-initiated transfer, Online Banking transfer or bill payment instruction, withdrawal slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, or other order of instruction for the payment, transfer, or withdrawal of funds, or an image, digital image, or a photocopy of any of the foregoing.

[…]

When we determine that you do not have enough available funds in your account to cover a check or other item, then we consider the check or other item an insufficient funds item…without notice to you, **we either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or we decline or return the insufficient funds item without payment (a returned item).**

(emphases added).

D.      **BofA May Not Charge More Than One NSF Fee on a Single Transaction that is Submitted for Payment Multiple Times, and It May Not Charge Both OD and NSF Fees on a Single Transaction**

34.     Consistent with express representations in the contract, reasonable consumers understand any given instruction for payment to be one, singular transaction and one "item" as that term is used in BofA's contract documents.

35.     As discussed herein, the Bank has this same understanding in practice, since its systems code transactions in a way that alerts the Bank when the same item or transaction is being re-submitted for payment.

36.     BofA's contract documents bar BofA from assessing multiple NSF Fees on the same item or transaction.

37.     First, the Online Banking Agreement provides BofA the authority to charge only one NSF or OD Fee per transaction.  While that Agreement states that the bank "may" attempt again to process the transaction a single additional time, the Agreement does not state that such a single re-attempt will incur an additional NSF or OD Fee.

38.     Second, the Online Banking Agreement states that no more than one re-attempt will occur.  However, as alleged herein, BofA frequently processes the same transaction more than twice.

39.     Third, the Online Banking Agreement states that a single NSF or OD Fee will be charged if "you schedule payments of transfers" for which there are insufficient funds.  But, as alleged herein, Plaintiff only scheduled her payments or transfers *once*, and took no action to request re-processing of her transactions.  Because Plaintiff only scheduled a given debit once, BofA was only entitled to charge one OD or NSF on each debit. In other words, when a transaction is returned for insufficient funds, it cannot be the basis for another NSF or OD Fee without an additional action from the accountholder to again seek payment for the item.

40.     Fourth, the Online Banking Agreement's terms are starkly binary:  for a given transaction, the Bank may pay *or* return it, but it cannot do both for the same transaction, and it cannot do the same thing more than once.

41.     The Deposit Agreement makes similar representations.  It defines "item" to encompass all submissions for payment of the same transaction.  "Item" cannot mean each re-submission of the same transaction because it is defined to mean "**all orders and instructions** for the payment, transfer or withdrawal of funds" and there is no *new* order or instruction for payment of a re-submitted item.  It is simply another attempt at the original order or instruction.  Again, Plaintiff never took any action to re-submit or renew her original instructions for payments on her credit card accounts.

42.     The Deposit Agreement's terms also are also starkly binary: for a given transaction, the Bank may pay *or* return it, but it cannot do both for the same transaction, and it cannot do the same thing more than once.

43.     In the alternative, to the extent the account documents do not explicitly bar the polices described above, Bank of America exploits contractual discretion to the detriment of accountholders and breaches good faith and fair dealing when it uses these policies.

44.     *First*, the Bank uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations.  BofA uses its contractual discretion to set the meaning of that term to choose a meaning that directly causes more NSF Fees or OD Fees.

45.     *Second*, the Bank maintains a huge amount of discretion not to charge or "deduct" NSF Fees on given transactions.  By charging more than one NSF Fee on a given transaction, BofA engages in bad faith and contradicts reasonable consumer expectations.

46.     For the same reasons, the contract documents also bar BofA from assessing both NSF Fees and OD Fees on the same item or transaction.

## II.     BOA ASSESSESS OD AND NSF FEES ON TRANSFERS TO OTHER BOA ACCOUNTS AND ON PAYMENTS TO ITSELF

### A.     Plaintiff's Experience

47.     BofA charges overdraft and NSF Fees—sometimes numerous fees for the same transactions—when an accountholder's payment or transfer from a BofA checking account to *another BofA account* causes the first account to become overdrawn.  In other words, BofA charges its accountholders a $35 NSF or OD Fees to pay or transfer funds to itself, or to reject a payment or transfer to itself.

48.     Plaintiff makes payments from her BofA checking account to a BofA home equity line of credit ("HELOC") in her father's name.

49.     On May 4, 2016, a payment to the HELOC was attempted on Plaintiff's account. BofA rejected that payment attempt and charged Plaintiff a $35 NSF Fee for doing so.  The Bank resubmitted that very same transaction the next day, on May 5, 2016.  Again, BofA rejected that payment attempt and again charged Plaintiff a $35 NSF Fee for doing so.  In sum, *BofA charged Plaintiff $70 in fees to attempt and fail to process a single payment to itself, even though it knew such a payment attempt would be futile.*

50.     On July 5, 2016, a payment to the HELOC was attempted on Plaintiff's account. BofA rejected that payment attempt and charged Plaintiff a $35 NSF Fee for doing so.  The Bank resubmitted that very same transaction the next day, on July 6, 2016.  Again, BofA rejected that payment attempt and again charged Plaintiff a $35 NSF Fee for doing so.  In sum, *BofA charged Plaintiff $70 in fees to attempt and fail to process a single payment to itself, even though it knew such an attempt would be futile.*

51.     Rather than cancelling or delaying the transfer to the HELOC account, based on its knowledge of Plaintiff's account balances, BofA pushed it through then forced Plaintiff to pay handsomely and repeatedly for a transaction that was costless to the Bank and counterproductive for Plaintiff.

52.     In short, for pushing through attempts for payment to itself that it knew would be futile, BofA charged Plaintiff multiple $35 NSF Fees.

53.     This is true even though BofA has the ability to check account balances before submitting transactions for payment to itself, using its bird's-eye view of all BofA accounts.

54.     BofA has the contractual discretion to reject transfer attempts.  There is absolutely no reason to attempt a transaction it knows will fail—except to maximize its fee revenue.

**B.      The Purpose and Nature of OD and NSF Fees**

55.     When a bank rejects an attempted transaction submitted by a different bank on a checking account due to insufficient funds, it sends an electronic notification back to the merchant stating that the transaction was not approved.  BofA charges a $35 NSF Fee when it performs this action.  Because rejection is essentially cost-free, the $35 NSF is pure profit.

56.     The rejection of an attempted transaction submitted by another bank provides zero benefit to the accountholder, as the CFPB has noted:

> An important consumer outcome of any overdraft program is the percentage of negative transactions that are paid (i.e., result in overdrafts) or returned unpaid (i.e., were NSFs). **Paying overdraft transactions may confer some benefit (in exchange for the associated fees and other costs) to consumers by helping them make timely payments and avoid late penalty fees and/or interest charges from a merchant or biller. In contrast, returning an item generally confers little benefit to the consumer (other than perhaps deterring future overdrafting and any subsequent consequences) and can result in an NSF fee as well as additional related fees, such as a returned check fee charged by the institution to whom the check was presented or a late fee charged by the entity to whom payment was due**. At

12

the median, study banks paid into overdraft 83% of transactions that exceeded the available balance in 2011 and returned 17%.

*CFPB Study of Overdraft Programs*, CFPB (June 2013), at 26 (emphasis added), available at https://files.consumerfinance.gov/f/201306_cfpb_whitepaper_overdraft-practices.pdf.

57.     When bank approves a transaction submitted by a different bank for an account with insufficient funds, it pays the transaction and charges a $35 OD Fee for the service of extending credit for that transaction.

58.     When a bank pays an overdraft, it is extending credit.  It is very expensive credit, indeed, according to the FDIC:

> For almost all study population banks operating an automated overdraft program, the main fee associated with the program was an NSF usage fee. Usage fees reported by these banks ranged from $10 to $38; the median fee was $27, charged on a per-transaction basis in almost all cases. In this context, a $27 fee charged for a single advance of $60 that was repaid in two weeks **roughly translated into an APR of 1,173 percent.** Many surveyed banks (24.6 percent) assessed additional fees on accounts that remained in negative balance status in the form of flat fees or interest charged on a percentage basis.

FDIC Study of Bank Overdraft Programs, 2008 (emphasis added).

59.     In a normal situation, when BofA is making an approve or reject decision on a transaction submitted by another bank for payment, BofA usually has little or no insight into the nature of the transaction or the costs and benefits of paying or returning that transaction.  As such, for those transactions BofA relies exclusively on an automated, internal program that makes pay or return decisions based on an accountholder's credit risk, past overdraft behavior, and account balance history:

> As automated processes are necessary for institutions that choose to authorize or decline ATM and POS transactions that will overdraw an account, many institutions—including study banks— use these same processes to make pay-return decisions for check and ACH transactions. These institutions generally run programs

that assign to each account a limit as to the amount of overdraft coverage the institution is willing to extend. For accounts that have opted in to ATM and POS debit overdraft coverage, when a request for authorization is received that exceeds the available funds, the bank will determine whether to authorize the transaction by reviewing it against the assigned overdraft coverage limit. Similarly, in nightly (or intra-day) posting, the bank will review potential NSF and overdraft items against the assigned overdraft coverage limit. Items processed during nightly (and intra-day) posting will generally be paid up to the coverage limit; once the account's limit is reached, subsequent items will be returned unpaid.

*CFPB Study of Overdraft Programs*, at 49.

60.     But when BofA is deciding whether to submit, approve or reject transactions that transfer money to other BofA accounts or that pay itself, BofA is both the submitting Bank and the merchant being paid.  This provides BofA will unique insight into, and control over, whether and how transactions to pay or transfer money to itself are processed.

61.     Neither BofA's account contract nor its automated processing and pay/reject decision-making practices properly contemplate or account for the situation where BofA is both the payee and the payor.

62.     Thanks to an aggressive "cross-selling" effort by BofA, there are hundreds of thousands of BofA checking accountholders who also regularly pay BofA or transfer funds to BofA, because they also hold BofA savings accounts, lines of credit, credit cards, and mortgages.

63.     NSF and OD Fees become absurdities when they are assessed on accountholders simply trying to move funds, or make payments, to other accounts at BofA.  But BofA charges such fees to hundreds of thousands of its own accountholders each year.

14

### C. BofA Has Made a Major Effort to Cross-Sell Its Products, Promising Convenience and Efficiency but Also Providing It With a Bird's-Eye View of Its Accountholders' Financial Details

64.     Banks like BofA have made a major effort to "cross-sell" products.  Consumers may have a checking account, but also a credit card, line of credit, and/or savings account, etc.

65.     This allows for assessment of additional fee revenue.

66.     Selling additional products to existing customers has long been a key priority for many banks with the explicit goal to improve the bottom line.

67.     As one industry publication put it: "Cross-selling comes with its advantages, of course. It considerably reduces customer acquisition costs, servicing, and marketing and communication costs and thereby substantially increases spread for banks. It is well understood and key finding that greater the number of products held by customer leads to an increased probability of retention." *Cross Selling at Banks: Adopting the Right Strategy for a Healthy Bottom Line*, Customer Think (Jan. 2010), available at http://customerthink.com/cross_selling_at_banks_adopting_right_strategy_for_health_bottom_li ne/.

68.     It continues: "The more relationships a bank has with a customer, the more loyal the customer will be and the bank gets to know the customer through several relationships, thus the assessment of the credit quality of the customer can be bettered. At the end it will be a win-win situation for both the bank and customer as it is cheaper and easier to get customer from one's own data base than going out for getting new customers. Banks should be careful in exploiting this situation and see that the bottom line along with the top line goes up and not just cross sell of products."

69. The Bank shares information across accounts, targeting products and services, as it tracks in intimate detail various consumer accounts at once, giving the bank unique access to the complete financial picture of a consumer on an hour to hour basis.

70. BofA routinely and systematically shares detailed information across accounts, and informs consumers this is so: "We may share information that we have about you and your accounts among the Bank of America family of companies." Deposit Agreement.

71. In some cases, the cross-selling and information gathering is used solely to pummel consumers with fees and increase fee revenue.

**D.** **BofA's Relevant Account Disclosures**

72. The Deposit Agreement states:

"Sending Funds Transfers"

This Sending Funds Transfers section applies to wire transfers…and **transfers we make between your Bank of America accounts.**

We **may reject payment orders**. We notify you of any rejection orally, electronically, or in writing.

73. BofA's Deposit Agreement also states:

"Item" means "all orders and instructions for the payment, transfer or withdrawal of funds from an account. As examples, item includes: a check, substitute check, purported substitute check, electronic transaction (including an ACH transaction, ATM withdrawal or transfer, or point of sale transaction), draft, demand draft, remotely created check, remotely created consumer check, image replacement document, indemnified copy, preauthorized draft, preauthorized payment, automatic transfer, telephone-initiated transfer, Online Banking transfer or bill payment instruction, withdrawal slip, in-person transfer or withdrawal, cash ticket, deposit adjustment, or other order of instruction for the payment, transfer, or withdrawal of funds, or an image, digital image, or a photocopy of any of the foregoing.

[…]

**[W]e may authorize and pay overdrafts for other types of transactions.** Other types of transactions include checks and other transactions made using your checking account number, recurring debit card transactions, ACH transactions, preauthorized payments, and automatic and online bill payments.

[…]

We **may deduct fees, overdrafts** and other amounts you owe us under this Agreement from your account with us or our affiliates…We may make these deductions at any time without prior notice to you or request from you. **If there are not enough funds in your account to cover the amounts you owe us, we may overdraw your account, without being liable to you.**

[…]

We may debit your account for a check or other item drawn on your account either on the day it is **presented to us for payment**, by electronic or other means, or on the day we receive notice that the item has been **deposited for collection at another financial institution**---whichever is earlier. If you do not have sufficient available funds to cover the item, we decide whether to return it or to pay it and overdraw your account.

We **may determine your balance** and make our decision on an insufficient funds item at any time between **our receipt of the item or notice and the time we must return the item**. We are required to determine your account balance only once during this time period.

[…]

If we decide not to pay a check or other item drawn on your account, we may return the original, an image or a copy of the item or we may send an electronic notice of return….If we send an electronic notice of return, you agree that any person who receives that electronic notice may use it to make a claim against you to the same extent and with the same effect as if we had returned the original item.

[…]

17

(emphases added).

74.     BofA's Fee Schedule states:

Overdraft Fee:

**When we determine that you do not have enough available funds in your account to cover an item**, when we either authorize and pay the item and overdraw your account (an overdraft item) or we decline or return the item unpaid (an NSF: returned item).

[…]

We do not charge you an NSF: Returned Item Fee when we decline an ATM transaction or debit card transaction. We do charge you an NSF: Returned Item Fee each time we decline or return any other type of transaction unpaid. These other types of transactions include checks and other transaction made using your checking account number, Online and automatic bill payments, and ACH transactions.

75.     BofA's Card Agreement states:

> When you do not have enough available funds in your account…to cover everyday non-recurring debit card purchases or ATM withdrawals, we will decline the transaction and you will not be subject to overdraft fees. For check, ACH, recurring debit card transaction and online bill payments, we may decline or return the transaction unpaid or complete it and overdraw your account.

**E.     BofA May Not Charge OD or NSF Fees on Transfers or Payments to Itself**

76.     The "Sending Funds Transfers" governs all transfers to other BofA accounts.

77.     That section provides no authorization for BofA to charge OD or NSF on such transactions—indeed it never mentions fees once.

78.     Consistent with express representations in the contract, reasonable consumers understand that the Bank may "reject" payment orders and transfers to other BofA accounts. It can do so without even submitting them unnecessarily. Read reasonably and in good faith, the contract indicates BofA will not bother submitting a transaction when it knows attempted payment will be futile.

79.     Reasonable consumers understand BofA will not use the intimate, detailed financial information regarding various BofA accounts held by the same person as a tool to maximize NSF and OD Fees.

80.     Reasonable consumers believe the Bank would reject transfers to itself, or to other BofA accounts, when such transfers would cause a cascade of fees. There is no reason to try a transaction over and over when the bank knows or should know it would be an entirely futile effort.

81.     With the exception of the "Sending Funds Transfers" section, the contract provisions excerpted above are written for the common situation in which BofA is transferring checking account funds to an entity that is not itself.

82.     One provision expressly states that reality: "BofA states that "[w]e may debit your account for a check or other item drawn on your account either on the day it is **presented to us for payment**, by electronic or other means, or on the day we receive notice that the item has been **deposited for collection at** <u>another</u> **financial institution**—whichever is earlier. If you do not have sufficient available funds to cover the item, we decide whether to return it or to pay it and overdraw your account." BofA cannot present an item to itself for payment, nor are transfers or payments to BofA "deposited for collection at another financial institution"—the funds are deposited where they started out, at BofA.

83.     Other contract provisions are nonsensical when a BofA account is both the payee and the payor, and thus have little or no applicability to the situation at issue in this Action:

- BofA states that it "when it determines" there are insufficient funds for an item, it will either pay or return the item. But for transfers or payments to itself, it makes this "determination" even before submitting the item to itself.
- BofA states that "[w]e **may determine your balance** and make our decision on an insufficient funds item at any time between **our receipt of the item or notice and the time we must return the item**." But it does not "receive" the item

(since it already has it) and it has no "time" to return the item (since it already has it). No reasonable understanding of English term "receive" can indicate one entity or person giving something to itself.

- BofA also states that "[i]f we send an electronic notice of return, you agree that any person who receives that electronic notice may use it to make a claim against you to the same extent and with the same effect as if we had returned the original item." But of course BofA does not need "electronic notice" of its own rejection.

84. The Fee Schedule alone bars NSF Fees on BofA's own transactions, since rejected transactions are not truly "returned unpaid." Since BofA simply resubmits its own transactions until it gets paid, they are, at most, delayed.

85. Even if provisions of the Deposit Agreement other than the "Sending Funds Transfers" section had any applicability to payments or transfers from a BofA checking account to other BofA accounts, those provisions too indicate BofA will not charge NSF or OD Fees on such transactions to itself.

86. Reasonable consumers understand that transfers to BofA accounts or payments to BofA do not count as "items" subject to NSF or OD Fees, since BofA has the right to protect its interests (and assess fees, if necessary) on the accounts that a consumer is attempting to transfer to or make a payment on. For example, if a consumer attempts a bill payment to a BofA line of credit or credit card on insufficient funds, BofA can (and does) charge late fee in that circumstance. No reasonable consumer expects it will also charge NSF Fees on the originating account.

87. Moreover, BofA's contract defines "item" is defined in a way that does not include transfers to other BofA accounts or payments to other BofA accounts. While the term "item" includes dozens of examples of transaction types included in the term, BofA never once mentions transactions to itself in the definition. This supports the reasonable consumer understanding that BofA transactions are not themselves "items" on which OD or NSF Fees can be charged.

88. The Deposit Agreement (or any other account document) never states that transfers to other BofA accounts or payments to other BofA accounts will incur NSF or OD Fees.

89. The Deposit Agreement never states that BofA will attempt to push through a transfer or payment to itself, even where it knows full well that it will instantly decline that same transaction.

90. To the extent the account documents do not explicitly bar the polices described above, Bank of America exploits contractual discretion and violates its duties of good faith and fair dealing to the detriment of accountholders when it uses these policies.

91. <u>First</u>, the Bank uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. BofA uses its contractual discretion to set the meaning of that term to choose a meaning that directly causes more NSF Fees and OD Fees.

92. The contract documents never state that BofA will attempt to push through a transfer or payment to itself, even where it knows full well that the transaction will decline—this totally futile payment submission has no purpose, except a bad faith purpose to create more account fees.

93. <u>Second,</u> even if it were proper to push through a futile attempt, the Bank maintains a huge amount of discretion not to charge or "deduct" NSF Fees on given transactions. By charging both NSF Fees and OD Fees on a given transaction, BofA engages in bad faith and contradicts reasonable consumer expectations.

94. That is especially true because when items are returned—say, a bounced check—a payee can then turn to other means to recoup its payment. When BofA returns a payment to itself,

it of course has many other means to try to seek payment. It could assess a late fee on the account itself (and does, it many cases). Or, it could check the balance again before trying to debit.

95.     Third, no consumer believes the Bank would knowingly submit transactions it has the express power to reject. Consistent with express representations in the contract, reasonable consumers understand that the Bank may "reject" payment orders and transfers to other BofA accounts. It can do so without even submitting them unnecessarily. Good faith performance of the contract requires BofA will not bother submitting a transaction when it knows attempted payment will be futile.

96.     BofA violates the covenant of good faith and fair dealing when it authorizes transactions for payment or transfer to itself that it knows will be declined.

### III.     BofA Charges Monthly Service Fees on Savings Accounts Even When Such Accounts Have Met Conditions for Waiver of the Service Fee

97.     Plaintiff also maintains a savings account with BofA.

98.     According to BofA's Fee Schedule for Personal Accounts, dated November, 2016:

Regular Savings

Monthly maintenance fee - $5
To avoid the monthly maintenance fee, meet one of the following requirements during each statement cycle:

[…]

To avoid the monthly maintenance fee you may also make combined monthly automatic transfers of $25 or more from your Bank of America checking account to your savings account during the immediately preceding statement cycle.

99.     On March 3, 2017, Plaintiff transferred $235 from her checking account to her savings account. Still, during the immediately following statement cycle for her savings account, she was assessed a $5 monthly service charge on April 26, 2017, in violation of the contract.

100. On September 29, 2017, Plaintiff transferred $25 from her checking account to her savings account. Still, during the immediately following statement cycle for her savings account, she was assessed a $5 monthly service charge on November 28, 2017, in violation of the contract.

## CLASS ALLEGATIONS

101. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

102. The proposed classes are defined as:

**Class 1 - Nationwide Multiple NSF Class**
All Bank of America checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF Fees on the same transaction. (the "Multiple NSF Class").

**Class 2 - Nationwide NSF/OD Class**
All Bank of America checking account holders in the United States who, during the applicable statute of limitations, were charged NSF and OD Fees on the same transaction. (the "NSF/OD Class").

**Class 3 - Nationwide BofA Account Transfer Class**
All Bank of America checking account holders in the United States who, during the applicable statute of limitations, were charged multiple NSF or OD Fees on transfers to other BofA accounts (the "BofA Account Transfer Class").

**Class 4 - Nationwide BofA Savings Account Service Fee Class**
All Bank of America savings account holders in the United States who, during the applicable statute of limitations, were charged monthly service fees on savings accounts even when they met the conditions for waiver of the fees (the "BofA Savings Account Fee Class").

**Subclass 5 - Oklahoma Multiple NSF Class**
All Bank of America checking account holders in Oklahoma who, during the applicable statute of limitations, were charged multiple NSF Fees on the same transaction. (the "Oklahoma Multiple NSF Sub-Class").

**Subclass 6 - Oklahoma NSF/OD Class**
All Bank of America checking account holders in Oklahoma who, during the applicable statute of limitations, were charged NSF and OD Fees on the same transaction. (the "Oklahoma NSF/OD Sub-Class").

**Subclass 7 - Oklahoma BofA Account Transfer Class**
All Bank of America checking account holders in Oklahoma who, during the applicable statute of limitations, were charged multiple NSF or OD Fees on transfers to other BofA accounts (the "Oklahoma BofA Account Transfer Sub-Class").

**Subclass 8 - Oklahoma BofA Savings Account Service Fee Class**
All Bank of America savings account holders in Oklahoma who, during the applicable statute of limitations, were charged monthly service fees on savings accounts even when they met the conditions for waiver of the fees (the "Oklahoma Savings Account Fee Class").

The National Classes and the Oklahoma Subclasses are collectively referred to herein as the "Classes."

103.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

104.    Excluded from the Classes are BofA, its parents, subsidiaries, affiliates, officers and directors, any entity in which BofA has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

105.    The members of the Classes are so numerous that joinder is impractical.   The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to BofA's records.

106.    The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was charged multiple NSF fees on a single transaction, NSF and OD fees on a single transaction, and/or NSF or OD fees on a transaction with

a BofA related entity. The representative Plaintiff, like all Class members, has been damaged by BofA's misconduct in that she has been assessed unfair and unconscionable charges. Furthermore, the factual basis of BofA's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

107. There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

108. Among the questions of law and fact common to the Classes are whether BofA:

    a. Violated contract provisions by charging multiple NSF and/or OD Fees on the same transaction; by charging NSF and/or OD Fees on transfers to other BofA accounts; and by charging service fees on savings accounts even when conditions for waiver of such service fees have been met;

    b. Breached its covenant of good faith and fair dealing with Plaintiff and other members of the Classes through its NSF and OD Fee policies and practices;

    c. Converted money belonging to Plaintiff and other members of the Classes through its NSF and OD Fee policies and practices;

    d. Was unjustly enriched through its NSF and OD Fee policies and practices; and

    e. Violated the consumer protection acts of certain states through its NSF and OD Fee policies and practices.

    f. The proper method or methods by which to measure damages, and

    g. The declaratory relief to which the Classes are entitled.

109. Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices of BofA's Account Agreement and other

related documents. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

110. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

111. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of BofA, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and BofA's misconduct will proceed without remedy.

112. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of the Classes)**

113. Plaintiff repeats paragraphs 1 through 112 above.

114.    Plaintiff and BofA have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in BofA's Account Agreement and related documentation.

115.    No contract provision authorizes BofA to charge: (1) multiple NSF fees on a single transaction; (2) NSF and OD fees on the same transaction; (3) NSF or OD fees on a transaction with a BofA related entity.

116.    In addition, BofA's contract promises that it will waive the $5 monthly service fee on savings accounts when certain conditions are met, but it charges the service fee even when such conditions are met by accountholders like Plaintiff.

117.    Therefore, BofA breached the terms of its Account Agreement by charging these fees.

118.    Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

119.    Plaintiff and members of the Classes have sustained damages as a result of BofA's breaches of the account contract.

**SECOND CLAIM FOR RELIEF**
**Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of the Classes)**

120.    Plaintiff repeats paragraphs 1 through 112 above.

121.    Plaintiff and BofA have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in BofA's Account Agreement and related documentation.

122.    Under the laws of the states where BofA does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties

according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

123.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

124.    BofA has breached the covenant of good faith and fair dealing in the Account Agreement through its NSF and OD policies and practices as alleged herein.

125.    Plaintiff and members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement.

126.    Plaintiff and members of the Classes have sustained damages as a result of BofA's breach of the covenant of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the Classes)

127.    Plaintiff repeats paragraphs 1 through 112 above.

128.    BofA had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

129.    BofA has wrongfully collected NSF and OD fees from Plaintiff and the members of the Classes, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

130.    BofA has, without proper authorization, assumed and exercised the right of

ownership over these funds, in hostility to the rights of Plaintiff and the members of the Classes, without legal justification.

131.    BofA continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

132.    BofA intends to permanently deprive Plaintiff and the members of the Classes of these funds.

133.    These funds are properly owned by Plaintiff and the members of the Classes, not BofA, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the National Class.

134.    Plaintiff and the members of the Classes are entitled to the immediate possession of these funds.

135.    BofA has wrongfully converted these specific and readily identifiable funds.

136.    BofA's wrongful conduct is continuing.

137.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Classes have suffered and continue to suffer damages.

138.    By reason of the foregoing, Plaintiff and the members of the Classes are entitled to recover from BofA all damages and costs permitted by law, including all amounts that BofA has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Classes)**

139.    Plaintiff repeats paragraphs 1 through 112 above.

140.    Plaintiff, on behalf of herself and the Classes, assert a common law claim for unjust enrichment.

141.    By means of BofA's wrongful conduct alleged herein, BofA knowingly provided banking services to Plaintiff and members of the Classes that was unfair, unconscionable, and oppressive.

142.    BofA knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Classes.  In so doing, BofA acted with conscious disregard for the rights of Plaintiff and members of the Classes.

143.    As a result of BofA's wrongful conduct as alleged herein, BofA has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

144.    BofA's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

145.    Under the common law doctrine of unjust enrichment, it is inequitable for BofA to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of NSF and OD fees on Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner.  BofA's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

146.    The financial benefits derived by BofA rightfully belong to Plaintiff and members of the Classes.  BofA should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by BofA traceable to Plaintiff and the members of the Classes.

147.    Plaintiff and members of the Classes have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**North Carolina Consumer Protection Law**
**(On Behalf of the National Classes)**

148.     Plaintiff repeats paragraphs 1 through 112 above.

149.     As described herein, BofA's unconscionable and unfair actions regarding the assessment of BoA Account Fees constitute unfair competition and unfair and deceptive trade practices as defined by the laws of the United States of America and the State of North Carolina, including but not limited to N.C.G.S. § 75.1-1 *et seq.*

150.     Plaintiff has been damaged as the direct and proximate result of BofA's unfair competition and unfair and deceptive trade practices.

151.     Plaintiff is entitled to recovery of treble damages and, in the discretion of the Court, reasonable attorneys' fees and costs by virtue of BofA's unfair and deceptive trade practices.

### SIXTH CLAIM FOR RELIEF
### Oklahoma Consumer Protection Law
### (On Behalf of the Oklahoma Subclasses)

152.     Plaintiff repeats paragraphs 1 through 57 above.

153.     BoA's conduct, as described herein, constitutes a "deceptive trade practice," which is defined in the Oklahoma Consumer Protection Act to include "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person." *See* Okla. Stat. tit. 15 § § 752(13), 753(20).

154.     BoA's unlawful conduct occurred, and continues to occur, in the conduct of trade or commerce and in the course of BoA's business.

155.     As an actual and proximate result of Defendant's misconduct, Plaintiff and the Classes were injured and suffered damages by BoA's conduct, including by overpaying BoA Account Fees.

156.     BoA is liable to Plaintiff and the Class for damages in amounts to be proven at trial,

including attorneys' fees and costs under § 761.1.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.      Declaring BofA's NSF and OD fee policies and practices to be wrongful, unfair and unconscionable;

2.      Restitution of all NSF and OD fees paid to BofA by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.      Disgorgement of the ill-gotten gains derived by BofA from its misconduct;

4.      Actual damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Treble damages and attorneys' fees as provided N.C.G.S. § 75.1-1 *et seq*.;

8.      Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.      Such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this complaint that are so triable as a matter of right.

Dated: March 29, 2018                    Respectfully submitted,

                                         By: /s/ DAVID M. WILKERSON
                                         David M. Wilkerson
                                         NC State Bar No. 35742
                                         Larry McDevitt
                                         NC State Bar No. 5032
                                         The Van Winkle Law Firm
                                         11 North Market Street
                                         Asheville, NC 28801
                                         Phone:   828-258-2991
                                         Fax:     828-257-2767
                                         Email:   dwilkerson@vwlawfirm.com
                                         Email:   lmcdevitt@vwlawfirm.com

                                         Jeffrey D. Kaliel (pending *pro hac vice*)
                                         Sophia Gold (pending *pro hac vice*)
                                         KALIEL PLLC
                                         1875 Connecticut Ave., NW, 10th Floor
                                         Washington, D.C.  20009
                                         (202) 350-4783
                                         *jkaliel@kalielpllc.com*
                                         *sgold@kalielpllc.com*

                                         James J. Pizzirusso (pending *pro hac vice*)
                                         HAUSFELD LLP
                                         1700 K St., NW, Ste 650
                                         Washington, DC 20006
                                         (202) 540-7154
                                         *jpizzirusso@hausfeld.com*

                                         Attorneys for Plaintiff
                                         and the Putative Class