IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| LISA MORRIS, MICHAEL BUI, and TUMIKA WILLIAMS on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | CASE NO. 3:18-cv-157-RJC-DSC |

**MEMORANDUM IN SUPPORT OF DEFENDANT BANK OF AMERICA, N.A'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

    A.   The Pertinent Governing Agreements ................................................... 2

    B.   Plaintiffs' Alleged Violations. ............................................................... 4

        1.   Allegations Regarding Multiple Fees Assessed on the Same Transaction. ................................................................................ 4

        2.   Allegations Regarding Fees Charged on Intra-Bank Transactions. ........... 5

        3.   Premature NSF/OD Fee Deduction Allegations. ...................................... 5

        4.   Allegations Regarding MSAS Fees ........................................................ 5

III. LEGAL STANDARD ......................................................................................... 6

IV.  ARGUMENT ...................................................................................................... 6

    A.   Each Plaintiff Has Failed to State a Claim For Breach of Contract ...................... 6

        1.   Plaintiffs Fail to Plead Facts Showing that BANA Breached the Deposit Agreement and Schedule of Fees in Assessing Multiple Fees. .................................................................................. 7

        2.   Plaintiffs Fail to Plead a Breach by BANA in Assessing Fees for Online Intra-Bank Transactions ............................................................... 8

        3.   Morris Fails to Adequately Plead a Breach of Contract Related to the MSAS Fees ......................................................................... 8

        4.   Bui's Breach of Contract Claim Also Fails Because California Law Requires a Showing of Performance or Excuse for Nonperformance. ...................................................................... 9

        5.   Williams Breach of Contract Claim Fails Because It Fails to Establish that the Fees BANA Charged Were Improper ......................... 10

    B.   Plaintiffs' Claims for Breach of the Covenant of Good Faith & Fair Dealing Must Be Dismissed as Duplicative of their Breach of Contract Claims ................................................................................... 11

        1.   Morrises' Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed. .......................................................................... 11

        2.   Bui's Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed. ............................................................................... 12

        3.   Williamses' Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed. ................................................................... 13

    C.   Plaintiffs' Conversion Claims Fail as a Matter of Law ....................... 14

# TABLE OF CONTENTS
(continued)

1. Morrises' Claim Fails as Money Cannot Be Converted Under Oklahoma Law......................................................................... 14

2. Bui's Conversion Claim Fails Under California Law for Multiple Reasons. ............................................................................. 15

3. Williamses' Conversion Claim Fails for Similar Reasons, as well as Because of her Failure to Allege Demand for Return. ........................ 16

D. Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law ........................... 17

1. Morrises' Unjust Enrichment Claim Fails As She Has an Adequate Legal Remedy. ...................................................................... 17

2. Bui's Unjust Enrichment Claim Fails Because It is Not a Cause of Action............................................................................ 18

3. Williams Cannot State a Claim for Unjust Enrichment Under Georgia Law............................................................................. 18

E. Plaintiffs' NCUDTPA Claim Is Preempted and Inadequately Pled ................... 19

F. Morrises' OCPA Claim Fails As the OCPA Does Not Apply to BANA ............ 21

G. California UCL Claims is Inadequately Pled and Preempted by Federal Law ................................................................................... 22

H. Williams Cannot State a Claim for Violation of the Georgia FBPA.................. 24

V. CONCLUSION............................................................................. 25

Case 3:18-cv-00157-RJC-DSC   Document 23   Filed 08/27/18   Page 3 of 36

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Distribs. v. Latrobe Brewing Co.*,
 847 F. Supp. 376 (E.D.N.C. 1993)........................................................................19

*Arnold v. San Ramon Valley Bank*,
 184 Cal. 632, 194 P. 1012 (1921) ........................................................................15

*Bank of Am. v. City & County of S.F.*,
 309 F.3d 551 (9th Cir. 2002) ...............................................................................24

*Bank of Marin v. England*,
 385 U.S. 99, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966).........................................15

*Berkeley v. Wells Fargo Bank*,
 No. 15-cv-00749-JSC, 2016 U.S. Dist. LEXIS 1295 (N.D. Cal. Jan. 6, 2016) .......................9

*Block v. Pre-Paid Legal Services, Inc.*,
 No. CIV-07-1304-F, 2008 WL 723775 (W.D. Okla. 2008) ................................12

*Briggs v. Freeport-McMoran Copper & Gold, Inc.*,
 No. CIV-13-1157-M, 2015 WL 1461884 (W.D. Okla. Mar. 30, 2015) ................17

*Brown Realty Assocs., Inc. v. Thomas*,
 193 Ga. App. 847, 389 S.E.2d 505 (1989)..........................................................25

*Brown v. Economy Premier Assurance Co.*,
 Docket No. 1:17-cv-00206-MOC-DLH, 2018 WL 1594669 (W.D.N.C. Apr. 2,
 2018) ....................................................................................................................19

*Browning et. al. v. Univlever United States, Inc.*
 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017) .....................................................18

*Byars v. SCME Mortg. Bankers, Inc.*,
 109 Cal. App. 4th 1134 135 Cal. Rptr. 2d 796 (2003)..........................................24

*United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
 637 F.3d 1047 (9th Cir. 2011) .............................................................................22

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
 222 Cal. App. 3d 1371 (1990) .............................................................................13

*Carma Developers Cal. Inc. v. Marathon Dev. Cal. Inc.*,
 2 Cal.4th 342 (1992) ............................................................................................13

*CDF Firefighters v. Maldonado*,
  158 Cal. App. 4th 1226, 70 Cal. Rptr. 3d 667 (2008) ..............................................7

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999) ..............................23, 24

*Chancellor v. Gateway Lincoln-Mercury, Inc.*,
  233 Ga. App. 38 (1998) ..........................................................................................24

*Childs v. Unified Life Ins. Co.*,
  781 F.Supp.2d 1240 (N.D. Okla. 2011) ............................................................14, 15

*Cimarex Energy Co. v. Calhoon*,
  Nos. CIV-11-525, CIV-11-725-D, 2012 WL 1371386 (W.D. Okla. April 19,
  2012) ........................................................................................................................11

*Commercial Bank & Trust Co. v. Buford*,
  145 Ga. App. 213, 243 S.E.2d 637 (1978) ............................................................16

*Davis v. American Taekwondo Ass'n, Inc.*,
  No. CIV-13-1248-M, 2014 WL 1414885 (Apr. 11, 2014 W.D. Okla. 2014) ..........11

*Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*),
  42 F.3d 1541 (9th Cir. 1994) ..................................................................................22

*Deotare v. Wells Fargo Bank, N.A.*,
  No. 1:17-CV-699-WSD, 2018 WL 1470897 (N.D. Ga. Mar. 26, 2018) ..................25

*Dewrell Sacks, LLP v. Chicago Title Ins. Co.*,
  324 Ga. App. 219, 749 S.E.2d 802 (2013) ..............................................................6

*Durell v. Sharp Healthcare*,
  183 Cal. App. 4th 1350, 108 Cal. Rptr. 3d 682 (2010) ..........................................23

*In re Experian Data Breach Litig.*,
  No. SACV 15-1592 ..................................................................................................22

*Faircloth v. A.L. Williams & Assocs., Inc.*,
  206 Ga. App. 764, 426 S.E.2d 601 (1992) ........................................................16, 17

*First Atl. Mgmt. Corp. v. Dunlea Realty Co.*,
  507 S.E.2d 56 (N.C. Ct. App. 1998) ......................................................................19

*First Nat'l Bank of San Jose v. State of Cal.*,
  262 U.S. 366 (1923) ..........................................................................................20, 24

*GFF Corp. v. Associated Wholesale Grocers, Inc.*,
  130 F.3d 1381 (10th Cir.1997) ................................................................................2

*Glassell Dev. Co. v. Citizens' Nat. Bk.*,
   191 Cal. 375, 216 P. 1012 (1923) .......................................................................15

*Glenn v. Hyundai Motor Am.*,
   2016 WL 3621280 (C.D. Cal. June 24, 2016) ........................................................18

*Gonsalves v. Bank of America*,
   16 Cal.2d 169, 105 P.2d 118 (1940) .....................................................................15

*Gray v. N.C. Ins. Underwriting Ass'n*,
   529 S.E.2d 676 (2000) ..........................................................................................19

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ............................................................................11

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (2000) .....................................................................................12, 13

*Harris v. Chevron U.S.A., Inc.*,
   No. CIV-15-94-C, 2015 WL 3746989 (W.D. Okla. June 15, 2015) ........................14

*Horack v. S. Real Estate Co. of Charlotte, Inc.*,
   563 S.E.2d 47 (N.C. Ct. App. 2002) .....................................................................19

*Horton v. Bank of America, N.A.*,
   189 F. Supp. 3d 1286 (N.D. Okla. 2016) ..............................................................17

*Jacquett v. Oklahoma, ex rel.*,
   No. CIV-17-1133-M, 2018 WL 1884814 (W.D. Okla. Apr. 19, 2018)......................6

*Johnson v. First Union Nat'l Bank*,
   255 Ga. App. 819, 567 S.E.2d 44 (2002)...............................................................16

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..............................................................................22

*Kumaraperu v. Feldsted*,
   237 Cal. App. 4th 60, 187 Cal. Rptr. 3d 583 (2015)................................................7

*Labra v. Cal-Western Reconveyance Corp.*,
   No. C 09-2537 PJH, 2010 U.S. Dist. LEXIS 23165 (N.D. Cal. Mar. 11, 2010) ......9

*Layer v. Clipper Petroleum, Inc.*,
   319 Ga. App. 410, 735 S.E.2d 65 (2012)...............................................................18

*Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*,
   2014 WL 4774611 (N.D. Cal. Sept. 22, 2014) ......................................................18

*Martin v. United Airlines, Inc.*,
    No. CIV-16-1042-F, 2017 WL 3687347 (W.D. Okla. 2017) ...................................................12

*Martinez v. Wells Fargo Bank, N.A. et al.*,
    2007 U.S. Dist. LEXIS 27388, 2007 WL 963965 (N.D. Cal. March 30, 2007)......................24

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006)............................................................15

*Member Services Life Insurance Co. v. American National Bank and Trust Co.*,
    130 F.3d 950 (10th Cir. 1997) ...............................................................................................17

*Metropolitan Life Ins. Co. v. San Francisco Bank*,
    58 Cal.App.2d 528, 136 P.2d 853 (Ct.App.1943).................................................................15

*Mindys Cosmetics, Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) .................................................................................................15

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082, 23 Cal. Rptr. 2d 101, 858 P.2d 568 (1993) ................................................23

*Naylor Farms, Inc. v. Anadarko OGC Co.*,
    No. CIV-08-668-R, 2011 WL 7267851 (W.D. Okla. June 15, 2011) ..............................17, 18

*Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*,
    297 Ga. App. 28, 676 S.E.2d 428 (2009)..........................................................................24, 25

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811, 124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011) ...............................................7

*Oltman Homes, Inc. v. Mirkes*,
    190 P.3d 1182 (Okla. Civ. App. 2008) ..................................................................................14

*Onbrand Media v. Codex Consulting, Inc.*,
    301 Ga. App. 141, 687 S.E.2d 168 (2009)............................................................................13

*Parrish v. Arvest Bank*,
    No. CIV-15-0913-HE, 2016 WL 3906814 (W.D. Okla. July 14, 2016) .................................21

*Pennsylvania Floor Coverings, Inc. v. Perstorp Flooring Inc.*,
    No. 5:98-CV-705-BR(2), 1999 WL 1939994 (E.D.N.C. Mar. 2, 1999).................................19

*Pharmacy Providers of Oklahoma, Inc. v. Q. Pharmacy, Inc.*,
    No. CIV-12-1405-C, 2013 WL 1588921 (Apr. 18, 2013)......................................................12

*Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*,
    11 Cal. App. 4th 1031 (1992) ................................................................................................12

-vi-

*Schnall v. Hertz Corp.*,
   78 Cal. App. 4th 1144 93 Cal. Rptr. 2d 439 (2000)................................................24

*Scripps Clinic v. Superior Court*,
   108 Cal. App. 4th 917 134 Cal. Rptr. 2d 101 (2003)..............................................23

*Shebester v. Triple Crown Insurers*,
   826 P.2d 603 (Okla. 1992)......................................................................................14

*Slover v. Equitable Variable Life Ins. Co.*,
   443 F.Supp.2d 1272 (N.D. Okla. 2006)..................................................................14

*Sprietsma v. Mercury Marine, a Div of Brunswick Corp.*,
   537 U.S. 51 (2002)..................................................................................................20

*Taylor v. Powertel, Inc.*,
   250 Ga.App. 356, 551 S.E.2d 765 (2001)..............................................................16

*In re Tobacco II Cases*,
   46 Cal. 4th 298, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009) ....................................23

*Traylor v. Nat'l Liab. and Fire Ins. Co.*,
   No. CIV-11-742-W, 2011 WL 13114113 (W.D. Okla. Sep. 12, 2011)..................14

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................................22

*Voorhis v. BOK Financial Corp.*,
   No. 13-CV-197-CVE-TLW, 2013 WL 5937395 (Nov. 4, 2013) ...........................14

*Walters v. Target Corp.*,
   No. 3:16-cv-01678-L-MDD, 2017 U.S. Dist. LEXIS 186679 (S.D. Cal. Feb.
   14, 2017)..................................................................................................................16

*Wathor v. Mutual Assur. Adm'rs, Inc.*,
   87 P.3d 559 (Okla. 2004)........................................................................................11

*Welty v. Martinaire of Okla., Inc.*,
   867 P.2d 1273 (Okla. 1994)....................................................................................14

*Wideman v. Bank of Am., N.A.*,
   No. 3:11-CV-145(CAR), 2011 WL 6749829 (M.D. Ga. Dec. 23, 2011) ................6

*Wolf v. State Farm and Cas. Co.*,
   No. CIV-14-1097-M, 2015 WL 1014650 (W.D. Okla. Mar. 9, 2015) ....................6

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) ...................................................................6

Case 3:18-cv-00157-RJC-DSC   Document 23   Filed 08/27/18   Page 8 of 36

**Statutes**

12 U.S.C. § 21, *et seq.*...................................................................................................20

12 U.S.C. § 24(Seventh) ...............................................................................................20

15 U.S.C § 1693 *et seq.*................................................................................................21

Cal. Bus & Prof. Code § 17200 *et seq.* ......................................................................22

N.C.G.S. § 75-1.1 ..........................................................................................................19

O.C.G.A. § 10–1–399(b) ..............................................................................................25

O.C.G.A. § 10-1-396(1) ................................................................................................24

Okla. Stat. Title 15 §§ 752 (13), 753(20).................................................................21, 22

**Other Authorities**

12 C.F.R. § 7.4002 ........................................................................................................24

12 C.F.R. § 7.4002(a)................................................................................................20, 21

12 C.F.R. § 7.4002(b) ...................................................................................................20

12 C.F.R. § 34.4 *et seq.*...............................................................................................20

Fed. R. Civ. P. 9(b) ..................................................................................................22, 23

Fed. R. Civ. P. 12(b)(6)................................................................................................25

## I. INTRODUCTION

Plaintiffs Lisa Morris, Michael Bui, and Tumika Williams (collectively, "Plaintiffs") bring this putative class action against Bank of America, N.A. ("BANA") alleging that BANA charged fees on their checking and savings accounts in violation of various contractual agreements, common law, and state statutes. Plaintiffs assert claims for: (i) breach of contract, (ii) breach of the covenant of good faith and fair dealing, (iii) conversion, (iv) unjust enrichment, and (v) violation of the consumer protection laws of North Carolina, Oklahoma, California, and Georgia. However, Plaintiffs' lawsuit fails because BANA abided by its contracts, Plaintiffs fail to plead sufficient facts to show a breach of contract, and the remainder of Plaintiffs' claims are either preempted or insufficiently plead.

## II. STATEMENT OF FACTS

Plaintiffs maintain checking and/or savings accounts with BANA (collectively, "Bank Accounts") and patronize banking centers in Oklahoma, California, and Georgia, respectively. (Doc. No. 19 at ¶¶ 13-15). Plaintiffs contend that BANA improperly assessed fees on their Bank Accounts by (i) charging multiple non-sufficient funds ("NSF") fees and/or overdraft ("OD") fees for the same transaction, (ii) charging NSF/OD fees on payments from one BANA account to another, (iii) prematurely deducting NSF/OD fees, and (iv) assessing monthly account service fees ("MSAS") on savings accounts that should have been waived. (*Id*. at ¶ 2). As a result of the foregoing, Plaintiffs allege that BANA breached various "contracts and reasonable consumer expectations." (*Id*. at ¶¶ 6-9).

## A. The Pertinent Governing Agreements.

In their Second Amended Complaint ("SAC"), Plaintiffs assert that the assessment of NSF and OD fees are governed by the "Online Banking Agreement," the Deposit Agreement,[1] and the Debit Card Agreement.[2] (Doc. No. 19 at ¶¶ 38, 41). The agreements that apply to Plaintiffs' Bank Accounts specifically are the Deposit Agreement and Schedule of Fees.[3] The Deposit Agreement states, in pertinent part:

### Insufficient Funds-Overdrafts and Returned Items

When we determine that you do not have enough available funds in your account to cover a . . . **item**, then we consider the . . . item an insufficient funds item. [W]ithout notice to you, **we either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or we decline or return the insufficient funds item without payment (a returned item)**.

. . .

The *Schedule of Fees* **for your account explains when we charge you fees for overdrafts and for declined or returned items and the dollar amount of the fees**. . . .

*See* Ex. B, pg. 17 (emph. added). Importantly, the Deposit Agreement defines "[i]tem" as "**all** orders and instructions for the payment, transfer or withdrawal of funds from an account," **not just**

---

[1] "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997). Here, Plaintiffs specifically reference and cite language in BANA's Online Banking Agreement, Deposit Agreement, and Schedule of Fees in the SAC. (Doc. No. 19 at ¶¶ 39-41, 142). Plaintiffs do not dispute the authenticity of these agreements. Thus, this Court should consider BANA Exhibits A, B, and C, which are authentic copies of the agreements and Schedule of Fees, and which explain the fees associated with Online Transactions when customers lack funds in their account to cover an Item, as defined in the Deposit Agreement. *See also* Ex. B, pg. 4.

[2] The Debit Card Agreement governs debit card purchases and ATM withdrawals. (*Id*. at ¶ 41). Because none of Plaintiffs' allegations involve debit card purchases or ATM withdrawals, the Debit Card Agreement is irrelevant to Plaintiffs' claims. (*See generally* Doc. No. 19).

[3] The Deposit Agreement clearly states that it governs Plaintiffs' deposit accounts and deposit relationship with BANA and the Schedule of Fees lists fees associated with BANA's deposit accounts. *See* Ex. B, pg. 2.

the "**instruction by [Plaintiffs] for payment to be one, singular transaction.**" *Id*. at pg. 4 (emph. added); *see also* (Doc No. 19 at ¶¶ 42, 47).

Likewise, pursuant to the Schedule of Fees referenced in the Deposit Agreement, NSF and OD fees are $35.00 each and may be assessed each time that BANA declines to or completes an Online Transaction when there are insufficient funds to cover an item. (Doc. No. 19 at ¶¶ 4, 17); *see also* Ex. C, pg. 11. Thus, despite Plaintiffs' allegations to the contrary, the Deposit Agreement permits BANA to assess NSF or OD fees each time that it receives an order or instruction, whether from Plaintiffs or the payee of the Online Transaction. Indeed, even Plaintiffs admit that the contracts may "not explicitly bar" the assessment of multiple fees. (Doc. No. 19 at ¶ 50).

While Plaintiffs allege that the Deposit Agreement governs Online Intra-Bank Transactions, a review of these agreements shows that these transactions are governed by BANA's Online Banking Agreement and Schedule of Fees.[4] (*Id*. at ¶¶ 38-39). Indeed, BANA's Online Banking Agreement specifically states that it applies to the "[t]ransfer of funds between your linked [BANA] accounts on either a one-time or recurring basis, including as a payment to a linked installment loan or mortgage." *See* Ex. A, 2(A). The Online Banking Agreement provides that:

> If enough funds to complete the transfer or payment are not available, [BANA] may either (i) complete the transaction and overdraw the account or (ii) refuse to complete the transaction. In either case, **[BANA] may charge a non-sufficient funds (NSF), returned item, overdraft, or similar fee**. *Id*. at 3(E) (emphasis added)[5]
>
> **At [BANA's] option, [it] may make a further attempt to issue the payment or process the transfer request** and BANA is under no obligation to inform you if it

---

[4] The fees associated with transactions governed by BANA's Online Banking Agreement and Deposit Agreement are set by BANA's Schedule of Fees. *See* Ex. A, 1(C); *see also* Ex. C, pg. 1.

[5] As an initial matter, the Online Banking Agreement requires that customers **only** instruct BANA to make a withdrawal if sufficient funds are available, putting Morris in obvious breach of her obligations when she attempted the HELOC payment. *Id*. at 3(E).

does not complete a payment or transfer because there are non-sufficient funds or credit in your account to process the transaction. *Id*. (emphasis added)

An NSF-fee, returned item, overdraft or similar fee may also apply if you schedule payments or transfers and your available balance is not sufficient to process the transaction on the date scheduled. . . . *Id*. at 4(B).

Thus, under the Online Banking Agreement and Schedule of Fees, when a customer has insufficient funds to cover an Online Intra-Bank payment, BANA can elect to either process the transaction and assess an OD Fee or decline it and assess an NSF Fee. (Doc. No. 19 at ¶¶ 4, 17, 38-39).

**B.     Plaintiffs' Alleged Violations.**

1.     <u>Allegations Regarding Multiple Fees Assessed on the Same Transaction.</u>

Despite acknowledging that they lacked sufficient funds in their BANA Accounts, Morris and Bui complain that they were improperly charged multiple NSF and OD fees in connection with their attempts to make various online bill payments (collectively referred to herein as "Online Transactions"). (*Id*. at ¶¶ 23-27). Specifically, Morris alleges that she was charged two NSF fees and one OD fee in June 2017 after she tried to make a $60.00 online credit card payment to Citibank without sufficient funds. Morris makes similar admissions and allegations related to her attempts to make online payments to Comenity in September 2017 and Citibank in November 2017. (*Id*. at ¶¶ 21-22). Bui likewise alleges that he was charged two NSF fees after attempting to make a $150.00 online payment to his insurance company in November 2017. (*Id*. at ¶ 25). Both Morris and Bui assert that they "understood [their] bill payments to be a single transaction" based on unidentified contracts and the phrase "Retry Payment" on their checking account statements. (*Id*. at ¶¶ 23, 26). Yet, as discussed further below, the contracts allowed all fees at issue to be charged based on Plaintiffs' initiation of transactions with insufficient funds.

2.      Allegations Regarding Fees Charged on Intra-Bank Transactions.

Plaintiffs perfunctorily allege that BANA can determine whether an attempted payment from a BANA checking account with insufficient funds to a separate BANA account will be "futile," and, thus, is not permitted to assess NSF or OD fees on such transactions ("Online Intra-Bank Transactions"). (*Id*. at ¶¶ 28-34). This is false. Moreover, Plaintiffs' only support for this assertion is a citation to unspecified "promises and disclosures made in [BANA]'s account disclosures." (*Id*. at ¶ 37).

3.      Premature NSF/OD Fee Deduction Allegations.

Plaintiffs also allege that BANA improperly deducts NSF and OD fees prior to waiting for "new funds [to be] deposited to the account that are sufficient to pay the owed fees," thus increasing the likelihood that further fees will be assessed. (*Id.* at ¶¶ 103-104). However, these allegations are inaccurate. As discussed further below, the fees at issue were assessed based on the terms of the Deposit Agreement.

4.      Allegations Regarding MSAS Fees.

Finally, Morris alleges that pursuant to the Fee Schedule for Personal Accounts dated November 2016, BANA was required to and failed to waive the $5.00 MSAS Fees on her savings account in April 2017 and November 2017 because she transferred $235.00 and $25.00, respectively, from her checking to her savings account in March and September 2017. (*Id*. at ¶¶ 141-144). Again, plaintiff's conclusory allegations of breach are incorrect. As discussed further below, Plaintiff was not entitled to a waiver of fees because she did not comply with the terms of the Deposit Agreement.

### III. LEGAL STANDARD

The Deposit Agreement and the parties' rights and obligations thereunder are "governed by and interpreted according to federal law and the law of the state where [the] account is located." *See* Ex. B, pg. 3. Ordinarily, Bank Accounts are maintained at the banking center where the account was opened. *Id*. Morrises' accounts were opened in Oklahoma, Bui's in California, and Williamses' in Georgia. (Doc. No. 19 at ¶¶ 13-15). Accordingly, in addition to the federal law, each respective state law governs each individual Plaintiff's claims.

### IV. ARGUMENT

**A.** **Each Plaintiff Has Failed to State a Claim For Breach of Contract**. (Count One)

To plead on a breach of contract claim, Plaintiffs must allege (1) formation of a contract,[6] (2) breach of that contract, (3) and actual damages. *Wolf v. State Farm and Cas. Co*., No. CIV-14-1097-M, 2015 WL 1014650, at *2 (W.D. Okla. Mar. 9, 2015) (*citing Oltman Homes, Inc. v. Mirkes*, 190 P.3d 1182, 1185 (Okla. Civ. App. 2008).[7] Here, Plaintiffs do not show that BANA breached any applicable agreement by assessing the fees complained of.

---

[6] Plaintiffs' breach of contract claim confusingly refers to an "Account Agreement," which is neither defined nor referenced in the SAC. (Doc. No. 19 at ¶ 165). As an initial matter, because Plaintiffs fail to identify a specific contract that has been breached, the breach of contract claim must be dismissed. *Wideman v. Bank of Am., N.A.*, No. 3:11-CV-145(CAR), 2011 WL 6749829, at *4 (M.D. Ga. Dec. 23, 2011) ("A plaintiff asserting breach of contract must point to a particular provision that the defendant violated to survive a motion to dismiss."); *Jacquett v. Oklahoma, ex rel.*, No. CIV-17-1133-M, 2018 WL 1884814, at *2 (W.D. Okla. Apr. 19, 2018) (dismissing plaintiff's cause of action for breach of an employment contract due to plaintiff's failure to "set forth which promises" she relied upon.); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011) (dismissing the breach of contract claim on the basis that plaintiff failed to "allege the specific provisions in the contract creating the obligation the defendant is said to have breached.")

[7] Georgia requires that a plaintiff plead: "(1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Dewrell Sacks, LLP v. Chicago Title Ins. Co.*, 324 Ga. App. 219, 223 (2) (a), 749 S.E.2d 802 (2013). Likewise, in California "the elements of a cause of action for breach of contract are: (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting

1.      Plaintiffs Fail to Plead Facts Showing that BANA Breached the Deposit Agreement and Schedule of Fees in Assessing Multiple Fees.

Morris and Bui allege that BANA breached various agreements because it "promise[d] that only one NSF Fee or OD Fee will be charged per transaction transfer or payment." (Doc. No. 19 at ¶¶ 38, 41). However, their assertion that BANA is barred from assessing multiple fees on a transaction is premised on a misinterpretation of the pertinent contracts. (*Id.* at ¶ 43).

Indeed, Plaintiffs cite various provisions of the Online Banking Agreement for the mistaken proposition that if a customer lacks sufficient funds to complete a transaction, BANA may elect to complete the transaction and overdraw the account or refuse to complete the transfer but, in either event, may only charge "a" NSF or OD fee. (Doc. No. 19 at ¶¶ 39) (BANA "may charge [**]a[**] NSF, returned time, overdraft, or similar fee[;] At our option, we may make [**]a[**] further attempt to issue the payment or process the request [;][**]An[**] NSF-fee, returned item, overdraft or similar fee may also apply if you schedule payments or transfers and your available balance is not sufficient to process the transaction…"); *see also* Ex. A, 3(E). Plaintiffs point to similar language in the Deposit Agreement stating that BANA can "either authorize or pay the insufficient funds item and overdraw your account (an overdraft item) or …decline or return the insufficient funds item without payment (a returned item)." (*Id.* at ¶ 40); *see also* Ex. B, pg. 17.

However, according to the applicable Deposit Agreement and Schedule of Fees, each time that BANA received an order or instructions to process Morris and Bui's Online Transactions, whether from Plaintiffs or the intended payee, BANA was entitled to either pay the transaction

---

damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821,124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011); *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239, 70 Cal. Rptr. 3d 667 (2008); *Kumaraperu v. Feldsted*, 237 Cal. App. 4th 60, 187 Cal. Rptr. 3d 583 (2015).

and assess an OD Fee or decline it and assess an NSF Fee.  Because Plaintiffs admit that the payments were re-initiated several times and only deny that they personally re-initiated same (not that intended payee did not re-initiate payment) (Doc. No. 19 at ¶¶ 20-27), Plaintiffs fail to adequately assert a breach of the Deposit Agreement or any other agreement.

      2.      <u>Plaintiffs Fail to Plead a Breach by BANA in Assessing Fees for Online Intra-Bank Transactions</u>.

Morris also alleges that BANA improperly assessed four NSF Fees when she initiated payments from her BANA checking account to a BANA HELOC.  (Doc. No. 19 at ¶¶ 63-67).  As an initial matter, Morris breached the Online Banking Agreement governing intra-bank transactions when she initiated the payments without having sufficient funds in her account.  *See* Ex. A, 3(E).  Moreover, because she had insufficient funds in her account when she attempted the HELOC payment, the terms of the Online Banking Agreement specifically allowed BANA to process the transaction and assess an OD Fee or decline the payment and assess an NSF Fee.  *See* Ex. A, 3(E).  The Online Banking Agreement also allowed BANA to retry the HELOC payments that Morris initiated.  *See* Ex. A, 3(E).

Accordingly, Morris has not and cannot plead facts showing that BANA was not entitled to assess NSF Fees or retry the HELOC payment after Morris tried to make the payment without sufficient funds.  At the time of the retries, Morris still lacked adequate funds and therefore, subject to additional NSF fees under the Online Banking Agreement.  *Id*.  Thus, Morrises' breach of contract claim related to Online Intra-Bank Transaction fees fails as a matter of law.

      3.      <u>Morris Fails to Adequately Plead a Breach of Contract Related to the MSAS Fees</u>.

Morris alleges that BANA improperly charged her MSAS Fees on her savings account after she allegedly made transfers of over $25.00 from her checking to her savings account in March and September 2017.  (Doc. No. 19 at ¶¶ 143-144).  However, BANA's Schedule of Fees

expressly permits a $5.00 MSAS Fee on BANA Regular Savings accounts. *See* Ex. C at pg.4; *see also* Ex. B at pg. 10. While it further states that, to avoid the MSAS Fee, customers could make "combined monthly **automatic** [not manual] **transfers of $25 or more** from [their] [BANA] checking account to [their] savings account **during the immediately preceding statement cycle,**" Morris does not allege that her transfers were **automatic**. Ex. C at pg.4 (emph. added); *see also* (Doc. No. 19 at ¶ 142). Because Morris does not allege that the transfers were automatic, her allegations are insufficient on their face, requiring dismissal of the breach of contract claim.

> 4. Bui's Breach of Contract Claim Also Fails Because California Law Requires a Showing of Performance or Excuse for Nonperformance.

Bui's breach of contract claim also fails because he fails to establish that he performed or had the ability to perform under the contract. *See Labra v. Cal-Western Reconveyance Corp.,* No. C 09-2537 PJH, 2010 U.S. Dist. LEXIS 23165, at *23 (N.D. Cal. Mar. 11, 2010) (dismissing plaintiffs breach of contract claim because plaintiff failed to perform under the contract and because their own breach caused their damages); *Berkeley v. Wells Fargo Bank*, No. 15-cv-00749-JSC, 2016 U.S. Dist. LEXIS 1295, at *4-5 (N.D. Cal. Jan. 6, 2016) (dismissing on the basis that breach of contract and breach of the implied covenant of good faith and fair dealing require that Plaintiff plead her own performance under the contract or excuse for nonperformance).

Plaintiffs allege that they and "members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Account Agreement" (Doc. No. 19 at ¶ 170). However, this is clearly wrong as Bui acknowledges that he initiated a $150.00 bill payment on November 30, 2017 and does not dispute that he was properly charged at least one NSF fee because he lacked adequate funds[8]. (*Id*. at ¶ 25). Plaintiffs also admit that that Online Banking Agreement

---

[8] All also agree that an NSF fee is charged when a customer fails to maintain a sufficient balance to cover the withdrawals that the customer initiates. (*Id*. at ¶ 39).

states that "you agree that you will instruct us to make a withdrawal only when a sufficient balance is or will be available in your accounts at the time of withdrawal." (*Id*. at ¶ 39). Thus, Bui's failure to maintain a balance to cover the $150.00 payment constitutes his breach, and he fails to provide an excuse for his nonperformance. For this reason as well, Bui's breach of contract claim fails and must be dismissed under the applicable California law governing breach of contract.

5. <u>Williams Breach of Contract Claim Fails Because It Fails to Establish that the Fees BANA Charged Were Improper.</u>

Williamses' only allegations of breach center on her misunderstanding on how debits, credits, and fees are posted and processed. (Doc. 19 at ¶¶ 108-140). In particular, she alleges that, in the fall of 2017, BANA "prematurely" deducted several NSF and OD fees, totaling $1,500 from her checking account even though the account was already negative. (*Id*. at ¶¶ 108-117). However, per the Deposit Agreement, these fees were not "premature" – they posted to Williamses' account **when incurred**. *See* Ex. B, pgs. 22-24 ("We generally determine at the time we post a debit to your account whether it creates an overdraft and whether an overdraft or returned item fee applies."). Additionally, Plaintiffs agree that:

> When we process multiple transactions for your account on the same day, you agree that we may in our discretion determine our posting orders for the transactions and that we may credit, authorize, accept, pay, decline or return credits, debits and holds in any order at our option … [and] agree that we may in our discretion choose our posting orders, and also change them from time to time, regardless of whether additional fees may result.

Ex. A, pgs. 22, 24.

Therefore, the Deposit Agreement states that BANA may use its own discretion in determining the posting order, may change that order regardless of whether additional fees may result, and, most crucially, "determine[s] at the time" a debit is posted, whether it leads to an overdraft and application of fees. *See* Ex. A, pgs. 22-24. Yet, Plaintiffs cite only to general

provisions of the agreement, omitting this important language on the Bank's contract rights on posting items, including charges owed to the Bank. "[W]hen the exhibits contradict general and conclusory allegations of the pleading, the exhibits govern." *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Because the exhibit controls and Plaintiffs have not, and cannot, allege that BANA breached any duty as written, they have not established any breach of contract, and the claim must be dismissed.

**B.**     **Plaintiffs' Claims for Breach of the Covenant of Good Faith & Fair Dealing Must Be Dismissed as Duplicative of their Breach of Contract Claims**. (Count Two)

1.    Morrises' Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed.

Under Oklahoma law, claims for breach of the implied covenant of good faith and fair dealing can sound in contract or tort. *See Cimarex Energy Co. v. Calhoon,* Nos. CIV-11-525, CIV-11-725-D, 2012 WL 1371386, at *2 (W.D. Okla. April 19, 2012) ("[w]hen a party to a contract breaches the duty of good faith and fair dealing, one of two remedies may be available to the injured party: breach of contract, or the independent tort of bad faith."). In commercial contracts, the duty arises out of contract, thereby resulting in damages for breach of contract. *See Wathor v. Mutual Assur. Adm'rs, Inc.*, 87 P.3d 559, 561 (Okla. 2004) ("[i]n ordinary commercial contracts, a breach of that duty [of good faith and fair dealing] merely results in damages for breach of contract, not independent tort liability."). Thus, because Morris brings a separate breach of contract claim against BANA, she cannot also bring a duplicative claim for breach of the duty of good faith, which if successful, would result in the same damages for breach of contract. *See Davis v. American Taekwondo Ass'n, Inc*., No. CIV-13-1248-M, 2014 WL 1414885, at *3, n.4 (Apr. 11, 2014 W.D. Okla. 2014) (dismissing plaintiff's claim for breach of the duty of good faith and fair dealing since plaintiff also alleged a breach of contract claim, reasoning that "[a]ny alleged breach

of the ordinary duty of good faith and fair dealing by [defendant] will be addressed through plaintiff's breach of contract claim.")

Additionally, to the extent that Morris intended to bring a tort claim, it also fails as "[t]ort claims for the breach of the duty of good faith and fair dealing in Oklahoma have been limited to insurance-related contracts." *See Block v. Pre-Paid Legal Services, Inc.*, No. CIV-07-1304-F, 2008 WL 723775, at *2 (W.D. Okla. 2008) (citation omitted). Furthermore, courts have required claims for the tortious breach of the covenant to be pled with facts showing "[g]ross recklessness or wanton negligence," which Morris fails to do here. *Martin v. United Airlines, Inc.*, No. CIV-16-1042-F, 2017 WL 3687347, at *5 (W.D. Okla. 2017) (slip opinion) (internal citations omitted). Morris also fails to allege "some sort of special relationship justifying bad faith tort liability." *Pharmacy Providers of Oklahoma, Inc. v. Q. Pharmacy, Inc.*, No. CIV-12-1405-C, 2013 WL 1588921, at *7 (Apr. 18, 2013). Indeed, the Deposit Agreement expressly states that BANA's relationship with Morris is that of debtor and creditor and "do[es] not create a fiduciary, quasi-fiduciary or special relationship." *See* Ex. B at pg. 2. Based on the foregoing, Morris fails to state a claim for breach of the covenant, as the alleged supporting facts are "subsumed by [her] claim for breach of contract." *Block*, 2008 WL 723775, at *2.

2.   Bui's Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed.

Bui's claim for breach of the implied covenant and fair dealing is premised on the same allegations as his breach of contract claim. Under California law, the implied covenant does not exist independently, but rather, is "limited to assuring compliance with the express terms of the contract." *Racine & Laramie, Ltd. v. Dep't of Parks and Recreation*, 11 Cal. App. 4th 1031, 1032 (1992). "To the extent the implied covenant claim seeks simply to invoke terms to which the parties did agree, it is superfluous." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 352 (2000); *see also*

12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (holding that if the allegations are the same as the breach of contract claim, rely on the same alleged facts, seek the same damages as the companion breach of contract claim, then it is deemed superfluous as not additional claim is actually stated). Bui's breach of implied covenant claim is essentially identical to his breach of contract claim, and he generally seeks the same damages under both claims, requiring dismissal of Count Two under California law. (Doc. No. 19 at ¶ 171 and 178).

Further, "the covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. The covenant … cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'" *Guz,* 24 Cal.4th at 349–350 (original italics, internal citations omitted.); *Carma Developers Cal. Inc. v. Marathon Dev. Cal. Inc.*, 2 Cal.4th 342, 374 (1992) ("We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms."). Bui's covenant claim is just a rehash of the allegations of his flawed breach of contract claim. As stated above, according to the Deposit Agreement and Schedule of Fees, BANA was entitled to elect to pay the transaction and assess an OD Fee or decline the transaction and assess an NSF Fee. Thus, nothing alleged in Bui's claim for a breach of the implied covenant deviates from his contract claim or is sufficient save this claim from dismissal.

      3.    <u>Williamses' Covenant of Good Faith & Fair Dealing Claim Must Be Dismissed</u>.

In Georgia, it is well established that "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement," but "[t]he law is clear that there

exists no independent cause of action for breach of good faith and fair dealing **outside of a claim for breach of contract**." *See Onbrand Media v. Codex Consulting, Inc.,* 301 Ga. App. 141, 147, 687 S.E.2d 168, 174 (2009) (also explaining that, "[t]he implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.") (emph. added). Williamses' duplicative claim for breach of the implied covenant fails because it cannot survive as an independent cause of action as a matter of Georgia law regardless of whether the breach of contract claim is also dismissed.

**C.** **Plaintiffs' Conversion Claims Fail as a Matter of Law**. (Count Three)

      1.   <u>Morrises' Claim Fails as Money Cannot Be Converted Under Oklahoma Law</u>.

"The general rule in Oklahoma is that only **tangible** personal property may be converted" and under Oklahoma law, money is considered **intangible** personal property and cannot be converted. *Childs v. Unified Life Ins. Co.*, 781 F.Supp.2d 1240, 1249 (N.D. Okla. 2011) (*quoting Welty v. Martinaire of Okla., Inc.*, 867 P.2d 1273, 1275 (Okla. 1994)); *Slover v. Equitable Variable Life Ins. Co.*, 443 F.Supp.2d 1272, 1279 (N.D. Okla. 2006); *Voorhis v. BOK Financial Corp.*, No. 13-CV-197-CVE-TLW, 2013 WL 5937395, at *11 (Nov. 4, 2013); *see also Shebester v. Triple Crown Insurers*, 826 P.2d 603, 608 (Okla. 1992) (holding that because plaintiffs were seeking to recover money …, plaintiffs had not stated a claim for conversion under Oklahoma law.); *Traylor v. Nat'l Liab. and Fire Ins. Co.*, No. CIV-11-742-W, 2011 WL 13114113, at *3 (W.D. Okla. Sep. 12, 2011) (confirming that Oklahoma courts do not recognize a cause of action for conversion of money); *see also Harris v. Chevron U.S.A., Inc.*, No. CIV-15-94-C, 2015 WL 3746989, at *3-4 (W.D. Okla. June 15, 2015) (dismissing conversion claim filed by plaintiff and putative class

members seeking to recover money).  Thus, "[w]hen a plaintiff seeks to recover money, there is no conversion."  *Childs*, 781 F.Supp.2d at 1249.

Here, Morris alleges that BANA took "**funds from their accounts in payment of these fees** . . . .", "continues to retain these **funds** unlawfully," and "intends to permanently deprive Plaintiffs and the members of the Classes of these **funds**". (Doc. No. 19 at ¶¶ 183-84, 186) (emph. added).  In sum, Morrises' claim is premised on the assertion that money was converted and, thus, necessarily fails under Oklahoma law.

2.    Bui's Conversion Claim Fails Under California Law for Multiple Reasons.

In California, the elements of a conversion claim are: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by wrongful act or disposition of property rights; and (3) damages."  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010).

It is well-settled in California that the relationship between a bank and its depositor is one of debtor and creditor.  *Bank of Marin v. England*, 385 U.S. 99, 101, 87 S. Ct. 274, 17 L. Ed. 2d 197 (1966); *Gonsalves v. Bank of America*, 16 Cal.2d 169, 173, 105 P.2d 118, 121 (1940); *Metropolitan Life Ins. Co. v. San Francisco Bank*, 58 Cal.App.2d 528, 534, 136 P.2d 853 (Ct.App.1943).  California courts have uniformly ruled that a bank cannot be sued for conversion of funds deposited with the bank because title to the funds passes immediately to the bank upon deposit.  *Arnold v. San Ramon Valley Bank*, 184 Cal. 632, 194 P. 1012 (1921); *Glassell Dev. Co. v. Citizens' Nat. Bk.,* 191 Cal. 375, 216 P. 1012 (1923).  Further, the California Court of Appeal has ruled that an overcharge cannot give rise to a claim for conversion.  *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1492, 49 Cal. Rptr. 3d 227 (2006).

15

Here, Bui admits to maintaining a BANA checking account and using the account to initiate a payment to his insurance company despite lacking adequate funds. (Doc. No. 19 at ¶¶ 25-27). Under California law, Bui lost his ownership interest in the funds deposited to his checking account immediately upon deposit, and, therefore, he cannot plead facts to satisfy the first element necessary to state a claim for conversion. Further, Bui alleges that the NSF fees charged were overcharges, which cannot support a claim of conversion in California. *Id.*

Finally, even if Bui could plead a conversion claim, he admittedly consented to the charging of fees if he failed to maintain sufficient funds in his account to complete transactions, barring his claim. *Walters v. Target Corp.,* No. 3:16-cv-01678-L-MDD, 2017 U.S. Dist. LEXIS 186679, at *11 (S.D. Cal. Feb. 14, 2017) (There is no dispute that consent defeats a claim for conversion."); (Doc. No. 19 at ¶ 39) (Bui agreed to "instruct [BANA] to make a withdrawal only when a sufficient balance is or will be available in [his] accounts.."); *see also* Ex. B, pg. 17.

3. Williamses' Conversion Claim Fails for Similar Reasons, as well as Because of her Failure to Allege Demand for Return.

To establish conversion in Georgia, a plaintiff must show: (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property. *Johnson v. First Union Nat'l Bank*, 255 Ga. App. 819, 823, 567 S.E.2d 44, 48 (2002). "[T]here can be no conversion action for money damages for money," unless it compromises "a specific, separate, identifiable fund." *Taylor v. Powertel, Inc.*, 250 Ga.App. 356, 359, 551 S.E.2d 765 (2001). Further, "[i]f there is no liability except that arising out of breach of the express terms of [a] contract, the action must be in contract[.]" *Commercial Bank & Trust Co. v. Buford*, 145 Ga. App. 213, 215, 243 S.E.2d 637, 638–39 (1978); *see also Faircloth v. A.L. Williams & Assocs., Inc.*, 206 Ga. App. 764, 766-67, 426 S.E.2d 601 (1992) (noting that a breach of contract does not, by itself, give rise to a cause of action

16

in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage).

Because Williams fails to allege that she made a demand for return of the fees posted to her account, her conversion claim must be dismissed. Moreover, her claim fails because there is no "specific, separate, identifiable fund" that was converted. Finally, Williamses' claim is clearly a breach of contract claim masquerading as a tort. Thus, Williamses' claim for conversion adds nothing of substance and must be dismissed. *See Faircloth*, 206 Ga. App. at 766-67.

**D.    Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law**.  (Count Four)

       1.   <u>Morrises' Unjust Enrichment Claim Fails As She Has an Adequate Legal Remedy.</u>

In Oklahoma, a plaintiff may not pursue an equitable remedy, such as unjust enrichment, when a plaintiff has an adequate legal remedy. *Briggs v. Freeport-McMoran Copper & Gold, Inc.*, No. CIV-13-1157-M, 2015 WL 1461884, at *6 (W.D. Okla. Mar. 30, 2015). "Where an enforceable express contract governs the parties' relationship, quasi-contractual remedies such as unjust enrichment are not available." *Naylor Farms, Inc. v. Anadarko OGC Co.*, No. CIV-08-668-R, 2011 WL 7267851, at *1 (W.D. Okla. June 15, 2011) (*citing Member Services Life Insurance Co. v. American National Bank and Trust Co.*, 130 F.3d 950, 957-58 (10th Cir. 1997)). Similarly, "[w]here a party has an adequate remedy at law for breach of contract or negligence,…the party may not pursue a claim for unjust enrichment." *Anadarko OGC*, 2011 WL 7267851, at *1; *see also Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286, 1290 (N.D. Okla. 2016) (denying attempt to plead unjust enrichment, as an alternative theory to breach of contract claim, because plaintiffs' could "fully recover … via a claim for breach of contract.").

Morris alleges that various actions taken by BANA violated the "Bank's contracts", *i.e*, the Deposit Agreement, Online Banking Agreement, and/or Schedule of Fees.[9]  Since all of the conduct which forms the basis of these claims are governed by at least one of the agreements, "quasi-contractual remedies such as unjust enrichment are not available," and Morrises' claim for unjust enrichment fails as a matter of law.  *See Anadarko OGC*, 2011 WL 7267851, at *1.

2. <u>Bui's Unjust Enrichment Claim Fails Because It is Not a Cause of Action</u>.

Under California law "there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Browning et. al. v. Univlever United States, Inc.* 2017 WL 7660643, at *3 (C.D. Cal. Apr. 26, 2017) (citations omitted).  Accordingly, because Bui's account is governed by California law, his unjust enrichment claim fails.[10]

3. <u>Williams Cannot State a Claim for Unjust Enrichment Under Georgia Law</u>.

In Georgia, the theory of unjust enrichment simply does not exist where there is an express contract covering the relationship between the parties.  *Layer v. Clipper Petroleum, Inc.*, 319 Ga. App. 410, 420, 735 S.E.2d 65, 74 (2012).  Here, the Deposit Agreement contains the terms and conditions of OD and NSF fees; therefore, Williamses' unjust enrichment claim fails.

---

[9] *See* Doc. No. 19 at ¶¶ 2, 6-9, 19, 30-49,  165-171, just to name a few.

[10] As an initial matter, Bui's' unjust enrichment claim fails because Bui failed to identify which law(s) govern his claim.  *See, e.g., Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *11 (N.D. Cal. Sept. 22, 2014) ("Plaintiffs must identify and plead the elements of unjust enrichment for each state."); *Glenn v. Hyundai Motor Am.,* 2016 WL 3621280, at *13 (C.D. Cal. June 24, 2016) ("The Court is unclear whether Plaintiffs are asserting an unjust enrichment claim under California law for all Plaintiffs, whether each Plaintiff is asserting an unjust enrichment claim under his or her home state's law, or something else….The Court finds it prudent to refrain from guessing what state law or laws Plaintiffs are using as the basis for their unjust enrichment claims. Following other courts in this Circuit, the Court concludes that "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead[ed].").

**E.      Plaintiffs' NCUDTPA Claim Is Preempted and Inadequately Pled**.  (Count Five)

In support of their fifth claim, Plaintiffs' allege that BANA's "unconscionable and unfair actions regarding the assessment of BoA Account Fees . . . constitute unfair competition and unfair and deceptive trade practices" as defined by North Carolina.  (Doc. No. 19 at ¶ 201).[11]

To state a claim under the NCUDTPA, a plaintiff must allege: (1) the defendant committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that the plaintiff was injured thereby.  *First Atl. Mgmt. Corp. v. Dunlea Realty Co.,* 507 S.E.2d 56, 63 (N.C. Ct. App. 1998).  Whether an act or practice is an unfair or deceptive practice under the NCUDTPA is a question of law for the court.  *Gray v. N.C. Ins. Underwriting Ass'n*, 529 S.E.2d 676, 681 (2000). A trade practice is unfair if it "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *First Atl. Mgmt. Corp.* 131 N.C. App. at 252.  A trade practice is deceptive if it "possesses the tendency or capacity to mislead, or creates the likelihood of deception."  *Id.*  In addition, a plaintiff must allege "[s]ome type of egregious or aggravating circumstances" to seek relief under the NCUDTPA.  *Allied Distribs. v. Latrobe Brewing Co.,* 847 F. Supp. 376, 379 (E.D.N.C. 1993).  Finally, it is well-settled that a breach of contract, standing alone, is not sufficient to establish liability under the NCUDTPA.  *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 563 S.E.2d 47, 51 (N.C. Ct. App. 2002); *Brown v. Economy Premier Assurance Co.*, Docket No. 1:17-cv-00206-MOC-DLH, 2018 WL 1594669, at *4 (W.D.N.C. Apr. 2, 2018); *Pennsylvania Floor Coverings, Inc. v. Perstorp Flooring Inc.*, No. 5:98-CV-705-BR(2),  1999 WL 1939994, at *1 (E.D.N.C. Mar. 2, 1999).

---

[11] BANA is proceeding as if Plaintiffs intended to bring a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), based on their reference to N.C.G.S. § 75-1.1, in paragraph 201 of their Complaint. *Id.* at ¶ 201

Here, Plaintiffs' allegations and the contracts at issue demonstrate that BANA was entitled to assess the fees at issue, per the express language of the Deposit Agreement, Online Banking Agreement, and Schedule of Fees. *See supra* Sections IV.A.1-3, *supra*. Thus, not even a valid breach of contract is alleged, let alone something more. Regardless, had the conduct at issue here been in violation of the parties' agreement, it would be been a breach of contract at most. Accordingly, the actions taken by BANA which form the basis of this claim cannot be deemed unconscionable or unfair under NCUDTPA, and Plaintiffs' claim fails as a matter of law.

In addition, Plaintiffs' DCUDTPA claim is preempted by the National Bank Act ("NBA") and the regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). 12 U.S.C. § 21, *et seq.*; 12 C.F.R. 34.4 *et seq.* The NBA is charged with the authority to exercise "all incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24(Seventh). Accordingly, a state attempt to control the conduct of a national bank "is void, whenever it conflicts with the laws of the United States or frustrates the purposes of the national legislation, or impairs the efficiency of the bank to discharge the duties for which it was created." *First Nat'l Bank of San Jose v. State of Cal.,* 262 U.S. 366, 369 (1923). The OCC has issued regulations granting national banks with the authority to "charge its customers non-interest charges and fees, including deposit account service charges." 12 C.F.R. § 7.4002(a). OCC regulations further provide, "[t]he establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." 12 C.F.R. § 7.4002(b). Thus, to the extent that the NCUDTPA stands as an obstacle to this regulation, preemption is warranted. *See Sprietsma v. Mercury Marine, a Div of Brunswick Corp.,* 537 U.S. 51, 64 (2002) (internal citations omitted) ("where state law stands as an obstacle to the

accomplishment and execution of the full purposes and objectives of Congress," preemption is appropriate.).

**F.     Morrises' OCPA Claim Fails As the OCPA Does Not Apply to BANA**.  (Count Six)

Morris contends that BANA violated the Oklahoma Consumer Protection Act ("OCPA") by engaging in a "deceptive trade practice" defined as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person."  (Doc. No. 19 at ¶ 208); *See also* Okla. Stat. tit. 15 §§ 752 (13), 753(20). However, Morrises' OCPA claim fails for at least two reasons.

First, the OCPA does not apply to the alleged conduct which forms the basis of Morrises' claim.  Section 754, titled Exemptions, states in pertinent part that **"[n]othing** in the Oklahoma Consumer Protection Act **shall apply to**: (2) **Actions or transactions regulated** under laws administered **by** the Corporation Commission or **any other regulatory body or officer acting under statutory authority of this state or the United States** . . . . § 754 (emphasis added). BANA's assessment of fees is regulated by multiple regulatory bodies such as the Consumer Financial Protection Bureau, OCC, and Federal Deposit Insurance Corporation.[12]   Thus, the conduct at the heart of this litigation is expressly exempt from the purview of the OCPA and Morrises' claim fails as a matter of law.  *See Parrish v. Arvest Bank*, No. CIV-15-0913-HE, 2016 WL 3906814, at *1, 3 (W.D. Okla. July 14, 2016) (Plaintiff alleged that the defendant bank violated the OCPA by processing transactions to "maximize the bank's collection of fees for [NSF or OD Fees], to the detriment of its customers."  However, the court dismissed the claim, finding

---

[12] *See* 15 U.S.C § 1693 et seq. (the purpose of the Electronic Funds Transfer Act is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."); *See also* 12 C.F.R. § 7.4002(a) ( "A national bank may charge its customers non-interest charges and fees, including deposit account service charges.")

that the assessment of fees is a banking activity regulated by the FDIC, therefore placing it outside the scope of the OCPA's regulated conduct.)

Second, even if the OCPA did apply to BANA's conduct, it does not meet the definition of "deceptive trade practice" under the OCPA because the fees that BANA assessed to Morrises' accounts were expressly provided for under the Deposit Agreement, Online Banking Agreement, and Schedule of Fees, and Morris was put on notice of the terms and conditions of these agreements when she opened each Bank Account. Okla. Stat. tit. 15 §§ 752 (13), 753 (20). Accordingly, BANA's assessment of fees to Morrises' account is not a deceptive trade practice under the OCPA, and Morrises' claim fails as a matter of law.

## G.  California UCL Claims is Inadequately Pled and Preempted by Federal Law. (Counts Seven and Eight)

Bui alleges that BANA violated the "fraudulent" and "unfair" prongs of the Cal. Bus & Prof. Code § 17200 et seq. (the "UCL") by misrepresenting its NSF Fee practices. (Doc. No. 19 at ¶¶ 216-217). The UCL has three prongs – the "unlawful," "unfair", and "fraudulent." *In re Experian Data Breach Litig.*, No. SACV 15-1592 AG (DFMx), 2016 U.S. Dist. LEXIS 184500, at *23-24 (C.D. Cal. Dec. 29, 2016).

Under the **fraudulent prong,**[13] "[a] consumer must [also] show actual reliance on the alleged misrepresentation, rather than a mere factual nexus between the business' conduct and the

---

[13] Rule 9(b) applies to all allegations of fraud and requires a plaintiff to "state with particularity the circumstances constituting fraud," and, absent such specificity, the claim **must** be dismissed. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *see* Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "**who, what, when, where, and how**" of the fraudulent activity. *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (emphasis added). Further, if the plaintiff alleges that a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Decker v. GlenFed, Inc.* (*In re GlenFed, Inc. Sec. Litig.*), 42 F.3d 1541, 1548 (9th Cir. 1994)).

consumer's injury." *In re Tobacco II Cases,* 46 Cal. 4th 298, 326, 93 Cal. Rptr. 3d 559, 207 P.3d 20 (2009). Reliance is an essential element and is proved by showing that the defendant's misrepresentation was an immediate cause of the plaintiff's injury producing conduct. *Id.* In short, Bui must show that in the absence of BANA's alleged misrepresentation he, "in all reasonable probability," would not have engaged in the injury-producing conduct. *Id.* (quoting *Mirkin v. Wasserman,* 5 Cal. 4th 1082, 1110-1111, 23 Cal. Rptr. 2d 101, 858 P.2d 568 (1993).

Here, Bui's allegations fail to meet Rule 9(b) standards because he fails to identify the "who, what, where, when, and how" the "re-initiated" transactions occurred, much less reliance on some act by BANA. Bui asserts only that **he** did not re-initiate the $150.00 bill payment to his insurance company, not that the intended payee did not re-initiate payment or how the re-initiation occurred. Similarly, he only alleges **his** understanding of the operative agreements, not that the attempted payment was in reliance to any alleged BANA misrepresentation. (Doc. No. 19 at ¶¶ 25-27). For this reason, Bui's UCL claim under the fraudulent/deceptive prong fails.

For the **"unfair" prong** of the UCL, the California Supreme Court has ruled that "the term 'unfair' …'means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens to harm competition.'" *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 187, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999); *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1367, 108 Cal. Rptr. 3d 682 (2010). Further, "where a claim of an unfair act or practice is predicated on public policy … the public policy which is a predicate to the action must be 'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court,* 108 Cal. App. 4th 917, 940 134 Cal. Rptr. 2d 101 (2003).

Here, Bui fails to tether his allegations to any specific constitutional, statutory or regulatory provisions warranting dismissal. *See* Doc. No. 19 at ¶¶ 223-224; *Cel-Tech*, 20 Cal.4th at 187 (Ruling that the appellate courts' previous attempts to define "unfair" as offending an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers was too amorphous and replaced the definition.[14]).

Finally, as with Morrises' NCUDTPA claim, Bui's claim is also preempted by the NBA.[15] Therefore, it not only fails to plead adequate facts to survive, it is not an actionable claim.

**H.**    **Williams Cannot State a Claim for Violation of the Georgia FBPA**. (Count Nine)

"The General Assembly intended that the Georgia [Fair Business Practices Act ("FBPA")][16] have a restricted application only to the **unregulated** consumer marketplace and that FBPA **not** apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." *See Chancellor v. Gateway Lincoln-Mercury, Inc.*, 233 Ga. App. 38, 45 (1998) (emphasis added) (holding that FBPA did not apply to transaction with financing company); O.C.G.A. § 10-1-396(1). As a result, the FBPA does not apply to transactions that are subject to an extensive regulatory regime. *Ne.*

---

[14] Following *Cel-Tech*, appellate court opinions have been divided over whether the definition of "unfair" under the UCL as stated in *Cel-Tech* should apply to UCL actions brought by consumers, but there is strong authority for this court to follow the *Cel-Tech* definition. *See Byars v. SCME Mortg. Bankers, Inc.*, 109 Cal. App. 4th 1134, 1148 135 Cal. Rptr. 2d 796 (2003); *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 93 Cal. Rptr. 2d 439 (2000).

[15] The Ninth Circuit has ruled that claims related to account fees are in conflict with the NBA. *See Montgomery*, 515 F. Supp. at 1113-1114, *citing Bank of Am. v. City & County of S.F.*, 309 F.3d 551, 561 (9th Cir. 2002) ("state attempts to control the conduct of national banks are void if they conflict with federal law, frustrate the purposes of the [NBA], or impair the efficiency of national banks to discharge their duties.") (*citing First Nat. Bank v. California*, 262 U.S. 366, 369, 43 S. Ct. 602, 67 L. Ed. 1030 (1923)); *see also*, *Martinez v. Wells Fargo Bank, N.A. et al*., 2007 U.S. Dist. LEXIS 27388, 2007 WL 963965, *8 (N.D. Cal. March 30, 2007) (plaintiffs' claims against defendant banks for charging real estate transaction fees are preempted by the NBA and 12 C.F.R. § 7.4002).

[16] Plaintiffs misname the FBPA as the "Georgia Consumer Protection Act."

*Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 297 Ga. App. 28, 676 S.E.2d 428, 433–34 (2009).

Williams has not alleged that the consumer banking industry is unregulated, and, in fact, there are few, if any, industries more extensively regulated. For this simple reason, Williams cannot state a claim pursuant to the FBPA. *See Deotare v. Wells Fargo Bank, N.A.*, No. 1:17-CV-699-WSD, 2018 WL 1470897, at *9 (N.D. Ga. Mar. 26, 2018) (dismissing claims FBPA claims related to alleged mishandling of consumer checking transactions).

Even if the FBPA did apply, Williams has failed to state a claim because there is no allegation that she satisfied a required condition precedent to suit – *ante litem* notice of the claim to BANA. O.C.G.A. § 10–1–399(b) expressly requires written demand thirty days before filing any FBPA lawsuit. As a result, the FBPA count is subject to immediate dismissal. *See Brown Realty Assocs., Inc. v. Thomas*, 193 Ga. App. 847, 851, 389 S.E.2d 505, 510 (1989) (affirming judgment on FBPA based on lack of written demand pre-suit).

## V.  CONCLUSION

For the reasons set forth herein, Plaintiffs' Second Amended Complaint must be dismissed pursuant to Rule 12(b)(6).

This the 27th day of August 2018.

                              **McGUIREWOODS LLP**

                              s/ Brian A. Kahn
                              Brian A. Kahn
                              North Carolina Bar No. 29291
                              Jasmine K. Gardner
                              North Carolina Bar No. 47853
                              201 N. Tryon Street, Suite 3000
                              Charlotte, North Carolina 28202
                              (704) 343-2000 (Telephone)
                              (704) 343-2300 (Facsimile)
                              bkahn@mcguirewoods.com
                              jgardner@mcguirewoods.com

                              Cynthia C. Guerin (admitted *pro hac vice*)
                              Texas Bar No. 03802100
                              2000 McKinney Avenue, Suite 1400
                              Dallas, Texas 75201
                              (469) 372-3906 (Telephone)
                              (214) 273-7485 (Facsimile)
                              cguerin@mcguirewoods.com

                              *Attorneys for Bank of America, N.A.*

26

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2018, I electronically filed the foregoing pleading, with any and all attachments with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

David M. Wilkerson
dwilkerson@vwlawfirm.com
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801

James J. Pizzirusso (admitted *pro hac vice*)
jpizzirusso@hausfeld.com
HAUSFELD LLP
1700 K St., NW, Ste 650
Washington, DC 20006

Jeffrey Kaliel (admitted *pro hac vice*)
jkaliel@kalielpllc.com
Sophia Gold (admitted *pro hac vice*)
sgold@kalielpllc.com
Kaliel PLLC
1875 Connecticut Ave, NW, 10th Floor
Washington, DC 20009

*Attorneys for Plaintiff*

s/ Brian A. Kahn
Brian A. Kahn