IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

LISA MORRIS, MICHAEL BUI, and
TUMIKA WILLIAMS on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

BANK OF AMERICA, N.A.,

        Defendant.

CASE NO. 3:18-cv-157-RJC-DSC

**BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ............................................................................................................... 2

    A.    Under North Carolina's Choice of Law Rules, Plaintiffs' Claims Are
Governed by the Substantive Laws of Oklahoma, California, and Georgia,
and, Therefore, Plaintiffs' NCUDTPA Claim Must be Dismissed ...................... 2

    B.    Each of Plaintiffs' Unjust Enrichment Claims Fail Because They All
Admit to Having a Valid and Enforceable Agreement with BANA .................... 5

    C.    All of Morris's Claims Still Fail As a Matter of Law ........................................... 6

        1.    Morris's Breach of Contract Claim Remains Insufficiently Pled ............. 6

            i.    Morris Fails to Plead Facts Showing that BANA Breached
the Deposit Agreement and Schedule of Fees by Assessing
Multiple Fees ................................................................................ 6

            ii.    Morris Fails to Plead a Breach by BANA in Assessing Fees
for Online Intra-Bank Transactions ............................................. 7

            iii.    Morris Still Fails to Plead a Breach of Contract Related to
the MSAS Fees ............................................................................. 8

        2.    Morris's Covenant of Good Faith and Fair Dealing Claim Must Be
Dismissed for the Same Reasons as Her Contract Claim ........................ 9

        3.    A Claim for Conversion Does Not Exist In A Debtor-Creditor
Relationship ............................................................................................ 9

        4.    Morris's OCPA Claim Fails Because the Alleged Conduct Is
Exempt ................................................................................................... 11

    D.    Plaintiffs' Opposition Does Not Save Bui's Claims From Dismissal ................. 13

        1.    Bui Still Fails to Allege Sufficient Facts To Support His Breach of
Contract Claim ...................................................................................... 13

        2.    Bui's Claim for Breach of the Covenant of Good Faith and Fair
Dealing Still Fails Under California Law Because He Fails to
Plead Performance ................................................................................. 14

        3.    Bui's Conversion Claim Fails Because It is Based on Overcharges ....... 16

-i-

4.      Bui's UCL Claims are Preempted by the NBA and Remain Inadequately Pled .................................................................... 17

E.      All of Williams's Claims Fail as a Matter of Law ................................................ 20

1.      Williams's Breach of Contract Claim is Based on a Fabricated "Premature" Fee Argument found Nowhere in the Deposit Agreement ................................................................................... 20

2.      Williams Cannot State an Independent Claim for Breach of Duty of Good Faith and Fair Dealing .............................................................. 22

3.      Williams's Conversion Claim Still Fails Because It Is Inadequately Pled ................................................................................................... 22

4.      The Alleged Conduct is Exempt from the Georgia Fair Business Practices Act ............................................................................. 24

CONCLUSION .............................................................................................................. 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied Fidelity Ins. Co. v. Bank of Oklahoma, N.A.*,
  894 P.2d 1101 (Okla. 1995)..............................................................................11

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ..............................................................................6

*Bank of Am., N.A. v. Sorrell*,
  248 F. Supp. 2d 1196 (N.D. Ga. 2002) ...............................................................25

*Berkeley v. Wells Fargo Bank*,
  No. 15-cv-00749-JSC, 2016 WL 67221 (N.D. Cal. Jan. 2016)..............................14

*Best Buy Stores, L.P. v. Manteca Lifestyle Center, LLP*
  859 F. Supp. 2d 1138 (E.D. Cal. 2012)...............................................................15

*Bogard v. Inter–State Assurance Co.*,
  263 Ga. App. 767, 589 S.E.2d 317 (2003)..........................................................5, 6

*Brakebill v. Bank of America*,
  No. CIV-15-185-SPS, 2015 WL 5311281 (W.D. Okla. Sept. 15, 2015)................12

*Bryant v. Carver State Bank*,
  207 Ga. App. 659, 428 S.E.2d 621 (1993)...........................................................23

*Byars v. SCME Mortgage Bankers, Inc.*,
  109 Cal. App. 4th 1134, 135 Cal. Rptr. 2d 796 (Cal. Ct. App. 2003) ....................19

*United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ............................................................................19

*CareAmerica, Inc. v. Southern Care Corp.*,
  229 Ga. App. 878, 494 S.E.2d 720 (1997)...........................................................20

*Cimarex Energy Co. v. Calhoon*,
  Nos. CIV-11-525, CIV-11-725-D, 2012 WL 1371386 (W.D. Okla. April 19,
  2012) ....................................................................................................................9

*Conatzer v. American Mercury Ins. Co.*,
  15 P.3d 1252 (Okla. Civ. App. 2000) ..................................................................12

-iii-

*Cooper v. Union Bank*,
   507 P.2d 609 (Cal. 1973) ...................................................................................16, 17

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .....................................................................................18

*Decatur Auto Ctr. v. Wachovia Bank, N.A.*,
   276 Ga. 817, 583 S.E.2d 6 (2003)................................................................................24

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247, 106 Cal. Rptr. 3d 46 (Cal. Ct. App. 2010) ..........................19

*Durell v. Sharp Healthcare*,
   183 Cal.App.4th 1350 (2010) .......................................................................................13

*Eaton v. Bank of Oklahoma, N.A.*,
   No. CJ-2010-5209 (order filed Apr. 12, 2011, attached as Ex. A) ...........................12

*First State Bank v. Diamond Plastics Corp.*,
   891 P.2d 1262 (Okla. 1995)...........................................................................................11

*Fong v. E. W. Bank*,
   227 Cal. Rptr. 3d 838 (Ct. App. 2018) .................................................................16, 17

*Ford v. Lehman Bros. Bank, FSB*,
   No. C 12-00842 CRB, 2012 U.S. Dist. LEXIS 85600 (N.D. Cal. June 20,
   2012) ...............................................................................................................................14

*Gil v. Bank of Am., N.A.*,
   42 Cal. Rptr. 3d 310 (Ct. App. 2006) ...................................................................16, 17

*Gutierrez v. Wells Fargo Bank, N.A.*,
   730 F. Supp. 2d 1080 (N.D. Cal. 2010), *aff'd in part, rev'd in part and
   remanded sub nom. Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th
   Cir. 2012) ........................................................................................................................15

*Guzman v. Diamond Candles, LLC*,
   1:15cv422, 2016 WL 5679451 (M.D.N.C. Sept. 30, 2016)..................................3, 4

*Heflebower v. JPMorgan Chase Bank, NA*,
   No. 1:12-CV-01671-AWI, 2013 WL 5476806 (E.D. Cal. Sept. 30, 2013) ............15

*Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*,
   281 Ga. App. 450, 636 S.E.2d 139 (2006)..................................................................22

*Kenney v. Indep. Order of Foresters*,
   744 F.3d 901 (4th Cir. 2014) .........................................................................................2

-iv-

*Kwok v. Delta Air Lines Inc.*,
    578 F. App'x 898 (11th Cir. 2014) .......................................................................21

*Labra v. Cal-W. Reconveyance Corp.*,
    No. C-09-2537 PJH, 2010 WL 889537 (N.D. Cal. Mar. 11, 2010).........................14

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
    44 Cal. App. 4th 194, 51 Cal. Rptr. 2d 622 (1996).................................................5

*Leather Manufacturers' Nat'l Bank v. Merchant's Nat'l Bank*,
    128 U.S. 26 (1888)................................................................................................11

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006)...........................................17

*McKnight v. Linn Operating, Inc.*,
    No. CIV-10-30-R, 2010 WL 9039794 (W.D. Okla. Apr. 1, 2010)...................10, 11

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal. 4th 811, 124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011) .............................13

*Owens v. Andrews Bank & Tr. Co.*,
    220 S.E.2d 116 (S.C. 1975) ..................................................................................10

*People v. Casa Blanca Convalescent Homes, Inc.*,
    159 Cal. App. 3d 509, 206 Cal. Rptr. 164 (1984)..................................................19

*Prassas Capital, LLC v. Blue Sphere Corp.*,
    3:17-cv-131-RJC-DCK, 2018 WL 1567362 (W.D.N.C. Mar. 30, 2018) ................3

*Remediation Products, Inc. v. Adventus Americas, Inc.*,
    No. 3:07CV153RJCDCK, 2010 WL 1946999 (W.D.N.C. May 13, 2010) .............4

*Sheppard v. Bank of America, N.A.*,
    542 Fed. Appx. 789 (11th Cir. 2013)....................................................................24

*Sisemore v. Dolgencorp, LLC*,
    212 F.Supp.3d 1106 (N.D. Okla. 2016)..........................................................5, 12

*Small v. BOKF, N.A.*,
    No. 13-cv-01125-REB-MJW, 2014 WL 3906257 (D. Colo., Aug. 7, 2014) .........12

*SmithKline Beecham Corp. v. Abbott Laboratories*,
    1:15CV360, 2017 WL 1051123 (M.D.N.C. Mar. 20, 2017) ...................................4

*Sohal v. Fed. Home Loan Mortg. Corp.*,
    No. C 11-01941 JSW, 2011 U.S. Dist. LEXIS 97355 (N.D. Cal. Aug. 30,
    2011) .....................................................................................................................13

*Spooner v. Lossiah*,
    185 Ga.App. 876, 366 S.E.2d 236 (1988)...............................................................23

*Steenbergen v. First Fed. Sav. & Loan*,
    753 P.2d 1330 (Okla. 1987)...................................................................10, 11

*Stuart Enterprises Int'l, Inc. v. Peykan, Inc.*,
    252 Ga. App. 231, 555 S.E.2d 881 (2001)............................................................22

*Synovus Bank v. Coleman*,
    887 F.Supp.2d 659 (W.D.N.C. 2012) ...................................................................2, 3

*Tanglewood Land Co., Inc. v. Byrd*,
    299 N.C. 260, 261 S.E.2d 655 (1980)...................................................................3

*Taylor v. Powertel, Inc.*,
    250 Ga. App. 356 (2001) ...................................................................23

*In re Tobacco II Cases*,
    46 Cal. 4th 298, 207 P.3d 20 (2009) ...................................................................18

*Tudor v. American Emp. Ins. Co.*,
    121 Ga.App. 240, 173 S.E.2d 403 (1970)............................................................21

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................19

*Voorhis v. BOK Financial Corp.*,
    No. 13-CV-197-CVE-TLW, 2013 WL 5937395 (N.D. Okla. Nov. 4, 2013).........................12

*WESI, LLC v. Compass Envtl., Inc.*,
    509 F. Supp. 2d 1353 (N.D. Ga. 2007) ...................................................................22

*White v. Wachovia Bank, N.A.*,
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) ............................................................22, 24

*Williams v. National Auto Sales, Inc.*,
    287 Ga. App. 283, 651 S.E.2d 194 (2007)............................................................23

*Yanting Zhang v. Superior Court*,
    57 Cal. 4th 364, 159 Cal. Rptr. 3d 672, 304 P.3d 163 (2013) ................................................19

**Statutes**

12 U.S.C. § 1 *et seq.*..............................................................................................17

12 U.S.C. § 248 ......................................................................................................24

12 U.S.C. § 1811, *et seq.* .......................................................................................24

12 U.S.C. § 5481, *et seq.* .......................................................................................24

Cal. Com. Code § 3420............................................................................................17

O.C.G.A. § 10-1-399(b)...........................................................................................25

Okla. Stat. Title 15 § 754 (2) ...........................................................................11, 12

**Other Authorities**

12 C.F.R. § 7.4002(b)(2)..........................................................................................17

12 C.F.R. § 205.17...................................................................................................24

12 C.F.R. § 1005.17.................................................................................................24

Defendant Bank of America, N.A. ("BANA") respectfully submits this Reply Memorandum in support of its Motion to Dismiss Plaintiffs' Second Amended Complaint filed as Doc. No. 23 (hereinafter, "MTD") and in response to Plaintiffs' Memorandum in Opposition to Bank of America's Motion to Dismiss filed as Doc. No. 26 (hereinafter, "Opposition").

## PRELIMINARY STATEMENT

Plaintiffs' Opposition confirms that their reading of relevant agreements is not simply wrong – it is pedantic to the point of absurdity. Their underlying explanations of what occurred and what they think should have occurred are not based on actual language contained in the parties' agreements, but, instead, are based on their proposed inferences and wrongheaded conclusions that not only violate clear rules of contract construction, but also fly in the face of the standard and accepted industry practices that they themselves cite. If Plaintiffs' methodology prevails, no contract would ever be safe from lawyers seeking to manufacture fictitious disputes for self-gain.

Each transaction that Plaintiffs question was properly performed by BANA. For that simple reason, Plaintiffs cannot assert any plausible claims here. Nevertheless, in addition to their inaccurate factual theories, Plaintiffs assert flawed claims that fail to allege necessary elements. Thus, this case must be dismissed for failure to state a claim upon which relief may be granted.

At the outset, Plaintiffs attempt to avoid the consequences of their pleading deficiencies by inaccurately characterizing the contracts at issue and making unsupported legal conclusions. They even go so far as to (i) redefine the term "item" to suggest a violation of the Deposit Agreement, (ii) misrepresent the express language of the Deposit Agreement and Schedule of Fees, (iii) falsely claim that there are no relevant provisions relating to intra-bank transfers in the agreements at issue, and (iv) fabricate a "premature fee" concept found nowhere in the contracts. However, the analysis that the Court must undertake at the pleading stage is simple and leads to the unavoidable

conclusion that Plaintiffs have failed to plead sufficient facts to state any of their claims. Specifically, Plaintiffs each fail to adequately plead the required elements of their breach of contract and breach of the covenant of good faith and fair dealing claims. Likewise, Plaintiffs' conversion claims are precluded in California and Oklahoma, and they have failed to plead requisite elements for conversion in Georgia. Additionally, Plaintiffs' unjust enrichment claims fail because unjust enrichment is not a standalone cause of action when there is an express agreement. Finally, all of the Plaintiffs' state specific statutory claims are preempted or excepted by federal regulations, and regardless, are inadequately pled. Therefore, and as set forth further below, the Second Amended Complaint ("SAC") must be dismissed in its entirety with prejudice.

## ARGUMENT

**A. Under North Carolina's Choice of Law Rules, Plaintiffs' Claims Are Governed by the Substantive Laws of Oklahoma, California, and Georgia, and, Therefore, Plaintiffs' NCUDTPA Claim Must be Dismissed.**

Plaintiffs assert that North Carolina law applies to their common law claims and that "BANA did not address this choice of law issue in its brief"… [so] "Plaintiffs North Carolina claims remain viable." (Opposition ("Opp.") at 8 n.5). This is false. As explained in BANA's MTD, Plaintiffs' rights and obligations under the Deposit Agreement are "governed by and interpreted according to federal law and the law of the state where [the] account is located." (Ex. B to MTD at 3). Morris's accounts were located in Oklahoma, Bui's in California, and Williams's in Georgia. (SAC at ¶¶ 13-15). Thus, BANA not only addressed Plaintiffs' inaccurate choice of law analysis, but properly moved to dismiss their common law claims under each state's laws.

Further, a federal court sitting in diversity must apply the forum state's choice of law rules. *Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 905 (4th Cir. 2014); *see also* (SAC at ¶ 11.) Here, "North Carolina courts apply different choice of law rules depending on the type of claim asserted . . . ." *Synovus Bank v. Coleman*, 887 F.Supp.2d 659, 668 (W.D.N.C. 2012).

For contract-based claims, the North Carolina Supreme Court has held that when contracting parties have agreed "that a given jurisdiction's substantive law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262, 261 S.E.2d 655, 656 (1980). Here, the Deposit Agreement for each of Plaintiffs' accounts calls for the application of the law in which the accounts are located — Oklahoma for Morris, California for Bui, and Georgia for Williams. *See* (MTD at 6).

For tort claims, North Carolina courts traditionally apply the rule of *lex loci delicti* which mandates that the situs of the claim is the state where the injury occurred. *Prassas Capital, LLC v. Blue Sphere Corp.*, 3:17-cv-131-RJC-DCK, 2018 WL 1567362, at *3 (W.D.N.C. Mar. 30, 2018) (slip copy) (J. Conrad, Jr.,). When it comes to financial injuries, like the ones alleged by Plaintiffs here, "there is no bright-line rule determining where that injury took place." *Id.* Courts have, however, considered the state in which a plaintiff resides as a factor when determining the place in which the financial harm occurred. *See Synovus*, 887 F.Supp.2d at 669; *see also Guzman v. Diamond Candles, LLC*, 1:15cv422, 2016 WL 5679451, at *3 (M.D.N.C. Sept. 30, 2016) (quoting *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 697, 698 S.E.2d 719, 726 (2010) (under the *lex loci* rule, when the exact location of the injury is unclear, the "location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury.") Plaintiffs allege that "[a]t all times relevant," Morris patronized a BANA branch in Oklahoma, Bui patronized a branch in California, and Williams patronized a branch in Georgia. (SAC at ¶¶ 13-15.) Thus, as pled, North Carolina's choice of law rules support the application of Oklahoma, California, and Georgia laws to Plaintiffs' respective tort claims. Accordingly, BANA properly moved to dismiss Plaintiffs' common law claims under the laws of these respective states.

With respect to North Carolina's Unfair and Deceptive Trade Practices Act

("NCUDTPA"), there is a split of authority amongst North Carolina appellate courts as to the applicable choice of law rule because these claims are "neither wholly tortious nor wholly contractual in nature." *Guzman*, 2016 WL 5679451, at *3 (internal citations omitted). One approach is the *lex loci* test, which, as explained above, applies the law of the state in which the injuries were sustained. *SmithKline Beecham Corp. v. Abbott Laboratories*, 1:15CV360, 2017 WL 1051123, at *6 (M.D.N.C. Mar. 20, 2017). The second approach is the "most significant relationship test," which applies "the law of the state having the most significant relationship to the occurrence giving rise to the action." *Id.* The Supreme Court of North Carolina has not reconciled this split. *Id.* Just over a year ago, however, after extensive discussion, the Middle District of North Carolina found that "federal courts generally appear to favor the lex loci rule" and ultimately decided to "apply the lex loci test" to the NCUDTPA claim at issue. *Id.* at *6, *8. Here, the *lex loci* test supports the application of Oklahoma, Georgia, and California laws to Plaintiffs' claims since the alleged injuries relate to Plaintiffs' bank accounts in these states. Moreover, North Carolina law does not apply to any of Plaintiffs' claims, as none of the Plaintiffs reside in North Carolina and none of the alleged injuries were sustained in North Carolina.

Yet more fundamentally, Plaintiffs' NCUDTPA claim must be dismissed in its entirety because North Carolina law does govern the conduct in dispute. *See Remediation Products, Inc. v. Adventus Americas, Inc.*, No. 3:07CV153RJCDCK, 2010 WL 1946999, at *22 (W.D.N.C. May 13, 2010) (Plaintiff brought an unfair and deceptive trade practice claim under North Carolina and Colorado law. After a choice of law analysis, Judge Conrad held that North Carolina law applied to Plaintiff's unfair trade practices claim, and therefore dismissed Plaintiff's claim for unfair trade practices under the Colorado Consumer Protection Act.) Alternatively, should this Court find that North Carolina law governs Plaintiffs' unfair and deceptive trade practices claims, then Plaintiffs'

claims for unfair and deceptive trade practices under the Oklahoma, California, and Georgia law necessarily fail and must be dismissed.  *Id.*

**B.      Each of Plaintiffs' Unjust Enrichment Claims Fail Because They All Admit to Having a Valid and Enforceable Agreement with BANA.**

Plaintiffs' unjust enrichment claims fail for the simple reason that they all admit to the existence of an express and enforceable contract between them and BANA.  *Sisemore v. Dolgencorp, LLC*, 212 F.Supp.3d 1106, 1112 (N.D. Okla. 2016) (holding that a claim for unjust enrichment is not viable when an enforceable contract governs the parties' relationship); *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203, 51 Cal. Rptr. 2d 622 (1996) (same); *Bogard v. Inter–State Assurance Co.*, 263 Ga. App. 767, 589 S.E.2d 317, 319 (2003) ("the existence of the contract between the parties precludes [plaintiff]'s unjust enrichment claim"); *see also* (SAC ¶ 2, 6, 7, 13-15, 38-41, 142).  Here, each individual Plaintiff and BANA agree that a combination of written agreements govern their relationship, and Plaintiffs do not dispute the enforceability of any of the agreements referenced in the SAC.  Since the conduct forming the basis of Plaintiffs unjust enrichment claims is governed by at least one written agreement, they all fail as a matter of law.  *See*, (MTD at 17-18).

Moreover, Plaintiffs' attempts to save their unjust enrichment claims are futile because they mischaracterize cases, which do not stand for the proposition that Plaintiffs suggest.  For instance, Morris asserts that her claim for unjust enrichment should not be dismissed because "Oklahoma courts have . . . consistently allowed plaintiffs to plead . . . alternative theories of recovery and for unjust enrichment."  (Opp. at 20.)  However, the Northern District of Oklahoma recently rejected this very argument.  In *Sisemore*, the plaintiff argued that although he and Dollar General had a contractual relationship, "he should be allowed to pursue alternative theories," like unjust enrichment.  *Sisemore*, 212 F.Supp.3d at 1112.  The *Sisemore* court acknowledged that plaintiff could assert inconsistent legal theories in a complaint, but found that plaintiff had alleged no facts to support "his alternative theory

that he had a quasi-contractual relationship with Dollar General." *Id.* The court then dismissed the claim because plaintiff's "contract claims provide him with an adequate remedy at law. . . ." *Id.*

Additionally, Bui attempts to save his unjust enrichment claim by mischaracterizing the case law derived from *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). In *Astiana*, the plaintiff did <u>not</u> allege an express contract with the defendant, unlike what Bui does here, and sought restitution through an unjust enrichment claim. *Id.* The court held that "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a ***quasi-contract claim*** seeking restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (*quoting Rutherford Holdings, LLC v. Plaza Del Rey,* 223 Cal.App.4th 221, 166 Cal.Rptr.3d 864, 872 (2014)) (emphasis added). The *Astiana* court, through its ruling, intended to allow a claim for restitution ***in the absence of an express contract***. *Id.* The holding does not apply where a plaintiff, like Plaintiffs, clearly and unequivocally alleges the existence of a valid and enforceable agreement between the parties. *See generally,* (SAC ¶ 39, 40, and 41); *see also Bogard v. Inter–State Assurance Co.*, 263 Ga. App. 767, 589 S.E.2d 317, 319 (2003) ("the existence of the contract between the parties precludes [plaintiff]'s unjust enrichment claim"). In sum, because Plaintiffs admit to an express contract, their unjust enrichment claims must be dismissed.

### C. All of Morris's Claims Still Fail As a Matter of Law.

#### 1. Morris's Breach of Contract Claim Remains Insufficiently Pled.

##### i. *Morris Fails to Plead Facts Showing that BANA Breached the Deposit Agreement and Schedule of Fees by Assessing Multiple Fees*.

BANA's ability to assess fees arises out of the definition of the word ***item***, as defined in the Deposit Agreement. (MTD at 2-3.); *see also* (SAC at ¶ 86). The Deposit Agreement defines the term ***item*** as "***all orders and instructions*** for the payment, transfer or withdrawal of funds from an account." (SAC at ¶ 86). Likewise, pursuant to the Schedule of Fees, NSF and OD fees are

$35.00 each and may be assessed each time that BANA declines to or completes an online transaction when there are insufficient funds to cover the item. (SAC at ¶¶ 4, 17). Thus, every time that BANA receives an order or instruction to pay, transfer, or withdraw funds from a customer's account where funds are insufficient, regardless of whether that instruction originates from Plaintiff or a third-party intended payee, BANA may assess a $35.00 fee.

Morris attempts to twist the straightforward definition of *item* into the separate term "transaction".[1] For instance, Morris contends that the Deposit Agreement and Schedule of Fees "indicate only a single NSF or OD Fee will be charged on a *transaction*, regardless of the number of times it is resubmitted. . . ." (Opp. at 4). This is a blatant misrepresentation of the express language of the agreements cited above. *See* (MTD at 2-3, 7-8); *see also* (SAC at ¶ 42, where Plaintiffs' mischaracterize *item* to mean "singular transaction").

Looking past Morris's improper characterization of the term *item*, Morris admits that her Citibank and Comenity payments were ordered to be paid several times and that fees resulted. *See* (SAC at ¶¶ 20-22). Although Morris alleges that *she* did not order these payments on multiple occasions, she does not and cannot allege that the intended payee did not do so. *See* (*Id*. at ¶ 24). Since the Deposit Agreement and Schedule of Fees allow BANA to assess a fee to "*all* orders and instructions for the payment . . . of funds from an account," regardless of whether that order is from the customer or an intended payee, Morris fails to sufficiently assert a breach of the Deposit Agreement or any other agreement.

        ii.    *Morris Fails to Plead a Breach by BANA in Assessing Fees for Online Intra-Bank Transactions*.

Morris goes on to assert a myriad of conclusory attacks on BANA[2] and

---

[1] (Opp. at 5 n.3.); *see also* (SAC at ¶ 47)

[2] Morris alleges that, with respect to intra-bank transfers, BANA has the ability to see whether a transfer from one BANA account to another BANA account will be futile before processing the transfer. This

105720259.1

7

Case 3:18-cv-00157-RJC-DSC   Document 29   Filed 10/09/18   Page 15 of 35

mischaracterizations of BANA's documents.[3]  *See generally* (Opp. 9-13).  As explained in BANA's MTD, Morris's transfers from her BANA checking account to a BANA Home Equity Line of Credit ("HELOC") are governed by BANA's Online Banking Agreement and Schedule of Fees.  *See* (MTD at 3-4, 8); *see also* (SAC at ¶ 38).  Under the Online Banking Agreement and Schedule of Fees, when a customer has insufficient funds to cover an Online Intra-Bank payment, BANA can elect to process the transaction and assess an OD Fee or decline it and assess an NSF Fee.  *See* (Ex. A to MTD at 3(E)).  The Online Banking Agreement also grants BANA the option of making a further attempt "to issue the payment or process the transfer request."  *Id.*

Morris alleges that payments from her checking account to a HELOC were attempted and then resubmitted by BANA, resulting in additional fees.  *See* (SAC at ¶¶ 63, 65).  However, because the Online Banking Agreement and Schedule of Fees explicitly allow BANA to assess fees when a customer has insufficient funds to cover an Online Intra-Bank payment ***and to reattempt a transfer***, Morris fails to sufficiently assert a breach of the Online Banking Agreement or any other agreement.

       iii.    *Morris Still Fails to Plead a Breach of Contract Related to the MSAS Fees.*

Morris alleges that BANA improperly charged monthly account service fees ("MSAS") on her savings account after she allegedly made transfers of over $25 from her checking to her savings account.  (SAC at ¶¶ 143-144).  As explained in BANA's MTD, to avoid the MSAS fee, Morris

---

unsupported conclusion is merely a wild theory without any factual support based only on Morris's suppositions regarding BANA's alleged processing of the "Keep the Change" feature.  (Opp. at 10.) It must be disregarded.

[3] Morris contends that the Deposit Agreement is the "*only*" agreement that contains a provision specifically addressing intra-bank transfers.  (Opp. at 10).  This is false.  The Online Banking Agreement, which is quoted in the SAC, applies to "transfers between BofA accounts."  *See* (SAC at ¶ 38); *see also* (MTD at 3-4, 8).  As noted above, Morris also misquotes the definition of ***item***.  She boldly asserts that "in the Deposit Agreement, "Item" is defined as a transaction deposited for collection *at another financial institution*:" (Opp. at 11.)  The Deposit Agreement's definition of ***item***, however, does not include the phrase "at another financial institution."  *See* (SAC at ¶ 40).

could make combined monthly *automatic* transfers of $25 or more from her BANA checking account to her savings account during the immediately preceding statement cycle. (MTD at 8-9). Morris contends that the survival of her claim turns on the definition of automatic, "a fact issue not ripe for resolution on a Rule 12(b)(6) motion." (Opp. at 17.) Yet this argument is unavailing because *nowhere in the SAC does Morris even allege that her transfers were automatic, as required*. Because Morris does not allege that the transfers were automatic, her allegations are insufficient on their face, requiring dismissal of the breach of contract claim.

   2.   <u>Morris's Covenant of Good Faith and Fair Dealing Claim Must Be Dismissed for the Same Reasons as Her Contract Claim</u>.

In Oklahoma, claims for breach of the implied covenant of good faith and fair dealing can arise out of a contract or a tort. *See Cimarex Energy Co. v. Calhoon,* Nos. CIV-11-525, CIV-11-725-D, 2012 WL 1371386, at *2 (W.D. Okla. April 19, 2012). Morris concedes that her "breach of good faith claim is a part of her breach of contract claim," not a tort claim, and that it is "tied to the specific language of the BANA account documents." (Opp. at 8.) In light of these representations, Morris fails to state a claim for breach of the covenant, as the alleged supporting facts are "part of her breach of contract claim," which fail as a matter of law for the same reasons as stated in the section above. (*See supra, C.1.*)

   3.   <u>A Claim for Conversion Does Not Exist In A Debtor-Creditor Relationship</u>.

BANA cited seven cases in its MTD, all of which hold that conversion of money is not a recognized cause of action in Oklahoma. *See* (MTD at 14-15.) Morris's opposition fails to address any of these cases. *See generally* (Opp. at 18-19.) Instead, Morris relies upon a non-binding South Carolina Supreme Court case from 1975 and an Oklahoma Supreme Court case with starkly different facts than those at issue here. (*Id.*)

First, Morris contends that "[t]he Oklahoma Supreme Court distinguished the rule

regarding conversion claims of general debt versus specific amounts of money." (Opp. at 18). However, she fails to cite to any Oklahoma case law, let alone an Oklahoma Supreme Court case, in support. *See generally* (Opp. at 18-19.) Rather, she cites to *Owens*, a South Carolina Supreme Court case that analyzes conversion under South Carolina law, not Oklahoma, and is thus wholly inapplicable. *See Owens v. Andrews Bank & Tr. Co.,* 220 S.E.2d 116 (S.C. 1975).

Second, Morris asserts that *Steenbergen* allows her to bring a conversion claim against BANA. *See* (Opp. at 19.) Morris is mistaken. *Steenbergen* begins by reiterating the general rule that a relationship between a bank and a depositor is a debtor-credit relationship,[4] and within those relationships, "an action for conversion of funds will not lie for a general debt." *Steenbergen v. First Fed. Sav. & Loan*, 753 P.2d 1330, 1332 (Okla. 1987). Notwithstanding this general rule, the *Steenbergen* court allowed the plaintiff to pursue a conversion claim against a bank based on the narrow holding "that once an account matures [closes], **a bank's withholding of a check** representing specifically identified and designated sums belonging to the depositor, and its use of the check in an unauthorized manner, does constitute conversion." *Id.* Morris's attempt to extend this holding to the facts of this case is misplaced. Nowhere in the SAC does Morris allege that her checking or savings account are closed, nor does she assert that BANA withheld **a check** representing specifically identified and designated sums belonging to Morris. The SAC is also devoid of any allegation that BANA used **a check** in an unauthorized manner. Ultimately, the facts here are vastly different from those in *Steenbergen*, and *Steenbergen's* narrow holding does not support Morris's claim for conversion. *See McKnight v. Linn Operating, Inc.*, No. CIV-10-30-R, 2010 WL 9039794, at *4 (W.D. Okla. Apr. 1, 2010) (explaining that *Steenbergen's* decision

---

[4] The Deposit Agreement expressly states that BANA's relationship with Morris is that of debtor and creditor. *See* (Ex. B to MTD at 2).

to allow a depositor to bring a conversion claim against a bank was based on "unique facts of [that] case[]." Tellingly, the *McKnight* court refused to extend *Steenbergen's* principles to the facts before it and, instead, found that plaintiffs' allegations fell within the realm "of the debtor-creditor relationship, for which a conversion claim does not lie.")

Lastly, in a footnote, Morris essentially admits that she brought an unrecognized cause of action for conversion. (Opp. at 19 n.8). In an attempt to fix her mistake, Morris requests leave to amend to file a claim for "chose in action" or "thing in action." *Id*. However, Morris has already had two opportunities to adequately plead this claim, and she should not be allowed a third because such amendment would be futile. Indeed, because BANA and Morris's relationship is that of debtor-creditor, it is well-settled that "the money deposited [in a bank] is no longer the property of [Morris], but becomes the property of the bank, and the bank becomes the debtor to [Morris]."[5] Thus, because Morris has no personal property right to the funds deposited in her accounts (or, more accurately, the Bank's funds advanced in lieu thereof), a claim for chose in action or thing in action would fail as a matter of law. *See First State Bank v. Diamond Plastics Corp.,* 891 P.2d 1262, 1273 (Okla. 1995) (finding that bank could not convert funds by withholding payment on the draft because drafter never acquired a personal property interest in those funds).

    4.    <u>Morris's OCPA Claim Fails Because the Alleged Conduct Is Exempt</u>.

As explained in BANA's MTD, when a particular transaction or action is subject to regulation under the laws administered by either federal or state authority, the action or transaction is exempt from Oklahoma's Consumer Protection Act ("OCPA"). Okla. Stat. Title 15 § 754 (2); *see also* (MTD at 21-22). BANA presented ample authority that the OCC and CFPB regulate

---

[5] *Allied Fidelity Ins. Co. v. Bank of Oklahoma, N.A.*, 894 P.2d 1101, 1104 (Okla. 1995) (quoting *Ingram v. Liberty Nat'l Bank*, 533 P.2d 975, 977 (Okla. 1975) and citing in support, *Leather Manufacturers' Nat'l Bank v. Merchant's Nat'l Bank*, 128 U.S. 26, 34 (1888).

BANA's banking activities, and, thus, under § 754 (2), BANA cannot be sued under the OCPA for its banking conduct. *See* (MTD at 21-22). To avoid this fatal flaw, Plaintiffs incorrectly contend that the OCPA's exemption only applies "if the **specific conduct at issue** is regulated by state or federal law." (Opp. at 23-24.) The statute, however, does not require regulation of the **specific conduct at issue**. Applicable case law also confirms that the OCPA's exemption applies broadly to "actions" or "transactions" governed by federal law, and does not support Morris's narrow view.[6] Finally, the cases cited by Plaintiffs' are distinguishable, and none suggest a finding of no federal statutory exemption in this case.[7] Accordingly, Morris's claim fails as a matter of law.

---

[6] *See Small v. BOKF, N.A.*, No. 13-cv-01125-REB-MJW, 2014 WL 3906257, *6 (D. Colo., Aug. 7, 2014) (Under Oklahoma law, "[t]he fact that the OCC may not regulate the FastLoan program specifically does not remove this claim from the ambit of the exemption, which broadly encompasses both "actions" and "transactions" which are regulated by federal law." "Thus, the fact that defendant is subject to federal regulation governing false and deceptive practices is enough to bring plaintiff's OCPA claim within the ambit of the regulatory exemption.")

[7] *Sisemore*: Finding that the OCPA's safe harbor provision barred plaintiff's claims based on the labeling of defendant's motor oils, but did not prevent plaintiff's claims against defendant's product placement because there was only federal authority regulating the labeling of motor oil products, not their placement. *Sisemore*, 212 F.Supp.3d at 1109. Here, because BANA's assessment of fees is regulated by the CFPB, OCC, and FDIC, such conduct is exempt from the purview of the OCPA.

*Eaton*: The brief, two-page order, does not explain the court's reasoning in denying the exemption. *Eaton v. Bank of Oklahoma, N.A.*, No. CJ-2010-5209 (D. Ct. Tulsa Cnty., Okla.) (order filed Apr. 12, 2011, attached as Ex. A). More importantly, since *Eaton*, at least two more-lengthy opinions have found particular activities of a national bank exempt under § 754 because of the OCC's oversight of banking practices. *See Voorhis v. BOK Financial Corp.,* No. 13-CV-197-CVE-TLW, 2013 WL 5937395, *10 (N.D. Okla. Nov. 4, 2013) *(*claim of deceptive practices concerning financing transaction exempt under OCPA); *Brakebill v. Bank of America*, No. CIV-15-185-SPS, 2015 WL 5311281, *3 (W.D. Okla. Sept. 15, 2015) (claim of deceptive practices arising from foreclosure proceeding related to a home loan exempt). This Court should follow the more recent and fulsome cases and find the banking conduct at issue to be exempt as a result of its federal regulation.

*Conatzer*: Finding that the OCPA applied to an automobile insurer's alleged failure to obtain a salvage certificate because the Oklahoma Insurance Code provisions regulating unfair and deceptive trade only extended to practices that affected the business of insurance. The court reasoned "although the activity of reselling cars upon which claims may have been paid may be a regular part of AMI's activities, it certainly is not an inherent part of the business of insurance." In stark contrast, the assessment of fees challenged by Morris is at the very core of the business of banking and is extensively regulated by the CFPB, OCC, and FDIC. *Conatzer v. American Mercury Ins. Co.*, 15 P.3d 1252, 1255 (Okla. Civ. App. 2000).

**D.      Plaintiffs' Opposition Does Not Save Bui's Claims From Dismissal.**

1.      <u>Bui Still Fails to Allege Sufficient Facts To Support His Breach of Contract Claim</u>.

The crux of Bui's argument that his California breach of contract claim should survive is that California's requirement that a plaintiff plead performance or excuse for nonperformance is somehow unfair.  (Opp. at 6 n.4.)  However, this personal opinion is not a legal basis to deny a valid MTD. Despite Plaintiffs' protestations, a breach of contract claim under California law ***requires*** a plaintiff to plead: "(1) the existence of the contract; (2) the ***plaintiff's performance or excuse for nonperformance***; (3) the defendant's breach; and (4) the resulting damages to plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821, 124 Cal. Rptr. 3d 256, 250 P.3d 1115 (2011) (emphasis added).  Plaintiff Bui has clearly failed to plead performance or excuse here, and, indeed, he cannot plead either based on his own admitted failure to maintain sufficient funds in his account.

Bui also argues that he "did not fail to perform" because the Deposit Agreement contemplates the assessment of OD and NSF fees in the event an accountholder tries to overdraw his account.  (Opp. at 6, n.4.)  However, this reading would render the requirement to plead performance meaningless for every contract that set forth provisions to address a potential breach or default by one party (e.g., every automobile or mortgage loan contract that referenced the potential of repossession or foreclosure in the event of the borrower's default).  *See Sohal v. Fed. Home Loan Mortg. Corp.,* No. C 11-01941 JSW, 2011 U.S. Dist. LEXIS 97355 (N.D. Cal. Aug. 30, 2011) (Rejecting plaintiff's argument that non-payment could constitute performance because the operative agreements contemplate non-payment). Further, while the performance can be alleged in general terms, excuses must be pleaded specifically. *Durell v. Sharp Healthcare,* 183 Cal.App.4th 1350, 1367 (2010) (citations and quotations omitted).

Here, Bui concedes that he had insufficient funds when he attempted to make the payments at

issue and, as such, has not and cannot plead facts showing that he performed under the Deposit Agreement.[8]  Further, Bui has not even attempted to plead an excuse for his failure to maintain sufficient funds in his account.  His failure to plead either of these required elements is necessarily dispositive of his California breach of contract claim.

Instead of addressing this deficiency head on, Bui attempts to distinguish the cases cited by BANA[9] by comparing specific facts.  However, the legal standard for a California breach of contract claim requires allegations of "performance" or "excuse for nonperformance" regardless of the facts, and if this critical element is omitted, the claim must be dismissed.  *See Ford v. Lehman Bros. Bank, FSB,* No. C 12-00842 CRB, 2012 U.S. Dist. LEXIS 85600, at *20-22 (N.D. Cal. June 20, 2012) (dismissing breach of contract cause of action based on failure to plead performance or excuse for nonperformance).  *Berkeley* and *Labra* both support the rule that courts must apply the same pleading standard for a breach of contract claim regardless of facts, and, therefore, these cases are relevant and applicable here.  Accordingly, Bui's breach of contract must be dismissed.

2.      Bui's Claim for Breach of the Covenant of Good Faith and Fair Dealing Still Fails Under California Law Because He Fails to Plead Performance.

As with his breach of contract arguments, Bui makes conclusory assertions and attempts to hide his claim's shortcomings with inaccurate characterizations of case law on the implied covenant of good faith and fair dealing.[10]  However, the only pertinent question at this stage is whether Bui has adequately pled an implied covenant claim under California law.  He has not.

***At the pleading stage,*** the necessary elements to establish a breach of the implied covenant of

---

[8] Plaintiffs do not allege that they had sufficient funds in their accounts and generally accept that OD and NSF fees were assessed because they lacked such funds.  *See* SAC ¶ 25; Opp. at 1-2.

[9] *Berkeley v. Wells Fargo Bank,* No. 15-cv-00749-JSC, 2016 WL 67221, at *5 (N.D. Cal. Jan. 2016) and *Labra v. Cal-W. Reconveyance Corp.,* No. C-09-2537 PJH, 2010 WL 889537, at *8-9 (N.D. Cal. Mar. 11, 2010)

[10] *See* Opp. at 7-9.

good faith and fair dealings under California law are: "(1) the parties entered into a contract; (2) **the plaintiff fulfilled his obligations under the contract**; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Heflebower v. JPMorgan Chase Bank, NA,* No. 1:12-CV-01671-AWI, 2013 WL 5476806, at *8 (E.D. Cal. Sept. 30, 2013) (quoting *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D.Cal.2010) (emphasis added). In short, both breach of contract and the implied covenant claims require allegations of performance or excuse for nonperformance, which Bui fails to plead once again. (*see supra, I.B.1*). Thus, for the same reason that his breach of contract claim fails, Bui's breach of the covenant of good faith and fair dealing fails as well.

Further, in an attempt to save his claim, Bui cites to *Gutierrez v. Wells Fargo Bank, N.A.*[11] and *Best Buy Stores, L.P. v. Manteca Lifestyle Center, LLP*,[12] which were both based on decisions that were rendered well after the pleading stage — one after a trial and one on summary judgment – indicating that both plaintiffs had sufficiently pleaded their breach of implied covenant claims in the first place. For instance, the *Gutierrez* court's conclusions of fact and law regarding the breach of the covenant of good faith and fair dealing was based largely on the operative agreements and expert testimony made after a two-week bench trial. In *Best Buy Stores*, the court weighed proffered evidence to determine that conduct in bad faith may constitute a breach of the covenant of good faith and fair dealing. However, Bui cannot apply the holdings in *Gutierrez* and *Best Buy Stores* here because the court is not being asked to render a summary judgment order or a final order, but rather is being asked

---

[11] *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1113 (N.D. Cal. 2010), *aff'd in part, rev'd in part and remanded sub nom. Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712 (9th Cir. 2012).
[12] *Best Buy Stores, L.P. v. Manteca Lifestyle Center*, LLP 859 F. Supp. 2d 1138, 1152 (E.D. Cal. 2012) (quoting *R.J. Kuhl Corp. v. Sullivan*, 13 Cal. App. 4th 1589, 1602 (1993))

to decide whether Bui has adequately pleaded his claim in the first instance, which he has not.

      3.     <u>Bui's Conversion Claim Fails Because It is Based on Overcharges</u>.

In a futile effort to avoid dismissal of his conversation claim, Bui mischaracterizes three cases, *Fong*,[13] *Cooper*,[14] and *Gil*,[15] that permitted conversion claims regarding bank payouts based on forged or unauthorized instruments pursuant to California Uniform Commercial Code ("CA UCC"). Specifically, Bui cites to *Fong, Cooper,* and *Gil* for the proposition that "there is no special rule preventing a depositor from pursuing a conversion action against the bank that holds his or her money." *Fong*, 227 Cal. Rptr. 3d at 845 (Ct. App. 2018). However, all of these citations are taken out of context. In all three cases, the conversion claim was based on allegations of payment of deposited funds ***based on forged or unauthorized instruments***, not the alleged overcharging of NSF/OD fees at issue here. *See Fong*, 227 Cal. Rptr. 3d 838 (Plaintiff alleged conversion of deposited funds as a result of ***forged documents*** authorizing the transfers); *Cooper,* 507 P.2d 609 (Plaintiffs brought a conversion claim against defendant banks to recover amounts paid on ***forged instruments***); *Gil,* 42 Cal. Rptr. 3d at 1378 (holding that a collecting bank which cashes a check on the ***unauthorized indorsement*** of the payee is liable to the payee; but it is through an action in conversion, not negligence). For instance, the *Fong* court based its ruling on, *Cooper,* which held that a "depository [] bank is 'strictly liable to the true owner if it pays an instrument on a forged indorsement.'" *Fong*, 19 Cal. App. 5th at 233 (quoting *Cooper,* 9 Cal. 3d at 107.) *Cooper, Fong,* and, *Gil* all based their holdings on the CA UCC which expressly states, "[t]he law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer . . .or a bank makes or obtains payment with

---

[13] *Fong v. E. W. Bank*, 227 Cal. Rptr. 3d 838, 844 (Ct. App. 2018).
[14] *Cooper v. Union Bank*, 507 P.2d 609 (Cal. 1973).
[15] *Gil v. Bank of Am., N.A.*, 42 Cal. Rptr. 3d 310 (Ct. App. 2006).

respect to the instrument from a person not entitled to enforce the instrument . . ." *See*, Cal. Com. Code § 3420. *Fong, Cooper,* and *Gil* are not applicable to this case because Bui's cause of action for conversion is based on overcharges, not payouts based on forged or unauthorized instruments.

Further, Bui incorrectly argues that *McKell,*[16] as cited by BANA in its MTD, is inapplicable because the case involved a mortgage company that overcharged its customers and required "a specific identifiable sum." First, BANA never argued that a claim for conversion requires a "specific identifiable sum"— BANA argues that *McKell* holds that an overcharge cannot give rise to a conversion claim under California law. *See* (MTD at 15); *see also McKell*, 142 Cal. App. 4th at 1492 ("Plaintiffs cite no authority for the proposition that a cause of action for conversion may be based on an overcharge. Consequently, they have failed to demonstrate that they have stated a cause of action for conversion"). Tellingly, Bui also fail to cite any authority suggesting that a conversion can be based on an overcharge. Therefore, Bui's conversion claim must be dismissed because a conversion claim cannot be based on overcharges between a depositor and bank.

4.   Bui's UCL Claims are Preempted by the NBA and Remain Inadequately Pled.

In addition to the preemption reasons explain herein, Bui's UCL claims are preempted by the NBA because BANA is a national bank whose non-interest charges and fees are regulated by the NBA. *See supra* B.4 and *infra* C.4.[17] Alternatively, if the Court finds that the UCL is not preempted, Bui still

---

[16] *McKell v. Wash. Mut., Inc.,* 142 Cal. App. 4th 1457, 49 Cal. Rptr. 3d 227 (2006).

[17] In addition, the OCC regulates the banking activities of national banks and its subsidiaries regarding unfair and deceptive practices through the powers conferred upon it through the National Bank Act, 12 U.S.C. § 1 *et seq*., ("NBA"). OCC Advisory Letter of March 22, 2002, 2002 Westlaw 521380. Under the NBA, the establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles. 12 C.F.R. § 7.4002(b)(2); *see also Montgomery v. Bank of* Am. Corp., 515 F. Supp. 2d 1106 (C.D. Cal. 2007) (holding that Plaintiff's UCL claims were preempted by the NBA and the unfair and deceptive practices by the bank were in clear conflict with the NBA and the regulations promulgated thereunder).

fails to allege a UCL claim under either the fraudulent or unfair prong required under California law.

To state a claim for violation of the fraudulent prong of the UCL, Bui must plead actual reliance on the omission or, at the very least, allege that he would have acted differently if the omission was revealed. *In re Tobacco II Cases*, 46 Cal. 4th 298, 326, 207 P.3d 20, 39 (2009) (holding that the actual reliance is required plead and proved under the UCL fraudulent prong). Bui mischaracterizes the principle that reliance on an omission or misrepresentation can be presumed or inferred when the omission is material. (SAC at 25) (citing to *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)). If fact *Daniel* court held that:

> ***An essential element for a fraudulent omission claim is actual reliance. To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. A plaintiff need not prove that the omission was the only cause or even the predominant cause, only that it was a substantial factor in his decision***. A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently. That one would have behaved differently can be presumed, or at least inferred, when the omission is material. An omission is material if a reasonable consumer would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question.

*Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal citations and quotations omitted) (emphasis added).

Here, Bui does not allege actual reliance, and reliance cannot be presumed. Plaintiffs generally characterize themselves as living "paycheck to paycheck" and having to from "time to time . . . overdraw the[ir] checking account," but these facts, even if true, do not lead to the nonsensical presumption that Plaintiffs initiated deductions from their accounts only because they would only incur a single NSF/OD fee. In fact, Bui's allegations more clearly suggest he initiated deductions from their account to pay their bills. Indeed, Bui did so hoping that BANA would pay his creditors amounts due even though Bui did not have sufficient funds in his deposit account. The Opposition

does not remedy the fact that Bui has failed to allege actual reliance or plead facts leading to a presumption that there was actual reliance on an alleged omission and/or misrepresentation. Thus, Bui's UCL claim under the fraudulent prong must be dismissed.[18]

As to the unfair prong, the standard for determining what business acts or practices are "unfair" in consumer actions under the UCL is currently unsettled. *Yanting Zhang v. Superior Court*, 57 Cal. 4th 364, 380 n. 9, 159 Cal. Rptr. 3d 672, 304 P.3d 163 (2013). One test requires that a plaintiff prove "that the defendant's conduct is tethered to an . . . underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law." *Byars v. SCME Mortgage Bankers, Inc.*, 109 Cal. App. 4th 1134, 1147, 135 Cal. Rptr. 2d 796 (Cal. Ct. App. 2003). Another test holds that "an 'unfair' business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *People v. Casa Blanca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530, 206 Cal. Rptr. 164 (1984). Finally, a third test requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257, 106 Cal. Rptr. 3d 46, (Cal. Ct. App. 2010).

Regardless, Bui's claims under the UCL unfair prong fail all three tests. First, Bui fails to tether his claim to an "underlying, statutory or regulatory provision." Under the second and third tests, Bui fails to allege that charging NSF/OD fees was immoral or that his injury could not reasonably have

---

[18] Plaintiffs also fail to meet the heightened pleading standard of Rule 9(b) which is required for a claim of fraud, particularly in that they fail to allege with specificity their reliance on the alleged omission and/or misrepresentation made by BANA. *See United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

been avoided (e.g. by not attempting to make payments with insufficient funds). In fact, it is difficult

to understand how BANA acted immorally or how Bui could not have reasonably avoided the fees

when he voluntarily attempted to overdraw his account and breached the Deposit Agreement. For all

these reasons, Bui fails to adequately allege a claim under the UCL, and that claim must be dismissed.

**E.      All of Williams's Claims Fail as a Matter of Law.**

1.      Williams's Breach of Contract Claim is Based on a Fabricated "Premature" Fee Argument found Nowhere in the Deposit Agreement.

Much like her co-Plaintiffs' breach of contract arguments, Williams misconstrues language in

the Deposit Agreement and ignores provisions that govern how BANA charges NSF/OD fees.

Under Georgia law, when interpreting a contract, a court must first "decide whether the language is

clear and unambiguous." *CareAmerica, Inc. v. Southern Care Corp.*, 229 Ga. App. 878, 880, 494

S.E.2d 720 (1997). "If it is, the court simply enforces the contract according to its clear terms; the

contract alone is looked to for its meaning." *Id.* Here, the plain text of the Deposit Agreement and

Schedule of Fees is unambiguous and supports BANA's process for charging NSF/OD fees. The

following are direct quotations from the Deposit Agreement:

- "Posting transactions to your account impacts your account balance." (MTD Ex. A., pg. 22.)
- "Posting a debit or hold reduces your balance." (*Id.*)
- "Debits include…fees." (*Id.*)
- "We generally determine ***at the time we post a debit*** to your account whether it creates an overdraft and whether an overdraft or returned item fee applies." (*Id.*, pg. 23.)
- "***After the end of each business day***…we start with the balance in your account at the beginning of the business day,…Next we generally add credits to your balance and then ***subtract debits***..." (*Id.*, pg. 22.) (emphasis added).
- "[W]e subtract from your balance most fees (such as…overdraft item fees [and] returned item fees) in order from highest to lowest dollar amount." (*Id.*)

Therefore, on any day that Williams had insufficient funds to cover her transactions, she incurred fees

which BANA would subtract from the existing balance ***at the end of that same day***. (*See id.*)

In the SAC, Williams details certain transactions to show how the posting of fees supposedly

created a larger negative balance than the Deposit Agreement allows. For example, Williams asserts that she ended October 24, 2017 with a negative balance, a portion of which was for NSF/OD fees subtracted on that day. (*Compare* SAC at ¶ 109 *with* MTD Ex. A, pgs. 22-23). Subsequent transactions led to more NSF/OD fees being subtracted from the balance. (*See* SAC at ¶¶ 111-113 *with* MTD Ex. A, pg. 22). At the end of November 1, 2017, her account had a negative balance of $298.42. (SAC at ¶ 114). When Williams deposited $628.73 on November 2nd, the funds were credited to her negative balance, but the remainder was insufficient to cover the other debits she made throughout that day, leading to another NSF fee subtracted from the balance that day. (*Compare* SAC at ¶ 116 *with* MTD Ex. A, pgs. 22-23).[19]

Williams contends that BANA cannot withdraw NSF/OD fees "until newly-deposited funds exist to pay them." (Opp. at 13-14). Yet she makes this assertion by conflating language about "how" fees will be collected ("ordinarily from deposits") with "when" fees will be applied. *Id.* This completely ignores the express provisions of the contract detailing when fees are applied. *See* (MTD Ex. A at 22-23). Under Williams's reading, fees incurred days, weeks, or even months or years in the past could only be applied on the day that new funds are deposited into the account. But this is contrary both to the clear contract terms on how and when fees are processed and to common sense. *Id.*

"A contract must be given a reasonable construction which will uphold and enforce the instrument, if possible, rather than a construction which would ... lead to an absurd result." *Tudor v. American Emp. Ins. Co.*, 121 Ga.App. 240, 242, 173 S.E.2d 403 (1970). Here, Williams's interpretation would lead to an absurd result where a customer could avoid paying NSF/OD fees indefinitely so long as every deposit made is no more than that debits made that same day. *Kwok v.*

---

[19] Again, BANA starts each day with the beginning balance, adds in credits, and deducts debits and fees, including NSF/OD fees. The same process happens every day. Williams did not place a credit in her account until nine days after her first overdraft. (SAC at ¶¶ 109, 116).

*Delta Air Lines Inc.*, 578 F. App'x 898, 902 (11th Cir. 2014) (affirming dismissal of breach of contract claim alleging that mileage award should be based on actual path of flight rather than predetermined distance between airports). Because Williams's breach of contract allegations ignore the clear language in the Deposit Agreement and violate the rules of contract interpretation, her claim fails.

       2.    <u>Williams Cannot State an Independent Claim for Breach of Duty of Good Faith and Fair Dealing</u>.

In her Opposition, Williams argues that because Georgia law permits a breach of contract claim to be premised on the duty of good faith and fair dealing, that she can assert an independent cause of action despite clear authority to the contrary. *See* (Opp. at 15-16). However, under Georgia law, the implied covenant of good faith modifies and becomes part of the provisions of the contract itself; therefore, the covenant is not independent of the contract and does not support or create a separate cause of action. *See Stuart Enterprises Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 234, 555 S.E.2d 881, 884 (2001). The cases cited in Plaintiffs' Opposition do not dispute this result as the plaintiffs therein did not assert a separate claim for breach of the duty of good faith – it was just a basis for their breach of contract claim.[20] As a result, her separate cause of action must be dismissed.

       3.    <u>Williams's Conversion Claim Still Fails Because It Is Inadequately Pled</u>.

Notwithstanding her arguments to the contrary, Williams cannot transform her breach of contract claim into a conversion claim, nor can she plead a valid conversion claim unless she alleges that she demanded return of the property at issue and that BANA refused return of same. "A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage." *WESI,*

---

[20] *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1363 (N.D. Ga. 2008) (analyzing implied covenant within breach of contract claim*); Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 281 Ga. App. 450, 451, 636 S.E.2d 139, 140 (2006) (analyzing implied covenant as part of declaratory judgment request).

*LLC v. Compass Envtl., Inc.*, 509 F. Supp. 2d 1353, 1361 (N.D. Ga. 2007) (granting motion to dismiss conversion claim). Further, "when someone comes into lawful possession of personal property..., in the absence of a demand for its return and a refusal to return the personal property, there is no conversion." *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 358 (2001); *see also Spooner v. Lossiah*, 185 Ga.App. 876, 366 S.E.2d 236, 238 (1988) ("There is no evidence that either plaintiff made an unequivocal demand for delivery of the [disputed property]. We therefore conclude that there is no evidence that defendants' continued possession of the [disputed property] manifested a conversion.").

Thus, to allege a conversion claim, Williams must plead facts showing that she made a demand for return of the funds and that BANA refused. She did not do so. Based on inapposite case law, she attempts to avoid dismissal by arguing that BANA "unlawfully" took possession of her property and retained it. *See* (Opp. at 18). However, her argument is misplaced. The inquiry is not whether BANA ***possessed*** the funds unlawfully, but whether they were ***obtained*** lawfully. *See Williams v. National Auto Sales, Inc.*, 287 Ga. App. 283, 285-86, 651 S.E.2d 194, 196-97 (2007) ("What is meant by defendant coming *lawfully* into possession of the property is…where he obtains possession of the property by the *permission or consent of* the plaintiff.") (emphasis in original). Here, there is no dispute that BANA lawfully obtained the disputed funds – indeed, Williams voluntarily deposited them with BANA. *See* Doc. 19 at ¶ 116. Therefore, case law suggesting that demand is not required for unlawfully acquired property is inapplicable.

Moreover, Georgia courts specifically require a demand for return when addressing a bank's alleged conversion of unearned fees. *See, e.g., Bryant v. Carver State Bank*, 207 Ga. App. 659, 661, 428 S.E.2d 621, 623 (1993) (explaining that, in Georgia, for a plaintiff to be successful in a conversion action he must show that he has the right of possession of the converted assets and that he demanded the converted assets be returned). This requirement is evidenced in the very cases that Williams cites.

*See Decatur Auto Ctr. v. Wachovia Bank, N.A.*, 276 Ga. 817, 818, 583 S.E.2d 6, 7 (2003) ("Wachovia then refused to reimburse Decatur Auto for the $30,500 debited from its account."). *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1371 (N.D. Ga. 2008) ("Plaintiffs demanded that Wachovia credit the improper overdraft fee; and…Wachovia refused to do so."). Therefore, because Williams has failed to plead required elements, her conversion claim fails.

4. <u>The Alleged Conduct is Exempt from the Georgia Fair Business Practices Act</u>.

Williams argues that her claim for violation of the FPBA is viable because the exemption for regulated industries has a narrow application. *See* (Opp. at 23). However, this is directly contrary to holdings that the exemption applies broadly to industries subject to extensive regulatory regimes. *See, e.g., Sheppard v. Bank of America, N.A.*, 542 Fed. Appx. 789, 793 (11th Cir. 2013) (holding that FBPA does not apply to mortgage lending). There is little doubt that both BANA and the conduct alleged by Plaintiffs are highly regulated, including by the Federal Deposit Insurance Corporation (the "FDIC") 12 U.S.C. § 1811, *et seq.* FDIC-insured institutions with parent holding companies, such as BANA, are subject to the supervision of the Board of Governors of the Federal Reserve. 12 U.S.C. § 248. Further, pursuant to the Dodd-Frank Act of 2010, BANA and other banks became subject to regulation by the CFPB, which has rule making authority for a range of consumer financial protection laws (such as the Electronic Funds Transfer Act). 12 U.S.C. § 5481, *et seq.*

Indeed, these extensive federal regulations and oversight specifically cover the imposition of NSF/OD fees. *See, e.g.*, 12 C.F.R. § 205.17 (prohibiting the charging of overdraft fees for ATM/debit card transactions unless customer opts into overdraft program); 12 C.F.R. § 1005.17 (regulating, in part, the content and format of overdraft opt-in provisions in account agreements). These existing regulations, as well as the ability of the federal entities to enact additional regulations within their areas of expertise, clearly show that consumer banking, including charging service fees, is heavily regulated

and, thus, not subject to claims under the FBPA.

Furthermore, Williams is incorrect that *ante litem* notice is not required for allegations against BANA. (Opp. at 23, n.9). She argues that, because BANA is purportedly registered with the Secretary of State as a foreign profit corporation with a principal office and headquarters outside of the state, her compliance is excused. This is both factually and legally incorrect. First, BANA is a national banking association, and does not register with the Georgia Secretary of State. *Bank of Am., N.A. v. Sorrell*, 248 F. Supp. 2d 1196, 1198 (N.D. Ga. 2002) ("Bank of America, a national bank with branches in Georgia."). Second, the location of BANA's headquarters and principal place of business are not relevant inquiries. Rather, the statutory exemption states that "demand requirements of [O.C.G.A. § 10-1-399(b)] shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." BANA does not fit this category as it operates over 75 bank branches within the state and occupies space in the eponymous Bank of America Plaza in Atlanta. *See Sorrell* 248 F. Supp. 2d at 1198. Therefore, the *ante litem* notice is required, warranting dismissal of the FBPA claim.[21]

## CONCLUSION

For the reasons set forth herein and in BANA's MTD, Plaintiffs' Second Amended Complaint must be dismissed pursuant to Rule 12(b)(6).

---

[21] Lastly, and as stated at the outset of this Reply, Plaintiffs' NCUDTPA claim must be dismissed because North Carolina law does not apply to any of Plaintiffs' claims for the reasons stated above. *See* Section A, *supra*.

This the 9th day of October 2018.

McGUIREWOODS LLP


s/ Brian A. Kahn
Brian A. Kahn
North Carolina Bar No. 29291
Jasmine K. Gardner
North Carolina Bar No. 47853
201 N. Tryon Street, Suite 3000
Charlotte, North Carolina 28202
(704) 343-2000 (Telephone)
(704) 343-2300 (Facsimile)
bkahn@mcguirewoods.com
jgardner@mcguirewoods.com

Cynthia C. Guerin (admitted *pro hac vice*)
Texas Bar No. 03802100
2000 McKinney Avenue, Suite 1400
Dallas, Texas 75201
(469) 372-3906 (Telephone)
(214) 273-7485 (Facsimile)
cguerin@mcguirewoods.com

*Attorneys for Bank of America, N.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2018, I electronically filed the foregoing pleading, with

any and all attachments with the Clerk of Court using the CM/ECF system which will send

notification of such filing to the following:

David M. Wilkerson
dwilkerson@vwlawfirm.com
Larry McDevitt
lmcdevitt@vwlawfirm.com
The Van Winkle Law Firm
11 North Market Street
Asheville, NC 28801

James J. Pizzirusso (admitted *pro hac vice*)
jpizzirusso@hausfeld.com
HAUSFELD LLP
1700 K St., NW, Ste 650
Washington, DC 20006

Jeffrey Kaliel (admitted *pro hac vice*)
jkaliel@kalielpllc.com
Sophia Gold (admitted *pro hac vice*)
sgold@kalielpllc.com
Kaliel PLLC
1875 Connecticut Ave, NW, 10th Floor
Washington, DC 20009

*Attorneys for Plaintiff*

s/ Brian A. Kahn
Brian A. Kahn