UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-00157-RJC-DSC

| | | |
|---|---|---|
| LISA MORRIS, MICHAEL BUI, and TUMIKA WILLIAMS, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| BANK OF AMERICA, N.A., | ) ) | |
| Defendant. | ) ) ) ) ) | |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint ("the Motion"), (Doc. No. 22), and the parties' associated briefs and exhibits; the Memorandum and Recommendation ("M&R") of the United States Magistrate Judge, (Doc. No. 38), recommending that the Court grant Defendant's Motion in part and deny Defendant's Motion in part; Defendant's Partial Objection to the M&R, (Doc. No. 39); and Plaintiffs' Response in Opposition to Defendant's Partial Objection, (Doc. Nos. 40–41). The Motion is ripe for adjudication.

I.  BACKGROUND

Neither party has objected to the Magistrate Judge's statement of the factual and procedural background of this case. Therefore, the Court adopts the facts as set forth in the M&R.

II.  STANDARD OF REVIEW

A district court may assign dispositive pretrial matters, including motions to dismiss, to a magistrate judge for "proposed findings of fact and recommendations." 28 U.S.C. § 636(b)(1)(A) and (B). The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." Id. at § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

III.  DISCUSSION

Defendant partially objects to the M&R, asking the Court to reject the portion of the M&R recommending that the Court allow Plaintiffs' claims based on the Oklahoma, Georgia, and North Carolina consumer protection statutes to proceed based on choice of law concerns. Defendant makes two specific arguments: (1) the Oklahoma and Georgia consumer protection acts contain exemptions for alleged conduct in regulated industries, and therefore, no choice-of-law analysis is needed on these claims, and (2) Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act claim should be dismissed on choice of law grounds. The Court

2

agrees with Defendant's first argument but disagrees with its second. The Court addresses each in turn.

### A. The exemption provisions of the consumer protection laws of Oklahoma and Georgia apply to Defendant's alleged conduct.

Plaintiffs pled claims under North Carolina law, but also pled claims under the consumer protection statutes of the states in which they reside in the alternative. Defendant contends that the Court need not even engage in a choice-of-law inquiry regarding the consumer protection claims under Oklahoma and Georgia law because both statutes "exempt from coverage the subject matter of Plaintiffs' allegations—rules related to the application and collection of bank fees for overdraft protection." (Doc. No. 39 at 5). The Court agrees.

Regarding the claim arising under Oklahoma law, the Oklahoma Consumer Protection Act ("OCPA"), 15 Okla. Stat. § 751 et seq., exempts from coverage "[a]ctions or transactions regulated under laws administered by . . . regulatory bod[ies] or officer[s] acting under statutory authority of this state or the United States." Okla. Stat. tit. 15, § 754(2). Plaintiff contends that, for this exemption to apply, the specific conduct at issue must be regulated by state or federal law. Here, Plaintiff claims that Defendant engages in four distinct practices to increase fee revenue at the expense of its customers:

1. BANA charges multiple $35 insufficient funds fees ("NSF Fees") and $35 overdraft ("OD Fees") (collectively NSF and OD Fees are referred to herein as "Fees") on the same transactions when it repeatedly re-processes them, even

3

though the Bank's agreements authorize only one fee (and only one type of fee) per charge;

2. BANA assesses Fees on payments or attempted payments *to itself*, even when it knows such transaction attempts will be futile and its contracts do not authorize such fees;

3. BANA deducts Fees prematurely and from already-empty accounts, and prior to the time promised (after deposits) in its contractual agreements to ensure that even more Fees are assessed on accounts; and

4. BANA charges monthly savings account service fees ("MSAS Fees"), despite a contractual promise to waive to waive such fees for accountholders who make certain account transfers into their savings accounts.

(Doc. No. 19 ¶ 1; Doc. No. 26 at 7).

The Court finds Parrish v. Bank, 2016 WL 3906814, at *1 (W.D. Okla. July 14, 2016), instructive here. In Parrish, the plaintiff, who maintained banking accounts with defendant, brought a claim against her bank on behalf of herself and all other similarly situated, alleging that the bank had "deliberately sequence[d] its transaction processing to maximize the bank's collection of fees for overdraft service or non-sufficient funds, to the detriment of its customers." Parrish, 2016 WL 3906814, at *1. This is strikingly similar to the allegations in the case at hand. The plaintiff brought various claims against the bank, including a claim that the bank had violated the OCPA. At the motion-to-dismiss stage, the Western District of Oklahoma dismissed the OCPA claim, finding that exemption applied:

> The alleged activity at issue here is part of the business of banking, an activity that is heavily regulated by the Board of Governors of the Federal Reserve System, see 15 U.S.C. § 1693c (Electronic Fund Transfer Act); see also 12 C.F.R. § 205.7 (Regulation E), the FDIC, and

4

> state banking authorities. The statute's "regulated activity" exemption is therefore applicable and bars plaintiff's OCPA claim.

Id. at *3. Consistent with the Western District of Oklahoma's decision in Parrish, the Court sees no need to allow the OCPA claim to proceed through discovery (when conflict of law issues will be parsed) only to dispose of the claim later on at the summary-judgment stage because it finds that OCPA's exemption provision applies to Plaintiffs' OCPA claim. The Court can make this determination now as a matter of law. Accordingly, because the conduct at issue here—the assessment of banking fees—is governed by multiple regulatory bodies,[1] the Court dismisses the OCPA claim on exemption grounds.

Turning to Georgia's Fair Business Practices Act ("GFBPA"), it also includes an exemption provision: the GFBPA shall not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States." Ga. Code Ann. § 10-1-396(1). The Court of Appeals of Georgia has concluded that "[t]he

---

[1] These regulatory bodies include, among others, the Consumer Financial Protection Bureau, the Office of the Comptroller of the Currency, and the Federal Deposit Insurance Corporation. See 15 U.S.C § 1693 et seq. (explaining that the purpose of the Electronic Funds Transfer Act is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems."); see also 12 C.F.R. § 7.4002(a) ( "A national bank may charge its customers non-interest charges and fees, including deposit account service charges."); 12 C.F.R. § 205.17 (prohibiting the charging of overdraft fees for ATM/debit card transactions unless customer opts into overdraft program); 12 C.F.R. § 1005.17 (regulating, in part, the content and format of overdraft opt-in provisions in account agreements)

5

General Assembly intended that the Georgia FBPA have a restricted application only to the unregulated consumer marketplace and that [G]FBPA not apply in regulated areas of activity, because regulatory agencies provide protection or the ability to protect against the known evils in the area of the agency's expertise." Chancellor v. Gateway Lincoln-Mercury, Inc., 502 S.E.2d 799, 805 (Ga. Ct. App. 1998). The Northern District of Georgia has held that "[t]he [G]FBPA does not apply in extensively regulated areas of the marketplace such as consumer banking." Deotare v. Wells Fargo Bank, N.A., No. 1:17-CV-699-WSD, 2018 WL 1470897, at *9 (N.D. Ga. Mar. 26, 2018) (footnote omitted). This is consistent with other holdings.[2]

---

[2] See, e.g., Strickland v. Deutsche Bank Tr. Co. Americas, No. 5:18-CV-3 (CAR), 2018 WL 715408, at *6 (M.D. Ga. Feb. 5, 2018) ("The FBPA does not apply to transactions that occur in regulated areas of activity, such as loan lending and services." (footnote omitted)); Bitterfield v. PHH Mortg. Corp., No. 1:17-CV-1060-MHC, 2017 WL 6996373, at *3 (N.D. Ga. Oct. 26, 2017) ("Because the practice of making and servicing residential mortgages are heavily regulated by federal and state law, the FBPA does not cover loan servicing or modification practices."); Turner v. Wells Fargo Dealer Servs., Inc., No. 1:17-CV-0125, 2017 WL 8220605, at *8 (N.D. Ga. Oct. 23, 2017), report and recommendation adopted, No. 1:17-CV-1257-TCB, 2017 WL 8222344 (N.D. Ga. Nov. 13, 2017) ("Here, the alleged conduct pertains to assignments of installment agreements from auto dealers, which are subject to regulation via the Truth in Lending Act . . . and Regulation Z . . . . Accordingly, the FBPA does not apply."); Kareem v. J.P. Morgan Chase Bank, N.A., No. 2:14-CV-252, 2015 WL 4351750, at *3 (S.D. Ohio July 15, 2015), aff'd sub nom. Kareem v. JPMorgan Chase Bank, N.A., No. 15-4387, 2016 WL 9405838 (6th Cir. Nov. 21, 2016) ("Georgia courts have held that the GFBPA does not apply to claims based on wrongful foreclosure–an area of the law that is heavily regulated by other state and federal agencies and statutes.").

"[W]here the action or transaction at issue is authorized or regulated by a state or federal regulatory agency, the [G]FBPA does not apply." Stewart v. Suntrust Mortgage, Inc., 770 S.E.2d 892, 897–98 (Ga. Ct. App. 2015). Here, because the conduct Plaintiffs complain of—the assessment of banking fees—is regulated by multiple regulatory agencies, the GFBPA exemption provision applies. Therefore, Plaintiffs' GFBPA claim must be dismissed as well.

> C. **The M&R correctly concluded that Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act claim should be allowed to proceed.**

Defendant also objects to allowing Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA") claim to proceed. Specifically, it argues that no choice-of-law inquiry is necessary here because Plaintiffs have no connection to North Carolina and contend that, therefore, the NCUDTPA cannot apply. But, as Plaintiffs pled, North Carolina is the "nerve center" of Defendant's business activities—"the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to BofA Account fees." (Doc. No. 19 ¶ 158). Accordingly, the policies, decisions, and business practices that Plaintiffs complain of could have occurred in North Carolina. Therefore, it is plausible that, if Plaintiffs' allegations are true, Plaintiffs could have suffered injury in North Carolina. This question, which hangs on choice-of-law analysis, is more appropriately addressed after discovery. Therefore, the Court agrees with the M&R that "[a] choice of law inquiry

may be very fact intensive and more appropriately undertaken after the record is developed."³ (Doc. No. 38 at 6).

The only case Defendant cites in support of its objection on this ground, Clemons v. E.S.A. Mgmt., 2018 WL 1594721 (W.D.N.C. Apr. 2, 2018), is inapposite. In Clemons, the plaintiff brought a claim against Extended Stay America ("ESA") arising out of the plaintiff's stay at one of ESA's Virginia properties. 2018 WL 1594721, at *1. During his stay, the plaintiff alleged that an intruder broke into his room and stole several items. Id. Among other claims, the plaintiff filed a NCUDTPA claim against ESA in the Western District of North Carolina. Id. at *2. After ESA moved to dismiss the NCUDTPA claim, the Court dismissed the claim, holding that "because [the] [p]laintiff fail[ed] to allege that he was injured in North Carolina, North Carolina's UDTPA does not govern this claim." Id. at *4.

---

³ Terry v. Swift Transportation, No. 1:16-cv-256, 2017 WL 1013074, at *7 (M.D.N.C. March 14, 2017) (citing Graboff v. The Collern Firm, Civ. Action No. 10–1710, 2010 WL 4456923, at *8 (E.D. Pa. Nov. 8, 2010) (explaining that, "[d]ue to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings," and that, "[h]ere, a choice of law analysis is premature because the record lacks necessary facts for the [c]ourt to conduct the fact-intensive, context-specific analysis required"); see also Beritelli v. Wells Fargo Bank, N.A., No. 1:11-CV-000179-MR, 2013 WL 5460179, at *13 (W.D.N.C. Sept. 30, 2013) ("[T]he Court cannot make a determination of the choice of law issue at this time . . . The parties may revisit the choice of law issue at the summary judgment stage, at which time the Court will be in a better position to determine which state law is applicable."); Clean Earth of Md., Inc. v. Total Safety, Inc., No. 2:10-cv-119, 2011 WL 1627995, at *4 (N.D. W. Va. Apr. 28, 2011) ("Importantly, a court is typically in a better position to decide a choice of law issue after the parties have developed the factual evidence through the process of discovery." (collecting cases)).

Defendant contends that the same result is warranted here. However, Defendant omits an important aspect of this case. The Court noted that it was "not disputed that the operative events that form the basis of [the] [p]laintiff's claims occurred in Virginia" and that it was "also not disputed that the relevant witnesses and physical evidence [we]re located in Virginia." Id. at *7. Therefore, the instant case is distinguishable because the facts are more nebulous, the place of injury is disputed, and discovery is needed to iron out these issues. Accordingly, the Court determines that it would be premature to dismiss Plaintiffs' NCUDTPA claim now.

IV. CONCLUSION

Regarding the aspects of the M&R to which no party objected, the Court has nevertheless conducted a full, thorough, and independent review of the M&R and record and concludes that those findings and conclusions of the M&R are correct and in accordance with law.

**IT IS THERFORE ORDERED THAT:**

1. The Magistrate Judge's M&R, (Doc. No. 38), be **ADOPTED IN PART** and **DENIED IN PART**. Specifically, the Court adopts the M&R's findings and conclusions regarding Plaintiffs' claims for breach of contract; breach of implied covenant of good faith and fair dealing; conversion; unjust enrichment; the NCUDTPA; and Plaintiff Bui's California consumer protection act claim. The Court declines to adopt, however, the M&R's findings and conclusions

9

regarding Plaintiffs' consumer protection claims under Oklahoma law (OCPA) and Georgia law (GFBPA);

2. Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, (Doc. No. 22), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion is **GRANTED** as to Plaintiffs' claims for conversion (Count 3); unjust enrichment (Count 4); breach of implied covenant of good faith and fair dealing (Count 2); violation of the OCPA (Count 6); and violation of the GFBPA (Count 9). The Motion is **DENIED** as to Plaintiffs' breach of contract claim (Count 1) and NCUDTPA claim (Count 5); and Plaintiff Bui's California consumer protection act claim (Counts 7, 8); and

3. The remaining claims may proceed through discovery.

Signed: March 29, 2019

Robert J. Conrad, Jr.
United States District Judge