**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| LISA MORRIS, MICHAEL BUI, TUMIKA WILLIAMS, ALBERT EDGE and KRISTEN VALPERGA on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      vs.<br><br>BANK OF AMERICA, N.A.,<br><br>      Defendant. | CASE NO. 3:18-CV-157-RJC-DSC |

**JOINT DECLARATION IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES**

We, Larry S. McDevitt, David M. Wilkerson, Jeffrey D. Kaliel, and James J. Pizzirusso, declare and state that:

We are counsel of record for the named Plaintiffs and the conditionally certified Classes in the above captioned matter against Bank of America, N.A., (Defendant or "BANA").

We submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration and could and would testify competently to them if called upon to do so.

**Background and Procedural History**

1. This case is a multi-state putative class action focused on Defendant charging insufficient funds and overdraft fees ("NSF/OD Fees") in connection with the following: 1) reinitiated automated clearinghouse ("ACH") transactions ("Retry Transaction Fee Claims"); 2) charging NSF/OD Fees in connection with certain BANA-to-BANA account transactions

("Intrabank Transaction Fee Claims"); and 3) assessing monthly maintenance fees on savings accounts, which Plaintiffs contend should have been waived ("MMF Claims") (collectively, the "Action").

2. Following entry of the Court's Order on the Defendant's Motion to Dismiss, and after the Court's entry of the Scheduling Order, the Parties began an extensive discovery effort that lasted nearly two years. Plaintiffs served three sets of interrogatories and Requests for Production of Documents, as well as numerous 30(b)(6) deposition notices and subpoenas of third parties. BANA served discovery on Plaintiffs, as well, including interrogatories and Requests for Production and Requests for Admissions.

3. Soon after the Court's ruling substantially upholding the Memorandum and Recommendation by the Magistrate Judge, the parties immediately began meeting and conferring on various discovery issues, such as custodial ESI searches and the production of transactional data.

4. The Parties then exchanged tens of thousands of pages of documents and relevant information. BANA produced, and Plaintiffs' Counsel and their experts reviewed, tens of thousands of internal documents related to BANA's NSF/OD practices such as bank contractual agreements, marketing and internal studies on NSF/OD fees, customer complaints related to its fees, and transactional database excerpts showing how much money it made from the disputed fees at issue, among others.

5. Plaintiffs also took the depositions of several of BANA's corporate representatives. BANA took, and Plaintiffs defended, the depositions of two Class Representatives, as well.[1]

---

[1] Additional Class Representative depositions were scheduled for March and April 2020 but canceled due to Covid-19.

6. Plaintiffs also served subpoenas on five non-party banks, as well as the National Automated Clearing House Association ("NACHA"). BANA served non-party subpoenas on various third-party merchants.

7. With respect to transactional data produced by BANA, it was necessary for Plaintiffs to engage the services of a well-regarded expert, Arthur Olson, to evaluate the data for purposes of ascertaining class members and for estimate damages at issue in this case. Mr. Olson analyzed millions of account transactions that occurred during the class period.

8. Further, in preparation for their motion for class certification, Plaintiffs engaged an expert to opine on the issues of consumer perception of the challenged disclosures and to conduct a survey.

9. While discovery was ongoing, the Parties participated in a formal mediation with Judge Layn Phillips (Ret.), as well as several post-mediation telephone conferences. After Plaintiffs' expert analyzed millions of transaction entries provided from BANA's business records in order to estimate damages at issue in the case, the Parties first mediated in person on August 26, 2019. The mediation did not result in a settlement, and discovery continued in earnest.

10. On September 8, 2020, the Parties then attended a second mediation with Judge Phillips (virtually). The second mediation also did not result in a settlement, but the parties narrowed their differences. With the assistance of Judge Phillips, the Parties continued to have settlement discussions following the mediation.

11. Judge Phillips made a mediator's proposal as to the common fund, which the Parties ultimately accepted.

12. The Parties then spent several months finalizing an Agreement and ultimately reached agreement on all material terms of a settlement. The Parties filed a notice of settlement

with the Court on December 28, 2020 and proceeded with confirmatory discovery and also worked diligently with the Settlement Administrator to prepare notice to the Settlement Class.

13. As part of the Settlement process, BANA provided data to Plaintiffs showing the amount of fees it took in under the practices in dispute in this litigation. Under the Settlement, BANA will provide a settlement fund of $75 million, which alone represents approximately 17-40% of the estimated classwide damages, depending on how damages are determined.

14. BANA has agreed to stop the practice at the heart of this litigation – the imposition of multiple NSF Fees or OD Fees on ACH entries labeled as "RETRY" payments for at least five years. Over the five-year term of the Settlement, according to BANA's data, this equates to approximately $318 million in additional relief for the class and current and future account holders.

15. The monetary value of the Settlement is a $75 million common fund combined with an estimated $318 million in business practice changes, for a total monetary value of $393,000,000.00, between 90%-210% of the damages the Class could have recovered.

16. Since the Court granted preliminary approval, Class Counsel has been fielding numerous phone calls and e-mails from absent class members who are interested in learning more about the settlement. Class Counsel anticipates spending a significant amount of time in the coming weeks responding to class members, preparing and filing for final approval, responding to objections (if any), preparing and attending the final approval hearing, as well as post-settlement work and administration.

## Class Counsel Experience and Expertise

17. Counsel for both sides have significant experience in consumer class-action litigation involving deceptive practices, including those involving bank fees. Class Counsel are

highly experienced in consumer class action litigation, as demonstrated by their firm resumes, and have brought that significant experience to bear in litigating and settling this case.

18.     Class Counsel collectively has decades of experience litigating consumer class actions (including those against financial institutions) and have litigated and settled dozens of class actions involving deceptive practices, as well as overdraft fees, non-sufficient fund fees, and other types of allegedly wrongful conduct by financial institutions.

19.     Liaison Counsel Larry S. McDevitt is a graduate of the University of North Carolina Law School and a member in good standing of the North Carolina Bar.  He is the Senior Principal in the Van Winkle Law Firm with nearly 53 years of trial experience in Federal Courts in civil and criminal matters.  He has extensive experience as lead and coordinating counsel in class action litigation.  He is admitted to practice in numerous Federal District and Appellate Courts, including the United States Supreme Court and is a permanent member of the Judicial Conference for the United States Fourth Circuit.  He is a fellow of both the American College of Trial Lawyers and the International Society of Barristers, a former Mayor of Asheville, past President of the North Carolina Bar Association, past President of the UNC Law School Alumni Association, and served 11 years as North Carolina's sole State Delegate to the ABA House of Delegates.  He is the past national Chair of the ABA Standing Committee on Pro Bono and Public Service and was also a member of the ABA Board of Governors.   Mr. McDevitt's experience includes serving as liaison counsel in the Middle District of North Carolina in *In Re Cotton Yarn Antitrust Litigation* (Docket No. 1:04MD1622); in the Western District of North Carolina in *In Re Polyester Staple Antitrust Litigation* (W.D.N.C. MDL Docket No. 3:03cv1516); *Piazza's Carpet v. Hickory Springs, et. al.* (W.D.N.C. No. 5:10-cv-11); and co-chair of the Class Certification Committee and a member of the trial team in the *In Re Blue*

*Cross Antitrust,* (N.D.A.L) No. 2:13-cv-20000*, a case originally filed in this District by Van Winkle and two other firms and transferred to Alabama by the panel for Multi-District Litigation. He is class counsel in *Peters v. Aetna* (W.D.N.C. 1:15-cv-109) currently pending in this District and was co-lead counsel in *Gaston v. Lexis Nexis Risk Solutions*, *et al*. (W.D.N.C. 5:16-cv-9). Mr. McDevitt, along with co-lead counsel, David M. Wilkerson, has been personally involved in all aspects of his Firm's work in this litigation that resulted in the Settlement. The Firm devoted its best efforts to achieving the settlement now before the Court that we believe is in the best interests of the class. The firm's resume is found at Dkt. No. 86-3 at p. 9-10 .

20.     Co-lead Counsel David Wilkerson is a graduate of the University of South Carolina Law School and member of good standing of the North Carolina Bar and the South Carolina Bar. He is a Senior Principal at The Van Winkle Law Firm with over 20 years of experience. He serves a currently serves as class counsel in numerous class actions around the nation and practices in the area of complex business litigation. He served for six years on the council for the Antitrust and Complex Litigation Section of the North Carolina Bar Association and served on the North Carolina Business Court Rules Committee. In 2021, he served as co-lead counsel in *Gaston v. Lexis Nexis Risk Solutions*, *et al*. (W.D.N.C. 5:16-cv-9), as well as class counsel *In Re Blue Cross Antitrust,* (N.D.A.L. No. 2:13-cv-20000), and interim liaison counsel in *In Re Sanderson and Koch Broiler Chicken Grower Litigation*, No. 7:10-cv-00031 (E.D.N.C). He practices in courts around the nation, serving as lead counsel in 2021 in cases in the Ninth Circuit Court of Appeals, the Federal Circuit Court of Appeals (appeal from United State Patent and Trademark Appeal Board Post Grant Review), the United States Patent and Trademark Appeal Board in Washington, D.C., and as counsel in class actions in South Carolina, Oklahoma, and Virginia.

21.     Co-lead Counsel Jeffrey D. Kaliel is a graduate of the Yale Law School and a member in good standing of the District of Columbia Bar and the State Bar of California.  He has substantial experience with consumer class actions in both state and federal court. His firm, KalielGold PLLC ("KG"), has extensive class action experience, and has been appointed as class counsel in numerous class actions, including, but not limited to *Robinson v. First Hawaiian Bank*, No.17-1-0167-01 GWBC (1st Cir. Haw.); *Liggio v. Apple Federal Credit Union*, No. 18-cv-01059 (E.D. Va.); *Brooks et al. v. Canvas Credit Union*, No. 2019CV30516 (Dist. Ct. for Denver Cnty., Colo.); *Roberts v. Capital One*, No. 1:16-cv-04841 (S.D.N.Y.); *Walters v. Target Corporation*, No. 3:16-CV-01678-L-MDD (S.D. Cal.); *Lambert v Navy Federal Credit Union*, No. 1:19-cv-00103 (E.D. Va.); *Perks v Activehouse d/b/a Earnin*, No. 5:19-cv-05543 (N.D. Cal.); *White v Members 1st Credit Union*, No. 1:19-cv-00556 (M.D. Pa.), and numerous other actions in state and federal courts across the country. Mr. Kaliel has been personally involved in all aspects of the Firm's work in this litigation that resulted in the Settlement. KG has vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement process.  The firm's resume is found at Dkt. No. 86-3 at p. 12-17 .

22.     Co-lead Counsel James J. Pizzirusso is a graduate of the George Washington University School of Law and a member in good standing of the District of Columbia and Virginia Bars. He has substantial experience with consumer and privacy class actions in federal court. His firm is co-lead counsel in this litigation. His firm has extensive class action experience. Mr. Pizzirusso has led Hausfeld's Consumer Protection and Cybersecurity/Privacy practice groups since the firm's inception and courts have personally appointed him to leadership positions in dozens of successful class actions including: *Bhatia v. 3M Company*, No. 0:16-cv-1304 (D. Minn.); *In re Equifax, Inc. Customer Data Security Breach Litig.*, 1:17-md-2800-TWT

(N.D. Ga.); *In re The Home Depot, Inc. Customer Data Security Breach Litig.*, No. 14-md-02583 (N.D. Ga.); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-md-2633-SI (D. Or.); *First Choice Federal Credit Union v. Wendy's*, Case No. 2:16-cv-00506 (W.D. Pa.); *In re Warner Music Group Corp. Digital Downloads Litig.*, No. CV-12-0559-RS (N.D. Cal.); *James v.UMG Recordings, Inc.*, No. 11-CV-1613-SI (N.D. Cal.); *Wolph v. Acer America Corp.*, No. CV-09- 01314-VRW (N.D. Cal.); *Radosti v. Envision EMI, LLC*, No. 1:09-CV-00887-CCK (D.D.C.); *In re Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litig.*, C.A. 08-1982 (D. Md.); *Brown v. Transurban (USA), Inc.*, No. 1:150CV000494-JCC-MSN (E.D. Va); and *In re Honey Transshipping Litig.*, 1:13-cv-02905 (N.D. Ill.); *In re Sony PS3 "Other OS" Litig.*, No. CV-10-1811-RS (N.D. Cal.). In 2021, *Chambers* identified James Pizzirusso as one of 8 ranked lawyers in the United States for Nationwide Privacy & Data Security Litigation. Notably, he was the only Plaintiffs' lawyer to achieve that distinction.  In addition, in September 2020, *The National Law Journal* named Mr. Pizzirusso a "Washington, DC Trailblazer" – again one of the only Plaintiffs' lawyers to receive that recognition – after they previously recognized him in 2017 as a "Cybersecurity Trailblazer." Since 2020, Lawdragon has also anointed him one of the country's top 500 Leading Plaintiff Consumer Lawyers.  Mr. Pizzirusso been personally involved in all aspects of his firm's work in this litigation that resulted in the Settlement. Hausfeld has vigorously represented the interests of the Settlement Class Members throughout the course of the litigation and settlement process. The firm's resume is found at Dkt. No. 86-3 at p. 19-25.

## THE REQUESTED FEE IS REASONABLE

23.     Class Counsel has not been paid for their extensive efforts or reimbursed for litigation costs and expenses incurred in this case.

24.     While Plaintiffs contend that the Court award attorneys' fees based on the "percentage of the fund" method, as endorsed by Professor Fitzpatrick, rather than the "lodestar" method, Plaintiffs provide the following lodestar analysis in the event the Court elects to use the lodestar method either as a cross-check or the sole basis for Plaintiffs' attorneys' fee award, if any.

25.     The total lodestar of all of the law firms that worked on this case (including estimated time for completion of certain tasks shown below) is **$3,702,681.80**, broken down by firm as follows:

> a. KalielGold PLLC – $1,526,755.00
>
> b. Hausfeld LLP – $800,129.00
>
> c. Van Winkle Law Firm – $989,760.00
>
> d. Tycko & Zavareei LLP – $240,309.30
>
> e. Kopelowitz Ostrow – $145,728.50

26.     The attorneys' fee request of one-third of the common fund results in a lodestar multiplier of **6.75**.

27.     The total costs and expenses incurred by all of the law firms in this Action are **$226,863.13**, broken down by firm as follows:

> a. KalielGold PLLC – $151,162.32
>
> b. Hausfeld LLP – $34,719.41
>
> c. Van Winkle Law Firm – $30,693.29
>
> d. Tycko & Zavareei LLP – $7,144.82
>
> e. Kopelowitz Ostrow – $3,143.29

28.     The retention agreements with the Plaintiffs in this case are contingent fee agreements. No payment of attorneys' fees would occur in this case but for a fee award in an

individual or class settlement. Consistent with standard-contingent fee agreements in individual cases, were the case to settle on an individual basis, Class Counsel agreed to set its fees at 33.33% of any recovery. Class Counsel agreed to undertake this case with no guarantee they would receive any compensation for their work, which occupied significant resources at Class Counsel firms even before this case was filed almost four years ago. Public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that might be paid nothing at all for their work. This practice encourages attorneys to assume this risk and allows plaintiffs who would otherwise not be able to hire an attorney to obtain competent counsel.

## KALIELGOLD'S LODESTAR

29.     KG has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation.

30.     The current hourly rates for the attorneys and support staff at KG who worked on this case are as follows:

b.     Jeff Kaliel (Partner) - $800.00

c.     Sophia Gold (Partner) - $600.00

d.     Brittany Casola (Associate) - $475.00

e.     Neva Garcia (Paralegal) - $200.00

31.     These rates are similar to the rates approved by courts in this Circuit. *See, e.g.*, *In re Neustar*, 2015 WL 8484438, at *10 (approving rates of $260 - $310 for paralegal services, $420 - $700 for associates, and $800 - $975 for partners); *Phillips v. Triad Guar. Inc.*, No. 1:09CV71, 2016 WL 2636289, at *8 (M.D.N.C. May 9, 2016) (finding that partner billing rates of $640 - $880 per hour and associate billing rates of $375 - $550 per hour were "within the range of reasonableness" especially given that "the market for class action attorneys is nationwide and

populated by very experienced attorneys with excellent credentials"); *Seaman v. Duke Univ.,* No. 1:15-CV-462, 2019 WL 4674758, at *5 (M.D.N.C. Sept. 25, 2019) (Hourly rate of between $590 and $900 for partner, $395 and $510 for the associates, and $280-$390 for paralegals was reasonable).

32.     KG's time, broken out by categories, is set out below. Class Counsel will submit detailed time records for each attorney should the Court so require.

| Task | Jeff Kaliel | Sophia Gold | Brittany Casola | Neva Garcia |
|------|-------------|-------------|-----------------|-------------|
| **Presuit investigation, Factual Development, Client Meetings and Correspondence** <br><br> *Performed first of its kind industrywide investigation regarding NACHA Rules, ACH item processing, check processing fee practices across the industry, researched potential causes of action; researched potentially applicable federal laws and regulations; researched North Carolina state law; researched BANA's corporate structure, disclosures and compared to other financial institution disclosures; interviewed clients; reviewed many sets of monthly bank statements; prepared preservation letter.* | 255.2 | 34 | | |
| **Strategy, Case Analysis, Class Counsel Conferences** <br><br> *Strategy meetings internally at the firm and with co-counsel throughout the case* | 86.5 | 51 | | |
| **Pleadings** <br><br> *Researched, drafted, and edited complaint; researched the viability of N.C. causes of action; researched* | 84.7 | 32.5 | | |

| Task | Jeff Kaliel | Sophia Gold | Brittany Casola | Neva Garcia |
|---|---|---|---|---|
| *choice of law issues; reviewed answer and researched viability of affirmative defenses; researched, drafted and edited amended complaint and second amended complaint.* | | | | |
| **Motion Practice**<br><br>*Researched and drafted opposition to motion to dismiss complaint; researched and drafted response to R&R; researching issues for forthcoming class certification motion.* | 128.2 | 72 | 7 | |
| **Discovery**<br><br>*Promulgated discovery requests; negotiated protective order; negotiated ESI Protocol and ESI search terms; reviewed documents; worked with an expert regarding data; analyzed class data; drafted 30(b)(6) notices; took several individual and Rule 30(b)(6) depositions; drafted and served subpoenas and motion to compel compliance with subpoenas; responded to discovery requests issued to Plaintiffs; defended Plaintiff depositions.* | 466.3 | 375.5 | 2 | 53 |
| **Case Management and Other Court Mandated Tasks**<br><br>*Conducted case management conference; prepared joint motions to continue deadlines and to consolidate cases; attended discovery conferences; engage and direct consumer perception and survey expert.* | 20.5 | 8 | | 1.5 |
| **Settlement**<br><br>*Engaged in settlement discussions with opposing counsel; coordinated* | 220 | 51 | | |

| Task | Jeff Kaliel | Sophia Gold | Brittany Casola | Neva Garcia |
|---|---|---|---|---|
| *settlement strategy with co-counsel; prepared mediation brief and supplemental mediation brief; attended two full-day mediations; negotiated and finalized settlement agreement and all associated documentation.* | | | | |
| **Preliminary Approval** <br><br> *Drafted motion for preliminary approval of class action settlement and accompanying declarations.* | 29.4 | 26 | 5.6 | |
| **Class Notice** <br><br> *Received and reviewed detailed bids from notice administrators; worked with notice administrator to develop notice plan and find cost-efficiencies; drafted notices; oversaw notice process; responded to class member inquiries* | 15.1 | 7 | | |
| **Final Approval, Settlement Execution, Distribution of Common Fund (Estimated)** <br><br> *Prepare motion for final approval and all supporting declarations, respond to objections, prepare for and attend final approval hearing, work with settlement administrator to ensure proper distribution of funds to class members, prepare any post-final approval motions.* | 50 | 50 | | |
| **Totals** | 1,355.9 | 707 | 14.6 | 54.5 |

33.     The total hours billed by the attorneys and support staff at KG for this case are

**2,132.** Applying the above hourly rates, the total lodestar is **$1,526,755.00.**

34.     This lodestar includes hours of estimated time that will be spent from the date of

this declaration forward, which Class Counsel expects will include tasks related to preparing the

motion for final approval and all supporting declarations, responding to objections if any, attending to class member inquiries, preparing for and attending the final approval hearing, working with the settlement administrator, ensuring proper distribution of funds to class members, and any post-final approval motions.

35.     Additionally, KG's expenses in prosecuting this case are set forth below.  KG is not seeking reimbursement for internal overhead expenses that ordinarily reimbursed to Class Counsel in class actions.  Cost receipts will be submitted to the Court should it so require.

| Category | Expenses |
|---|---|
| Mediation | $16,361.76 |
| Depositions/Document Hosting/Transcripts | $8,462.08 |
| Expert Fees | $117,249.11 |
| Travel | $9,089.37 |
| **Total** | **$151,162.32** |

## **HAUSFELD'S LODESTAR**

36.     Hausfeld has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation.

37.     The current hourly rates for the attorneys and support staff at Hausfeld who worked on this case are as follows:

b.     James Pizzirusso (Partner) - $840.00

c.     Ian Engdahl (Associate) - $470.00

d.     Steven Nathan (Senior Counsel) - $650.00

e.     Nathaniel Giddings (Partner) - $660.00

f.     Jeannine Kenney (Partner) - $680.00

g.     Krishna Patel (Paralegal) - $300.00

38.     Our billing rates have been reviewed and approved in dozens of class actions in

13

federal courts including the following examples:

In September 2019, the District Court of Minnesota approved Hausfeld's hourly rates ranging from $610-$770 for partners, $500 for associates, and $260-270 for professional staff. *See Bhatia v. 3M Co.*, Case No. 0:16-cv-01304-DWF-DTS (D. Minn. Sept. 11, 2019) (ECF No. 115). In August 2019, the District Court for the Northern District of Illinois approved Hausfeld' s hourly rates ranging from $530 to $995 per hour for partners, $750 for of counsel, $390 to $450 for associates, $370 for staff attorney and $310-$340 for professional staff. *See In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Litig.*, No. 1:13-cv-09116, 2019 WL 3776955, at *18 (N.D. Ill. Aug. 12, 2019). In November 2018, the District Court for the Southern District of New York approved Hausfeld' s hourly rates ranging from $630 to $1,375 per hour for partners, $350 to $500 for associates, $350 to $600 for staff attorneys and $75 to $280 for professional staff. *See In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 1:13-cv-07789-LGS, 2018 WL 5839691 (Nov. 8, 2018) (same); In October 2018, the District Court for the Southern District of New York approved Hausfeld' s 2018 hourly rates ranging from $540 to $1,375 per hour for partners, $370 to $500 per hour for associates, $480 to $600 for staff attorneys, and $270 to $280 for professional staff. *See In re LIBOR-based Fin. Instruments Antitrust Litig.*, 1:11-md-02262-NRB (S.D.N.Y. Oct. 25, 2018), ECF No. 2745 (same); In August 2018 the District Court for the Southern District of New York approved Hausfeld' s 2017 hourly rates ranging from $540 to $1,100 per hour for partners, $370 to $440 per hour for associates, $470 to $500 for staff attorneys, and $270 to $280 for professional staff. *See In re LIBOR-based Fin. Instruments Antitrust Litig.*, 1:11-md-02262-NRB, 2018 WL 3863445 (S.D.N.Y. Aug. 14, 2018) (same); In March 2016 the District Court for the Northern District of California approved Hausfeld' s hourly rates ranging from $325 to $985 per hour for partners, $200 to $430 per hour for associates, $500 to $895 for of counsel, $250 to $330 for law clerks, and $230 to $320 for professional staff. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, (N.D. Cal. 2015), objections sustained in part and overruled in part, No. 4:09-cv-03329-CW, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016), aff'd, 739 F. App'x 890 (9th Cir. 2018) (same).

39.    Hausfeld's time, broken out by categories, is set out below. Class Counsel will submit detailed time records for each attorney should the Court so require.

| Task | James Pizzirusso | Ian Engdahl | Steven Nathan | Nathaniel Giddings | Jeannine Kenney | Krishna Patel |
|---|---|---|---|---|---|---|
| **Presuit investigation, Factual Development, Client Meetings and Correspondence** <br><br> *Performed first of its kind industrywide investigation regarding NACHA Rules,* | 5.5 | 14.3 | | | | |

| Task | James Pizzirusso | Ian Engdahl | Steven Nathan | Nathaniel Giddings | Jeannine Kenney | Krishna Patel |
|---|---|---|---|---|---|---|
| *ACH item processing, check processing fee practices across the industry, researched potential causes of action; researched potentially applicable federal laws and regulations; researched North Carolina state law; researched BANA's corporate structure, disclosures and compared to other financial institution disclosures; interviewed clients; reviewed many sets of monthly bank statements; prepared preservation letter.* | | | | | | |
| **Strategy, Case Analysis, Class Counsel Conferences**<br><br>*Strategy meetings internally at the firm and with co-counsel throughout the case. Conducted case management conference; prepared joint motions to continue deadlines and to consolidate cases; attended discovery conferences; engage and direct consumer perception and survey expert* | 109.6 | 34.2 | 4.2 | 2.5 | | |
| **Pleadings**<br><br>*Researched, drafted, and edited complaint; researched the viability of N.C. causes of action; researched choice of law issues; reviewed answer and researched viability of affirmative defenses; researched, drafted and edited amended complaint and second amended complaint.* | | | | | | |

15

| Task | James Pizzirusso | Ian Engdahl | Steven Nathan | Nathaniel Giddings | Jeannine Kenney | Krishna Patel |
|---|---|---|---|---|---|---|
| **Motion Practice**<br><br>*Researched and drafted opposition to motion to dismiss complaint; researched and drafted response to R&R; researching issues for forthcoming class certification motion.* | 82.6 | 163 | | | 2.8 | 7 |
| **Discovery**<br><br>*Promulgated discovery requests; negotiated protective order; negotiated ESI Protocol and ESI search terms; reviewed documents; worked with an expert regarding data; analyzed class data; drafted 30(b)(6) notices; took several individual and Rule 30(b)(6) depositions; drafted and served subpoenas and motion to compel compliance with subpoenas; responded to discovery requests issued to Plaintiffs; defended Plaintiff depositions.* | 228 | 132.5 | 0.5 | | 0.5 | 2 |
| **Settlement**<br><br>*Engaged in settlement discussions with opposing counsel; coordinated settlement strategy with co-counsel; prepared mediation brief and supplemental mediation brief; attended two full-day mediations; negotiated and finalized settlement agreement and all associated documentation including work on* | 298.7 | 43.2 | | | | |

| Task | James Pizzirusso | Ian Engdahl | Steven Nathan | Nathaniel Giddings | Jeannine Kenney | Krishna Patel |
|---|---|---|---|---|---|---|
| *preliminary approval and class notice* | | | | | | |
| **Totals** | 724.40 | 387.2 | 4.7 | 2.5 | 3.3 | 9.0 |

40. The total hours billed by the attorneys and support staff at Hausfeld for this case are **1,130.7.** Applying the above hourly rates, the total lodestar is **$800,129.00.**

41. This lodestar does not include estimated time for preparing the motion for final approval and all supporting declarations, responding to objections if any, attending to class member inquiries, preparing for and attending the final approval hearing, working with the settlement administrator, ensuring proper distribution of funds to class members, and any post-final approval motions. It is estimated that Hausfeld will spend approximately 100 hours on these tasks for an additional lodestar of **$74,750**.

42. Additionally, Hausfeld's expenses in prosecuting this case are set forth below. Cost receipts will be submitted to the Court should it likewise so require.

| Category | Expenses |
|---|---|
| Travel | $13,171.51 |
| Legal Research | $3,283.52 |
| Postage/Printing/Telephone/ Courier | $378.56 |
| Mediation | $15,487.77 |
| Document Hosting/Discovery | $2,398.05 |
| **Total** | **$34,719.41** |

### VAN WINKLE'S LODESTAR

43. Van Winkle has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation.

44. Van Winkle has computed hourly rates as follows:

a. Larry McDevitt (Partner) - $835.00

b. David Wilkerson (Partner) - $750.00

c.      Martin Moore (Associate) - $350.00

d.      Nevin Wisnoski (Associate) - $325.00

e.      Sandy Holder (Paralegal) - $175.00

These rates are lower than those derived from the Adjusted Laffey Matrix, which measure prevailing market rates based on seniority in the D.C. area and has been cited in by the Fourth Circuit as an appropriate starting point for fees, especially in class actions of a national scope as this case.  Mr. McDevitt's and Mr. Wilkerson's hourly rates under the Adjusted Laffey Matrix are $919.00 based upon their experience.  *See Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 592 F.3d 219 (4th Cir. 2009); *In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *10 n.6 (E.D. Va. Dec. 8, 2015); *Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 64 (D.C. Cir. 2015).

45.      Van Winkle's time, broken out by categories, is set out below. Class Counsel will submit detailed time records for each attorney should the Court so require.

| Task | Larry McDevitt | David Wilkerson | Sandy Holder | Martin Moore | Nevin Wisnoski |
|---|---|---|---|---|---|
| **Presuit investigation, Factual Development, Client Meetings and Correspondence**<br><br>*Performed first of its kind industrywide investigation regarding NACHA Rules, ACH item processing, check processing fee practices across the industry, researched potential causes of action; researched potentially applicable federal laws and regulations; researched North Carolina state law; researched BANA's corporate* | 3 | 13.6 | | | |

| Task | Larry McDevitt | David Wilkerson | Sandy Holder | Martin Moore | Nevin Wisnoski |
|---|---|---|---|---|---|
| *structure, disclosures and compared to other financial institution disclosures; interviewed clients; reviewed many sets of monthly bank statements; prepared preservation letter.* | | | | | |
| **Strategy, Case Analysis, Class Counsel Conferences**<br><br>*Strategy meetings internally at the firm and with co-counsel throughout the case* | 107 | 90.8 | | | |
| **Pleadings**<br><br>*Researched, drafted, and edited complaint; researched the viability of N.C. causes of action; researched choice of law issues; reviewed answer and researched viability of affirmative defenses; researched, drafted and edited amended complaint and second amended complaint.* | 57 | 76 | 7.9 | | |
| **Motion Practice**<br><br>*Researched and drafted opposition to motion to dismiss complaint; researched and drafted response to R&R; researching issues for forthcoming class certification motion.* | 34 | 96.2 | 18.5 | | |
| **Discovery**<br><br>*Promulgated discovery requests; negotiated protective order; negotiated ESI Protocol and ESI search terms; reviewed documents; worked with an expert regarding data; analyzed class data; drafted 30(b)(6) notices; took several individual* | 56 | 305.7 | 13.4 | | |

| Task | Larry McDevitt | David Wilkerson | Sandy Holder | Martin Moore | Nevin Wisnoski |
|---|---|---|---|---|---|
| *and Rule 30(b)(6) depositions; drafted and served subpoenas and motion to compel compliance with subpoenas; responded to discovery requests issued to Plaintiffs; defended Plaintiff depositions.* | | | | | |
| **Case Management and Other Court Mandated Tasks**<br><br>*Conducted case management conference; prepared joint motions to continue deadlines and to consolidate cases; attended discovery conferences; engage and direct consumer perception and survey expert.* | 25 | 37.4 | | | |
| **Settlement**<br><br>*Engaged in settlement discussions with opposing counsel; coordinated settlement strategy with co-counsel; prepared mediation brief and supplemental mediation brief; attended two full-day mediations; negotiated and finalized settlement agreement and all associated documentation.* | 58 | 125.3 | | .8 | .8 |
| **Preliminary Approval**<br><br>*Drafted motion for preliminary approval of class action settlement and accompanying declarations.* | 16 | 15.3 | | | |
| **Class Notice**<br><br>*Received and reviewed detailed bids from notice administrators; worked with notice administrator to develop notice plan and find cost-efficiencies; drafted notices; oversaw notice* | 7 | 30.7 | | | |

| Task | Larry McDevitt | David Wilkerson | Sandy Holder | Martin Moore | Nevin Wisnoski |
|---|---|---|---|---|---|
| *process; responded to class member inquiries* | | | | | |
| **Final Approval, Settlement Execution, Distribution of Common Fund (Estimated)** <br><br> *Prepare motion for final approval and all supporting declarations, respond to objections, prepare for and attend final approval hearing, work with settlement administrator to ensure proper distribution of funds to class members, prepare any post-final approval motions.* | 70 | 70 | | | |
| **Totals** | 403 | 861 | 39.8 | .8 | .8 |

46.     The total hours billed by the attorneys and support staff at Van Winkle for this case are **1305.4**.  Applying the above hourly rates, the total lodestar is **$989,760.00**.

47.     This lodestar includes 140 hours of estimated time that will be spent from the date of this declaration forward, which I expect will include tasks related to preparing the motion for final approval and all supporting declarations, responding to objections if any, attending to class member inquiries, preparing for and attending the final approval hearing, working with the settlement administrator, ensuring proper distribution of funds to class members, and any post-final approval motions. It is estimated that Van Winkle will spend approximately 140 hours on these tasks.

48.     Additionally, Van Winkle's expenses in prosecuting this case are set forth below. Cost receipts will be submitted to the Court should it likewise so require.

| Category | Expenses |
|---|---|
| Travel | $8,028.88 |
| Filing Fees | $2,133.00 |
| Postage/Printing/Telephone/ Courier | $414.76 |

| | |
|---|---|
| Mediation | $14,970.32 |
| Depositions/Document Hosting/Discovery | $3096.33 |
| Expert Fees | $2050.00 |
| **Total** | **$30,693.29** |

## KOPELOWITZ OSTROW'S LODESTAR

49. Kopelowitz Ostrow has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation.

50. The current hourly rates for the attorneys and support staff at Kopelowitz Ostrow who worked on this case are as follows:

a. Jeff Ostrow (Managing Partner) - $919.00

b. Jonathan Streisfeld (Partner) - $919.00

c. Seth Haimovitch (Partner) - $764.00

d. Daniel Tropin (Partner) - $676.00

f. Todd Becker (Paralegal) - $208.00

51. These rates are derived from the Adjusted Laffey Matrix. The Fourth Circuit Court of Appeals has indicated that this matrix of rates is a useful starting point. *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 592 F.3d 219 (4th Cir. 2009).

52. Kopelowitz Ostrow's time, broken out by categories, is set out below. Class Counsel will submit detailed time records for each attorney should the Court so require.

| Task | Jeff Ostrow | Jonathan Streisfeld | Daniel Tropin | Seth Haimovitch | Todd Becker |
|---|---|---|---|---|---|
| **Presuit investigation, Factual Development**<br>*Researched potential causes of action; researched potentially applicable federal laws and regulations; researched BANA's corporate structure, disclosures and compared to other financial institution disclosures; reviewed many sets of monthly bank statements* | | | | | |
| **Strategy, Case Analysis, Class Counsel Conferences**<br>*Strategy meetings internally at the firm and with co-counsel throughout the case* | 1.25 | 3.25 | .75 | | |
| **Pleadings**<br>*Researched, drafted, and edited version of complaint; researched the viability of causes of action; researched choice of law issues; reviewed answer and evaluate viability of affirmative defenses* | 1.50 | 13.25 | | | |
| **Motion Practice**<br>*Researched and drafted opposition to motion to dismiss in Valperga; draft and review motions pertaining to pretrial matters* | .25 | 6.0 | 32.25 | | 1.0 |
| **Discovery**<br>*Promulgated discovery requests; draft protective order; draft ESI Protocol and ESI search terms; reviewed documents; worked with an expert regarding class and individual Plaintiff data; analyzed class data; drafted 30(b)(6) notice* | 4.0 | 16.75 | 3.75 | 34.75 | |

| Task | Jeff Ostrow | Jonathan Streisfeld | Daniel Tropin | Seth Haimovitch | Todd Becker |
|---|---|---|---|---|---|
| **Case Management and Other Court Mandated Tasks** *Conducted case management conference; prepared joint motions to continue deadlines and to consolidate cases; attended discovery conferences.* | .75 | 5.5 | | | |
| **Settlement** *Engaged in settlement discussions with opposing counsel; coordinated settlement strategy with co-counsel; prepared mediation brief and supplemental mediation brief; attended mediation; work with co-counsel to prepare settlement agreement and all associated documentation.* | 15.5 | 15.25 | | .5 | |
| **Preliminary Approval** *Work with co-counsel to draft motion for preliminary approval of class action settlement and accompanying declarations.* | 2.0 | 1.25 | | | |
| | | | | | |
| **Final Approval, Settlement Execution, Distribution of Common Fund (Estimated)** *Aid in preparation of motion for final approval and all supporting declarations; work with lead counsel regarding distribution of funds to class members.* | 5.50 | 9.50 | | | 2.25 |
| **Totals** | **30.75** | **70.75** | **36.75** | **35.25** | **3.25** |

53.     The total hours billed by the attorneys and support staff at Kopelowitz Ostrow for this case are **176.75**. Applying the above hourly rates, the total lodestar is **$145,728.50**.

54.     This lodestar includes hours of estimated time that will be spent from the date of this declaration forward, which will include time spent supporting lead counsel's efforts to obtain final approval and work with the settlement administrator to implement the terms of the Settlement

once approved.

55.     Additionally, Kopelowitz Ostrow's expenses in prosecuting this case are set forth below.  Cost receipts will be submitted to the Court should it likewise so require.

| Category | Expenses |
|---|---|
| Court Fees | $620.00 |
| Travel | $2,523.29 |
| **Total** | **$3,143.29** |

### TYCKO & ZAVAEREEI LLP'S LODESTAR

56.     Tycko & Zavareei has devoted the time and resources of its attorneys and staff to ensure the vigorous prosecution of the claims brought on behalf of the putative class in this litigation.

57.     The current hourly rates for the attorneys and support staff at Tycko & Zavareei who worked on this case are as follows:

a.     Andrea Gold (Partner) - $764.00

b.     Andrew Silver (Attorney) - $676.00

g.     Anna Haac (Partner) - $764.00

h.     David Lawler (Of Counsel) - $919.00

i.     Hassan Zavareei (Partner) – $919.00

j.     Katherine Aizpun (Attorney) - $676.00

k.     Rebecca Azhdan (Fellow) - $468.00

l.     Various (Paralegals) - $208.00

58.     These rates are derived from the Adjusted Laffey Matrix, which is published by the D.C. Circuit Court, and which measure prevailing market rates based on seniority in the D.C. area. Courts have acknowledged that the "[t]he Laffey Matrix is used as a guideline for reasonable attorneys' fees in the Washington/Baltimore area." *In re Neustar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 8484438, at *10 n.6 (E.D. Va. Dec. 8, 2015) (internal quotation and citation

omitted); *see also Salazar ex rel. Salazar v. D.C.*, 809 F.3d 58, 64 (D.C. Cir. 2015) (confirming that the use of the Adjusted Laffey Matrix for attorneys in Washington, D.C. is appropriate).

59.     Tycko & Zavareei's time, broken out by categories, is set out below. Class Counsel will submit detailed time records for each attorney should the Court so require.

| Task | All Counsel/Staff |
|------|-------------------|
| **Presuit investigation, Factual Development, Client Meetings and Correspondence**<br><br>*Performed first of its kind industrywide investigation regarding NACHA Rules, ACH item processing, check processing fee practices across the industry, researched potential causes of action; researched potentially applicable federal laws and regulations; researched North Carolina state law; researched BANA's corporate structure, disclosures and compared to other financial institution disclosures; interviewed clients; reviewed many sets of monthly bank statements; prepared preservation letter.* | 83.3 |
| **Strategy, Case Analysis, Class Counsel Conferences**<br><br>*Strategy meetings internally at the firm and with co-counsel throughout the case* | 44.1 |
| **Pleadings**<br><br>*Researched, drafted, and edited complaint; researched the viability of N.C. causes of action; researched choice of law issues; reviewed answer* | 23.0 |

| Task | All Counsel/Staff |
|------|-------------------|
| *and researched viability of affirmative defenses; researched, drafted and edited amended complaint and second amended complaint.* | |
| **Motion Practice** | 37.1 |
| *Researched and drafted opposition to motion to dismiss complaint; researched and drafted response to R&R; researching issues for forthcoming class certification motion.* | |
| **Discovery** | 63 |
| *Promulgated discovery requests; negotiated protective order; negotiated ESI Protocol and ESI search terms; reviewed documents; worked with an expert regarding data; analyzed class data; drafted 30(b)(6) notices; took several individual and Rule 30(b)(6) depositions; drafted and served subpoenas and motion to compel compliance with subpoenas; responded to discovery requests issued to Plaintiffs; defended Plaintiff depositions.* | |
| **Case Management and Other Court Mandated Tasks** | 73.7 |
| *Conducted case management conference; prepared joint motions to continue deadlines and to consolidate cases; attended discovery conferences; engage and direct consumer perception and survey expert.* | |
| **Settlement** | 1.0 |
| *Engaged in settlement discussions with opposing* | |

| Task | All Counsel/Staff |
|---|---|
| *counsel; coordinated settlement strategy with co-counsel; prepared mediation brief and supplemental mediation brief; attended two full-day mediations; negotiated and finalized settlement agreement and all associated documentation.* | |
| **Preliminary Approval**<br><br>*Drafted motion for preliminary approval of class action settlement and accompanying declarations.* | 2.4 |
| **Class Notice**<br><br>*Received and reviewed detailed bids from notice administrators; worked with notice administrator to develop notice plan and find cost-efficiencies; drafted notices; oversaw notice process; responded to class member inquiries* | .2 |
| **Final Approval, Settlement Execution, Distribution of Common Fund (Estimated)**<br><br>*Prepare motion for final approval and all supporting declarations, respond to objections, prepare for and attend final approval hearing, work with settlement administrator to ensure proper distribution of funds to class members, prepare any post-final approval motions.* | |
| **Totals** | 327.8 |

60.     The total hours billed by the attorneys and support staff at Tycko & Zavareei for this case are **327.8.**  Applying the above hourly rates, the total lodestar is **$240,309.30**.

61.     Additionally, Tycko & Zavareei's expenses in prosecuting this case are set forth below.  Cost receipts will be submitted to the Court should it likewise so require.

| Category | Expenses |
|---|---|
| Travel | $5,251.70 |
| Legal Research | $189.95 |
| Postage/Printing/Telephone/ Courier | $236.12 |
| Court fees | $1,467.05 |
| **Total** | **$7,144.82** |

### THE SERVICE AWARDS ARE JUSTIFIED

62.     The Class Representatives took risks by offering their services when the viability of their claims was uncertain. Their claims, which publicly disclosed their personal financial difficulties, created notoriety regardless of their success on the claims. Had they failed, they created risk to their reputations. They should be commended for taking action to protect the interests of millions of Bank of America accountholders who were affected by the Bank's fee policies, on top of their own individual claims.

63.     It cannot be disputed that the Plaintiffs' efforts have created extraordinary financial benefits for the Class, compensating them for past harm and protecting them from future harm. Plaintiffs expended hours in advancing this litigation against a large and powerful adversary. Each conferred with Class Counsel on a number of occasions. Specifically, Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the Action and reach the Settlement, including: (1) submitting to interviews with Class Counsel; (2) locating and forwarding relevant documents and information; and (3) participating in conferences with Class Counsel. Additionally, Plaintiffs Morris, Bui, Williams, and Edge responded to written discovery requests in this case, and Plaintiff Morris and Plaintiff Bui were deposed.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 12th day of October, 2021 at Washington, D.C.

_s/ Jeffrey D. Kaliel_

Dated this 12th day of October, 2021 at Asheville, North Carolina.

_s/ Larry S. McDevitt_

Dated this 12th day of October, 2021 at Asheville, North Carolina

_s/ David M. Wilkerson_

Dated this 12th day of October, 2021 at Falls Church, VA

_s/ James J. Pizzirusso_