# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### CASE NO. 3:18-CV-157-RJC-DSC

LISA MORRIS, MICHAEL BUI, TUMIKA
WILLIAMS, ALBERT EDGE and KRISTEN
VALPERGA on behalf of themselves and all
others similarly situated,

      *Plaintiffs*,

      v.

BANK OF AMERICA, N.A.,

      *Defendant*.

## BRIEF IN SUPPORT OF UNOPPOSED MOTION
## FOR FINAL APPROVAL OF SETTLEMENT

## INTRODUCTION

As noted in their opening Motion for Preliminary Approval, Plaintiffs Lisa Morris, Michael Bui, Tumika Williams, Albert Edge, and Kristen Valperga ("Plaintiffs"), on behalf of themselves and proposed a class of current and former Bank of America, N.A. ("BANA") accountholders, reached a Settlement in this matter providing for a $75 million common fund, as well as $318 million in business practice changes related to BANA's assessment of overdraft ("OD") and insufficient funds ("NSF") fees. The settlement is excellent by any standard, but even more so here as it was achieved in an entirely novel and difficult case. Indeed, at the time this case was filed, it was the first case of its kind asserting these types of theories. Given the level of risk and uncertainty in bringing these untested claims, the settlement is even more remarkable.

Pursuant to the Court's order granting preliminary approval, the Parties sent out notice to members of the Class to gauge their reaction to the proposed Settlement, as well as every state Attorney General in the Country. The results were overwhelmingly positive. Not a single member of the approximately 5 million person class objected to the Settlement in this case or to Counsel's fee request. Instead, numerous class members contacted Class Counsel expressing support for the proposed compromise and inquiring as to when they could expect to receive their benefits. Joint Declaration of Larry McDevitt, David Wilkerson, James Pizzirusso and Jeff Kaliel ("Joint Dec.") ¶¶ 2-6. Moreover, no state Attorney General raised concerns with the Settlement proposal. It is unprecedented in a settlement of this size to have such unanimous class and regulatory support.

The preliminarily approved Settlement provides an outstanding recovery for Class Members and, as discussed herein, also satisfies all Fourth Circuit criteria for final settlement approval. Accordingly, Plaintiffs respectfully request that this Court enter an Order as follows: (1) granting Final Approval to the Settlement; (2) finally certifying the proposed Settlement Class for

settlement purposes, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) granting Plaintiffs' pending Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Dkt. No. 89); and (4) entering Final Judgment. A proposed order is attached hereto.

**FACTUAL BACKGROUND**

## I. The Litigation

The history of this litigation is fully set forth in Plaintiffs' Motion for Preliminary Approval. *See* Brief in Supp. of Motion for Prelim. Approval, *Morris v. Bank of Am., N.A.*, No. 18-CV-157 (W.D.N.C. July 29, 2021), ECF 86-2. For the purposes of efficiency, Plaintiffs incorporate by reference the Factual Background section contained in that Brief. The Court granted the Plaintiffs' Motion for Preliminary Approval of the Settlement on July 29, 2021. *See* Order Granting Preliminary Approval of Settlement, *Morris v. Bank of Am., N.A.*, No. 18-CV-157 (W.D.N.C. July 29, 2021), ECF 88 ("Prelim. Approval Order"). The Court, *inter alia*, (1) preliminarily approved the Settlement as fair, reasonable, and adequate, (2) conditionally certified the three Settlement Classes, (3) appointed Class Counsel, (4) approved the Settlement Class Notice, and (5) scheduled a Final Approval Hearing. *Id.*

## II. The Settlement

Under the Settlement Agreement, BANA has agreed to (1) make a cash payment into a Settlement Fund of $75 million; (2) cease assessing certain NSF or OD Fees at issue in the Action for a period of at least five years (a practice change valued at a minimum at $318 million); and (3) improve its NSF and OD Fee disclosures. Settlement ¶¶ 1.26, 1.38, 2. More specifically, BANA agreed to cease assessing NSF or OD Fees on automated clearinghouse entries labeled by the merchant as a "RETRY PYMT" for a period of at least five (5) years beginning on either February

28, 2022 or 180 calendar days from Final Approval of the Settlement, whichever is later. *Id.* ¶ 1.26. Moreover, BANA agreed to improve its account disclosures and explanations related to circumstances in which accountholders will incur Intrabank Transaction Fees and to the Fee Accrual process. *Id.* ¶ 2.3.

The $75 million Settlement Fund, the most significant of its kind in any action asserting the same theories of liability, will be used to pay Settlement Class members, the costs of notice and administration, any attorneys' fees and expenses that the Court may approve, and any Service Awards to the Class Representatives.

The Settlement Fund will be distributed to Settlement Class Members according to the distribution plan set out in the Settlement Agreement. *Id.* ¶ 6.6, 7. Importantly, Settlement Class Members do not need to submit a claim form in order to receive payment. Current BANA account holders who are members of the class will receive automatic *pro rata* distributions straight to their accounts. Class members who are former BANA account holders will receive a check in the mail. The precise calculation and implementation of allocations of the Settlement Fund will be done by the claims administrator in conjunction with and using data provided by BANA and overseen by Plaintiffs' Counsel and their expert.

In addition, no settlement funds will revert to Defendant. *Id.* ¶ 7.6. Rather, after 210 calendar days from the Effective Date, any excess funds remaining in the Settlement Fund shall, if economically feasible, be secondarily distributed to the Settlement Class Members who successfully cashed checks or were granted automatic disbursements. If the distribution of remaining funds is economically unfeasible, or if additional funds remain after a second distribution, Class Counsel shall petition the Court to distribute any remaining funds to an appropriate *cy pres* recipient. *Id.* ¶ 6.7.

## A.     The Settlement Class

The proposed Settlement Classes are defined as the following:

**Retry Transaction Class**: All holders of BANA consumer checking and/or savings accounts who, during the Class Period, paid and were not refunded a Retry Transaction Fee;

**Intrabank Transaction Class**: All holders of BANA consumer checking and/or savings accounts who, during the Class Period, paid and were not refunded one or more Intrabank Transaction Fees; and

**Fee Accrual Class**: All holders of BANA consumer checking and/or savings accounts who, during the Class Period, paid and were not refunded an OD and/or an NSF Fee on a consumer checking and/or savings account transaction that would not have been assessed if BANA had delayed the posting of previously assessed NSF/OD fees until the posting of a deposit that was sufficient to cover those fees, all outstanding debit transactions and any additional debit transactions made that day.

*Id.* ¶ 3.1.

## B.     The Class Period

The class period is July 1, 2014 through July 29, 2021 (the date on which the Court entered an order granting preliminary approval to the settlement). *Id.* ¶ 1.9. In exchange for the consideration described above, the Settlement Class shall release BANA from any claims that were or could have been alleged in this action, with the exception of the claims related to assessing monthly maintenance fees on savings accounts ("MMF Claims"), which are not being released and are not a part of this Class settlement. *Id.* ¶¶ 1.29, 13.

## C.     The Release

The Release is narrowly tailored. As of the Effective Date of the Settlement, Plaintiffs and each Settlement Class Member who does not opt out agree to release any claims "arising out of or relating in any way to the allegations made in the Action . . . ." *Id.* ¶¶ 1.29, 13.

### D. The Notice Program

Following the Court's preliminary approval of the Settlement and appointment of Epiq as the Settlement Administrator (*see* Prelim. Approval Order ¶ 6), Epiq sent Email Notice to 2,004,659 Class Members who were current account holders and who had agreed to receive account statements electronically. Supplemental Declaration of Rachel McCown ("McCown Decl.") ¶¶ 8-11. Epiq received notice that 38,925 of these emails were undeliverable. *Id.* ¶ 12. Epiq also sent initial Postcard Notices to 2,805,038 Class Members who were former account holders or current account holders who had not agreed to receive statements electronically. *Id.* ¶¶ 14-17. Epiq received 65,550 returned notices from USPS with forwarding information and promptly re-mailed Notice to the forwarding addresses provided by USPS. *Id.* ¶ 18. Epiq made a reasonable effort to locate correct addresses for the 350,133 Postcard Notices returned without forwarding information by performing skip trace searches through a third-party lookup service. *Id.* ¶ 19. Following these efforts to obtain updated addresses, a second mailing of Postcard Notices was sent to 227,131 addresses. *Id.* ¶ 19. As of December 7, 2021, Epiq has mailed and/or emailed Notice to 4,833,234 Class Members, with Notice to 242,534 unique Class Members currently known to be undeliverable, which is a 94.9% deliverable rate to the Class. *Id.* ¶ 20. In addition to the Postcard and Email Notices sent directly to Class Members, Epiq maintained a Settlement Website with information about the Settlement and case-related documents. *Id.* ¶¶ 21-22. Epiq also established a toll-free interactive Voice Response Unit to provide information and accommodate inquiries from Class Members. *Id.* ¶ 23. Class Counsel also actively responded to inquiries from potential Class Members, responding to numerous inquiries received via email and telephone. Joint Decl. ¶ 2-4.

The Notices included, among other information, a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from, or "opt-out" of, the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which Settlement Class Members may access the Settlement Agreement and other related documents and information. McCown Decl., Exs. 2-4.

### E. Opt-Outs and Objections

The Notices informed Settlement Class Members of their right to opt out or object to the Settlement. *Id.* The Opt-Out Period ended on November 11, 2021, 105 days after the Court issued the Preliminary Approval Order. Prelim. Approval Order ¶¶ 10, 25. The deadline for the Opt-Out Period was specified in each of the Notices. McCown Decl., Exs. 2-4. The Notices also informed Settlement Class Members of their right to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses, and/or Service Awards. *Id.* The postmark deadline for objections was November 11, 2021, 105 days after the Court issued the Preliminary Approval Order. Prelim. Approval Order ¶¶ 10, 25. Following Notice to the Classes, the Settlement Administrator and Class Counsel received 38 timely requests for exclusion and zero timely objections. McCown Decl. ¶¶ 25-26.

### F. Attorneys' Fees, Costs, and Expenses, and Service Awards

On October 12, 2021, Class Counsel filed a Motion requesting approval of attorneys' fees, costs, and Class Representative service awards. *See* Memo. in Supp. of Pls.' Mot. for Attorneys' Fees, *Morris v. Bank of Am., N.A.*, No. 18-CV-157 (W.D.N.C. Oct. 12, 2021), ECF 89-1. Class Counsel have moved for approval of attorneys' fees of one-third of the common fund (in the amount of $25 million), costs of $226,863.13, and Class Representative service awards totaling

$31,000. *Id.* at 1. BANA has not opposed this Motion in any respect, and no Class Member or state Attorney General has filed an Objection or challenge to this aspect of the settlement. McCown Decl. ¶ 26.

## LEGAL STANDARD

Under Rule 23, a settlement must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has enumerated several factors that may bear on the fairness of the settlement and the adequacy of the consideration to the Classes. *See In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). The factors for assessing fairness include "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *Id.* at 159. The factors for assessing adequacy include "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Id.*

The 2018 amendments to Rule 23(e) also formalize a list of core considerations for settlement approval such as: (1) whether class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats Settlement Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The Fourth Circuit has held that the *Jiffy Lube* standards "almost completely overlap with the new Rule 23(e)(2) factors, rendering the analysis the same." *See Herrera v. Charlotte School of Law, LLC*, 818 F. App'x 165,

176 n.4 (4th Cir. 2020) (citing *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 474 n.8 (4th Cir. 2020)).

**ARGUMENT**

**I.    The Court Should Grant Final Approval to the Settlement.**

The Settlement Agreement preliminarily approved by this Court provides substantial cash compensation to Settlement Class Members along with significant practice changes and disclosure improvements to protect Settlement Class Members from incurring Retry Payment Fees for at least five years. In total, the Parties estimate the value of the Settlement to be the combined value of a $75,000,000 Settlement Fund, as well as business practice changes that will result in approximately $318,000,000 in savings to Settlement Class Members who are current accountholders over the next five years. This Settlement was the result of lengthy, intense, arm's-length negotiations by experienced counsel for both the Plaintiffs and BANA and represents an outstanding result for the Class. The Settlement was also reached after years of litigation by knowledgeable counsel during which time the parties litigated a Motion to Dismiss and engaged in substantive discovery, including numerous depositions. As such, the settlement is reasonable and fits comfortably within the range warranting approval.

**A.    The Settlement Is Fair.**

Each of the Fourth Circuit's relevant fairness factors weighs in favor of granting final approval to the Settlement here. *See In re Jiffy Lube Secs. Litig.*, 927 F.2d at 158–59.

*First*, the proposed settlement was reached after nearly three years of active, hard-fought litigation of an entirely novel case. Following the filing of Plaintiff Lisa Morris's initial Complaint in March 2018, the Plaintiffs added additional claims and named plaintiffs over the course of more than a year. These claims were tested and pared back by BANA's Motion to Dismiss, which was

thoroughly briefed and litigated by both sides and duly considered by both Magistrate Judge Cayer and this Court.

*Second*, the Settlement follows hard-fought and extensive discovery by both sides. The Parties have exchanged and reviewed tens of thousands of pages of documents, including documents from BANA, Plaintiffs, and subpoenaed third parties. Plaintiffs have deposed numerous BANA employees, and BANA has deposed several class representatives. The Parties have also served numerous sets of formal written discovery in the form of interrogatories, requests for production of documents, and requests for admission. Importantly, no mediation or settlement discussions took place until after Plaintiffs' expert had obtained and analyzed BANA's business records in order to determine the potential range of damages at issue in this case. This extensive discovery has given both sides "additional insight to evaluate the merits" of the case and has "laid the groundwork for the arm's-length negotiations that resulted in the settlement." *Gaston*, 2021 WL 244807, at *6.

*Third*, the circumstances of the settlement negotiations demonstrate that the Settlement was the result of a fair, arm's length process that was often contentious. The Parties first engaged in a formal mediation with retired Judge Layn Phillips in August 2019 but were unable to reach an agreement and the litigation continued in earnest. More than a year later—and following extensive additional litigation and discovery—the Parties attended a second virtual mediation with Judge Phillips. This second mediation likewise failed to result in a settlement although the Parties narrowed the gaps between their respective positions. After several months of additional litigation, the Parties finally accepted a settlement proposal advanced by Judge Phillips. The Parties engaged in additional confirmatory discovery as part of the settlement process.

*Finally*, counsel for both sides have significant experience in consumer class-action litigation involving bank-fee practices. Class Counsel is highly experienced in consumer class action litigation, as demonstrated by their firm resumes, and have brought that significant experience to bear in litigating and settling this case. *See* Dkt. 89-2, Joint Decl. ¶¶17-22, Exs. A-C. *See also* Fed. R. Civ. P. 23(e)(2)(A). Class Counsel collectively have decades of experience litigating consumer class actions against financial institutions and have litigated and settled dozens of class actions involving overdraft fees, non-sufficient fund fees, and other types of wrongful fee cases. *Id.* Counsel "may be evaluated by their affiliation with well-regarded law firms with strong experience in the relative field," and by any measure, Class Counsel satisfies this prong. *See In re Neustar, Inc. Securities Litig.*, No. 1:14cv885, 2015 WL 5674798, at *11 (E.D. Va. Sept. 23, 2015) (quoting *In re Am. Capital S'holder Derivative Litig.*, No. 11-2424-PJM, 2013 WL 3322294, at *4 (D. Md. June 28, 2013)). Based on their experience, Class Counsel endorse the Settlement as fair and adequate. Joint Decl. ¶ 11. Counsel's "endorse[ment of] the settlement as fair and adequate under the circumstances . . . should be afforded due consideration in determining whether a class settlement is fair and adequate." *Gaston*, 2021 WL 244807, at *6.

**B.     The Relief Provided to the Class Under the Settlement is Adequate.**

The substantial relief provided by the Settlement also favors approval. Under the Settlement, BANA has agreed to become one of the first major American banks to stop its "retry NSF Fee" practice, and that agreement will save current and future accountholder Settlement Class Members over $318,000,000 over the next five years in OD and NSF Fees that otherwise would have been assessed. When the value of the prospective relief is considered, the Settlement amounts to 90%-210% of the most probable class-wide damages. Joint Decl. ¶ 9. In short, the settlement benefits are unprecedented.

In addition to the Practice Changes, BANA will also provide a settlement fund of $75 million, which alone represents a significant portion of the estimated classwide damages should Plaintiffs have prevailed on every issue at class certification and trial. Joint Decl. ¶ 7. Assuming Plaintiffs prevailed at trial on liability (which BANA would have vigorously contested), Plaintiffs would have argued for a refund of every allegedly improperly assessed fee incurred by the Classes, and the $75 million recovery represents approximately 17% of that potential damages figure. BANA would have undoubtedly argued that Settlement Class Members were (or should have been) on notice of the challenged fee practices after incurring their first fee. Using Defendant's damages model, the $75 million recovery represents approximately 40% of damages. Moreover, Defendants refunded some fees and had other defenses that would have likely discounted damages even further or might have prevailed altogether. Thus, if the Settlement is approved, Settlement Class Members will recover a significant portion of their most potential damages, without further risks attendant to litigation.

Courts also assess the adequacy of relief provided under a settlement based on various factors including: (1) the reaction of the class to the settlement, (2) the costs, risks, and delay of trial and appeal, (3) the effectiveness of the proposed method of distributing relief to the class, (4) the terms of the proposed award of attorney's fees, and (5) the existence of other agreements reached by the Parties outside the settlement. *See, e.g.*, Fed. R. Civ. P. 23(e)(2)(C); *Jiffy Lube*, 927 F.2d at 159. Each factor is met here.

### 1.    *The reaction of the Classes to the Settlement*

The reaction of the class to the settlement "is perhaps the most significant factor to be weighed in considering its adequacy." *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989). Here, the Class Members' clear embrace of the Settlement "weighs significantly

in favor of the settlement's adequacy." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 257 (E.D. Va. 2009). Following notice to the Classes, the Settlement Administrator and Class Counsel received 38 timely requests for exclusion and zero timely (or untimely) objections.  McCown Decl. ¶¶ 25-26.

The complete lack of objections to the Settlement and the small number of opt-outs relative to the size of the Classes "testifies to the value of the settlement in the eyes of the class[es]," and supports final approval. *Deloach v. Philip Morris Companies*, No. 00-CV-01235, 2003 WL 23094907, at *10 (M.D.N.C. Dec. 19, 2003). The lack of objections, in particular, "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Myers v. Loomis Armored US, LLC*, No. 18-CV-00532, 2020 WL 1815902, at *3 (W.D.N.C. Apr. 9, 2020) (quoting *West v. Cont'l Auto., Inc*., No. 16-CV-00502, 2018 WL 1146642, at *6 (W.D.N.C. Feb. 5, 2018)). As such, the "utter absence of objections from the class . . . militates strongly in favor of approval of the settlement." *Sala*, 721 F. Supp. at 83.

### 2.    *Costs, risks, and delay of trial and appeal*

Plaintiffs' remaining claims are strong but maintaining these claims through trial and appeal would entail significant risk, uncertainty, and costs for both sides. Throughout this case, BANA has zealously disputed all of the Plaintiffs' claims and that North Carolina law could apply to all members of the class. Following BANA's Motion to Dismiss, Plaintiffs' original claims were pared back by both the Magistrate Judge and the Court. While the Court permitted the Plaintiffs' North Carolina Unfair and Deceptive Trade Practices Act (NCUDTPA) claims to proceed past BANA's Motion to Dismiss, the Court explicitly declined to resolve the choice-of-law issues at the heart of the Plaintiffs' NCUDTPA claims until after discovery was complete. Op. at 7-8 (ECF No. 42). Additionally, BANA would have undoubtedly challenged class certification and moved

for summary judgment. Both of these motions could have required appellate resolution. Where, as here, both sides have notched significant litigation victories and defeats over the course of several years of litigation, the resolution of potential appeals by both sides "would require protracted adversarial litigation and appeals at substantial risk and expense to both Parties." *Gaston*, 2021 WL 244807, at *6. This strong likelihood of "substantial future costs favors approving the proposed settlement." *Id.*

In addition, while this case was in litigation, a Court in the Eastern District of Virginia dismissed a very similar case asserting similar theories of liability in the Eastern District of Virginia. *See Lambert v. Navy Federal Credit Union*, No. 19-cv-103-LO, 2019 WL 3843064 (E.D. Va. Aug. 14, 2019). While the decision was an outlier (and the case settled while on appeal), Plaintiffs faced the prospect of a Fourth Circuit Court of Appeals decision that could have undercut their claims.

### 3. *Effectiveness of the proposed method of distributing relief to the class*

The Settlement Fund will be *automatically* distributed to Settlement Class Members, without any need for a claim form, either by check or direct deposit. Under the terms of the Settlement, thirty days after the Settlement Effective Date, BANA will directly deposit payments under the settlement into the accounts of Settlement Class Members who are current accountholders as of the date of final approval of the Settlement. Settlement ¶ 6.6.2.3. For those Settlement Class Members that are not current accountholders at the time of final approval, BANA will mail them a check. *Id.* ¶ 6.6.2.4. Any remaining funds after the initial disbursement will be distributed to the Settlement Class Members that successfully cashed check or received direct deposits, to the extent economically feasible. *Id.* ¶ 6.7. If there are funds remaining after this second distribution or the distribution is not economically feasible, Class Counsel will petition the Court

to distribute the remaining funds to an appropriate *cy pres* recipient, either a consumer protection or financial services charity. *Id.*

### 4. *Terms of the proposed award of attorney's fees*

Class Counsel's request for a fee award of one-third of the common cash fund—or less than 7% of the overall Settlement value—is consistent with fee awards in this Circuit and in similar cases. As discussed more fully in Plaintiffs' Motion for Attorneys' Fees,[1] "[w]ithin the Fourth Circuit, contingent fees of roughly 33% are common." *Earls v. Forga Contracting, Inc.*, No. 1:19-CV-00190-MR-WCM, 2020 WL 3063921, at *4 (W.D.N.C. June 9, 2020); *see also Kelly v. The Johns Hopkins Univ.*, No. 1:16-cv-2835-GLR, 2020 WL 434473, at *3 (D. Md. January 28, 2020) ("Contingent fees of up to one-third are common in [the 4th] circuit.").

### 5. *Existence of other agreements reached by the Parties outside the settlement*

Courts also consider whether there are additional agreements between the Parties outside of the settlement agreement that could cast doubt on the fairness or adequacy of the settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Settlement here "contains the Parties' entire agreement on and understanding of the subject-matter at issue in the Action," and "supersedes all prior negotiations and proposals, whether written or oral." Settlement ¶ 15.9.2.[2]

---

[1] Class Counsel's arguments in favor of approving the requested fee award are fully set forth in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Attorneys' Fees. *See Morris v. Bank of Am., N.A.*, No. 18-CV-157 (W.D.N.C. Oct. 12, 2021), ECF 89-1. This Memorandum is incorporated by reference.

[2] Through discovery and the settlement process, Plaintiffs became convinced that the claim regarding Ms. Morris' MMF Fee claim was not tenable. Ms. Morris is releasing that claim through a separate agreement on an individual basis. With the consent of BANA and subject to Court approval, Plaintiffs are filing an amended complaint concurrent with this Settlement Agreement that removes that claim and puts it outside of the Class release.

C.      **The Settlement Treats Class Members Equitably.**

The Settlement provides relief to Settlement Class Members on a *pro rata* basis based on the number of NSF and/or OD Fees that a Settlement Class Member was charged out of the total number of NSF and/or OD Fees assessed in connection with the transactions at issue in the litigation. Settlement ¶ 7.1.1. This method for calculating each class member's recovery equitably compensates each class member based on the portion of NSF and/or OD Fees at issue in this litigation that they paid during the class period. Regardless of which class they belong in, the Settlement treats each class member equitably based on the extent to which they were impacted by BANA's conduct. All current and future BANA accountholder Settlement Class Members likewise benefit from the practice changes and enhanced disclosures required by the Settlement.

II.     **The Court Should Certify the Settlement Classes.**

The Settlement includes three proposed classes based on the nature of the underlying claims: (1) the Retry Transaction Class, (2) the Intrabank Transaction Class, and (3) the Fee Accrual Class (collectively referred to herein as the "Settlement Class"). Depending on individual circumstances, consumers may be members of one or more of these classes and have claims under each.

A.      **The Proposed Classes are Ascertainable.**

Under Rule 23, a class definition must be sufficiently definite so that "a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). This ascertainability requirement is easily satisfied in this case, as the members of each class are identifiable based on objective criteria applied to BANA's well-maintained records covering every potential transaction and class member during the class period.

15

## B.    The Proposed Classes Satisfy the Requirements of Rule 23(a).

Under Federal Rule of Civil Procedure 23(a), a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative Parties are typical of the claims or defenses of the class; and (4) the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The class here satisfies each of these requirements.

### 1.    *Numerosity*

Class certification is appropriate when class members are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "[n]o specified number is needed to maintain a class action," *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984), courts within the Fourth Circuit generally "find classes of at least 40 members sufficiently large to satisfy the impracticability requirement," *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 337 (D. Md. 2012), *amended*, 962 F. Supp. 2d 840 (D. Md. 2013) (citation omitted). Here, the Class contains millions of Settlement Class Members. Numerosity is therefore satisfied.

### 2.    *Commonality*

Rule 23's requirement that there are "questions of law or fact common to the class," is also satisfied here. A common question is "one that can be resolved for each class member in a single hearing," and does not turn on the "'individual circumstances of each class member.'" *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (quotation omitted). A common question must be "capable of classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central" to each class member's claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) does not require commonality of all issues; rather, "even a single common question will do." *Id.* at 359 (quotation omitted),

Here, there are several common legal and factual questions that are common to all members in each class and even across classes. Common questions include:

- For the Retry Transaction class, whether BANA's Retry Transaction fees (1) breached BANA's contracts with Settlement Class Members and violated (2) the UCL and (3) the NCUDPTA.

- For the Intrabank Transaction class, whether BANA's Intrabank Transaction fees (1) breached BANA's contracts with Settlement Class Members and violated (2) the UCL and (3) the NCUDPTA.

- For the Fee Accrual class, whether BANA's alleged practice of posting previously assessed NSF and/or OD fees prior to deposits (1) breached BANA's contracts with Settlement Class Members and violated (2) the UCL and (3) the NCUDPTA.

- For all classes, whether choice-of-law principles allow the application of California and/or North Carolina law to the Plaintiffs' UCL and NCUDTPA claims.

These common questions are sufficient to satisfy the requirements of Rule 23(a)(2).

### 3. *Typicality*

Under Rule 23's typicality requirement, class representatives are "typical" if they are "part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so goes the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing *Broussard*, 155 F.3d at 340).

For each Class, the proposed Class Representatives all assert the same claims stemming from the same conduct by BANA as the absent Settlement Class Members. The proposed class representatives' claims arise from the same factual circumstances, are based on the same legal theories, are subject to the same defenses, and rise or fall with the claims of the absent Settlement Class Members. Typicality is satisfied here.

### 4. *Adequacy of Representation*

The adequacy inquiry "serves to uncover conflicts of interest between named Parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). For a conflict of interest to defeat class certification, that conflict "must be fundamental," "must go to the heart of the litigation," and "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003) (quoting 6 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 18:14 (4th ed. 2002).

There is no such conflict here. As discussed above, the proposed Class Representatives for each class assert the same claims based on the same alleged conduct as the absent Settlement Class Members. There is likewise no conflict between the Settlement Class Members, as they are all compensated under the settlement on a *pro rata* basis based on the number of NSF and/or OD Fees that a class member was charged out of the total number of NSF and/or OD Fees assessed in connection with the transactions at issue in the litigation. Moreover, the proposed Class Representatives and absent Class Members who are current or future account holders benefit from the significant practice changes and disclosure modifications in the Settlement.

Class Counsel has also satisfied the adequacy requirement. Class Counsel has effectively handled numerous consumer protection and complex class actions, including in the area of financial services, bank fees, and overdraft and non-sufficient funds fees specifically. *See* Dkt. 89-2, Joint Decl. ¶¶ 16-20, Exs. A-C. Class Counsel are qualified, experienced, and able to conduct this litigation and will fully and adequately represent the Class.

## C. The Proposed Class Satisfies the Requirements of Rule 23(b).

### 1. Predominance

The first requirement under Rule 23(b)(3) is that questions of law or fact common to Settlement Class Members predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). This inquiry tests whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *see also Gunnells*, 348 F.3d at 428.

Here, Plaintiffs seek to remedy common legal grievances based on BANA's assessment of certain fees, allegedly in violation of BANA's account agreements. The common questions of the legality of this practice and BANA's policies associated with the practice predominate over questions—if any—affecting only individual Settlement Class Members, providing a common link between all the Settlement Class Members and BANA. *See Jeffreys v. Comm'ns Workers of Am., AFL-CIO*, 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance satisfied where [t]he question in each individual controversy" would be resolved according to the same legal inquiry); *Talbott v. GC Servs. Ltd. P'Ship*, 191 F.R.D. 99, 105-06 (W.D. Va. 2000) (finding predominance satisfied based on the "standardized nature" of the defendant's conduct). "The fact that damages will differ from class member to class member does not defeat the finding of predominance because liability is common to the class." *Jeffreys*, 212 F.R.D. at 323.

### 2. Superiority

Finally, the Court must determine whether a class action is superior to other methods of adjudication for the fair and efficient adjudication of the controversy. *See* Fed. R. Civ. P. 23(b)(3). The factors to be considered are: (1) individual class members' interest in controlling individual cases; (2) the existence of related litigation; (3) the desirability of concentrating the litigation in

19

one forum; and (4) manageability. *Droste v. Vert Capital Corp.*, No. 3:14-cv-467, 2015 WL 1526432, at *8 (E.D. Va. April 2, 2015). In settlement cases, courts need not consider the last factor. *Amchem Prods.*, 521 U.S. at 593. Here, a class action is superior to individual suits.

First, individual suits are unlikely here, because the probable recovery (even of full damages) is relatively small per Settlement Class Member, particularly compared to the expense of litigation. *See In re NeuStar, Inc.*, 2015 WL 5674798, at *8 (finding superiority satisfied where individual actions were "unlikely due to the size of probable recovery and expense of individual litigation). Where the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights," *Amchem*, 521 U.S. at 617, a suit like this is well-suited for class action litigation. Second, Class Counsel is not aware of other pending individual litigation against BANA regarding the practices at issue in this Action. Joint Decl. ¶22. And third, it would promote judicial economy to resolve this case as a class before this Court rather than requiring individual plaintiffs to file separate lawsuits. *In re NeuStar, Inc.*, 2015 WL 5674798, at *9. Accordingly, a class action is a superior method of adjudication.

## III.    The Court Should Appoint Settlement Class Counsel.

Fed. R. Civ. P. 23(g) requires a Court to appoint class counsel. In appointing class counsel, the Court "must" consider: (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (c) counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). *See also In re Neustar*, 2015 WL 5674798, at *13. The court "may" also consider "any other matter

pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Proposed Class Counsel from the law firms of Hausfeld LLP ("Hausfeld"), KalielGold PLLC ("KalielGold"), and The Van Winkle Law Firm ("Van Winkle") have expended extensive amounts of time, effort, and expense litigating this Action. Further, as set forth in their firm resumes, each attorney from each firm is highly experienced in complex consumer class action litigation. *See* Dkt. 89-2, Joint Decl. Exs. A-C (Firm resumes of Class Counsel). It is clear from their track record of success that Class Counsel are highly skilled and knowledgeable concerning class-action practice.

As can be seen by their commitment to prosecuting this case thus far, as well as their track record, Class Counsel have made the investment and have the experience to represent the Settlement Class vigorously. Accordingly, Plaintiffs request that the Court appoint David M. Wilkerson of The Van Winkle Law Firm, Jeffrey D. Kaliel of KalielGold PLLC, and James J. Pizzirusso of Hausfeld LLP as co-lead counsel, and Larry McDevitt of The Van Winkle Law Firm as liaison counsel.

## IV. Notice to Class Members Was Adequate and Satisfies the Requirements of Rule 23 and Due Process.

The Notice Plan approved by this Court and carried out by the Settlement Administrator conforms with the procedural and substantive requirements of due process and Rule 23. Due process and Rule 23 require that Settlement Class Members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The mechanics of the notice process are left to the discretion of the Court, subject only to the broad reasonableness standards imposed by due process.

Here, the Settlement Administrator, Epiq, directed Notice to the Class Members via direct mail and email. McCown Decl. ¶¶ 8-20. A Long Form Notice was also available for Settlement Class Members who requested it, and it was posted on the Settlement Website. *Id.* ¶¶ 17, 21. To ensure that notice reached as many Settlement Class members as possible, Epiq performed reasonable address traces for the initial Postcard Notice and Email Notice. *Id.* ¶¶ 10, 18-19.

All of the Notices included important information about the Settlement, including how to opt out or object, and where to find more information about the case or contact Class Counsel. McCown Decl., Exs. 2-4. The substance of the notice fully apprised Settlement Class members of their rights. Additionally, the Notices were designed to be "noticed," reviewed, and—by presenting the information in plain language—understood by Settlement Class members. The design of the Notices followed principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov. The Notices contain plain-language summaries of key information about Settlement Class members' rights and options. Under Rule 23(e), the notice must generally describe the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard. The proposed Notices contain all of the critical information required to apprise Settlement Class members of their rights. This approach to notice is adequate and provides sufficient detail to allow Settlement Class Members with adverse viewpoints to come forward and be heard.

The Federal Judicial Center states that a notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm." Barbara J. Rothstein & Thomas E. Willging, Federal Judicial Center, "Managing Class Action Litigation: A Pocket Guide or Judges," at 27 (3d ed. 2010).[3] Here, notice reached approximately 94.9% of class members. McCown Decl.

---

[3] This document is available at https://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf.

¶ 20. The Notice to the Classes here is the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class action settlements.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) grant Final Approval to the Settlement; (2) finally certify the proposed Settlement Class for settlement purposes, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure; (3) grant Plaintiffs' pending Motion for Attorneys' Fees, Costs, and Class Representative Service Awards (Dkt. No. 89); and (4) enter Final Judgment.

Dated:  December 13, 2021                    Respectfully submitted,

By:  s/ Larry McDevitt
Larry McDevitt
NC State Bar No. 5032
David M. Wilkerson
NC State Bar No. 35742
THE VAN WINKLE LAW FIRM
11 North Market Street
Asheville, NC 28801
(828) 258-2991
*dwilkerson@vwlawfirm.com*
*lmcdevitt@vwlawfirm.com*

Jeffrey D. Kaliel
Sophia Gold
KALIELGOLD PLLC
1100 15th St., NW, 4th Floor
Washington, D.C.  20005
(202) 350-4783
*jkaliel@kalielpllc.com*

---

[4] Epiq also gave notice of the proposed Settlement to appropriate state and federal officials in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b). Epiq sent CAFA Notice to 60 government officials on May 21, 2021. McCown Decl. ¶ 5. CAFA Notice was mailed by certified mail to the Attorney General of the United States and the appropriate government officials for all 50 states, the District of Columbia, and the United States' Territories. *Id*. Epiq also sent the CAFA notice via United Parcel Service to two offices of the Office of the Comptroller of the Currency, the Consumer Financial Protection Bureau, and the Attorney General of the United States. *Id.*

*sgold@kalielgoldpllc.com*

James J. Pizzirusso
HAUSFELD LLP
888 16th St., Suite 300
Washington, DC 20006
(202) 540-7200
*jpizzirusso@hausfeld.com*

***Attorneys for Plaintiffs and
Class and Liaison Counsel***